```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     NORTHERN DIVISION

 3   _____ )

     UNITED STATES OF AMERICA        )
 4                                    )
          v.                          ) Criminal Docket No. RDB-17-0655
 5                                    ) Volume I
     LAUREN MONTILLO,                 )
 6            Defendant               )
     _____ )
 7                                         Baltimore, Maryland
                                           November 7, 2018
 8                                         2:36 PM to 4:44 PM

 9            THE ABOVE-ENTITLED MATTER CAME ON FOR
                        MOTIONS HEARING
10            BEFORE THE HONORABLE RICHARD D. BENNETT

11                   A P P E A R A N C E S

12   On behalf of the Government:

13        Sean R. Delaney, Assistant U.S. Attorney
          Joyce K. McDonald, Assistant U.S. Attorney
14
     On behalf of the Defendant:
15
          Jenifer Wicks, Esquire
16        Natalie Finegar, Esquire

17   Also present:

18        IRS Special Agent Dominic Palumbo

19


20


21        Proceedings recorded by mechanical stenography,
     transcript produced by computer.
22   _____

23            MARTIN J. GIORDANO, RMR, CRR, FOCR
               U.S. Courthouse, Fourth Floor
24              101 West Lombard Street
               Baltimore, Maryland 21201
25                   410-962-4504
```

1      <u>**PROCEEDINGS OF NOVEMBER 7, 2018**</u>

2          **THE CLERK:**  All rise.  This Honorable Court now

3      resumes in session, The Honorable Richard D. Bennett presiding.

4          **THE COURT:**  Good afternoon, everyone.

5          You all may be seated for a minute here.

6          This is calling the case of *United States versus*

7      *Lauren Montillo*, Criminal Number RDB-17-0655.

8          We are here for a motions hearing on this case, which

9      is now scheduled for a jury trial on December the 3rd, and it's

10     been brought to my attention that, for whatever reason, there

11     has never been an initial appearance or an arraignment on the

12     Second Superseding Indictment in this case, so we have some

13     housekeeping to do here.

14         So, with that, if counsel would identify themselves

15     for the record, please.

16         **MS. McDONALD:**  Your Honor, Joyce McDonald and

17     Sean Delaney for the United States, and Special

18     Agent Dominic Palumbo from the IRS CI and Special

19     Agent Brad Lynch from the FBI.

20         **THE COURT:**  Yes.  Nice to see you, Ms. McDonald.

21         Mr. Delaney, nice to see you.

22         And, Agent Palumbo, nice to see you.  I'm not sure if

23     you've been in my courtroom before.  I think you have.  You

24     look familiar.

25         And I'm sorry.  I don't have the name of the agent on

1    my score card behind you.  Your name again is, sir?  I'm sorry.

2              **S/A LYNCH:**  Brad Lynch, sir.

3              **THE COURT:**  Yes.  Mr. Lynch, nice to see you.  And I

4    apologize.  We don't have your name here on the score card.

5              With respect to the Defendant?

6              **MS. WICKS:**  Good afternoon, Your Honor.

7              Jenifer Wicks on behalf of Ms. Montillo, who is

8    directly to my right.  Also joining me at counsel table is

9    Natalie Finegar, who will shortly be applying to the panel for

10   this Court.  She is a public defender of many years and will be

11   joining me during trial as well.

12             **THE COURT:**  That's fine, Ms. Wicks.  Nice to see you,

13   and welcome.  I'm not sure if you've been in my courtroom

14   before.  It's nice to have you here.

15             **MS. WICKS:**  Thank you, Your Honor.

16             **THE COURT:**  It's nice to see you here.

17             And, Ms. Finegar, if I'm pronouncing your name

18   correctly.

19             **MS. FINEGAR:**  Finegar, yes.

20             **THE COURT:**  Finegar, yes.  Like vinegar.  Okay.

21   Well, thank you very much.  It's nice to have you here.

22             And, Ms. Montillo, good afternoon to you as well.

23             **THE DEFENDANT:**  Good afternoon.

24             **THE COURT:**  Am I pronouncing your client's name

25   correctly?  Ms. Montillo, is that correct?

1          **THE DEFENDANT:**  Montillo.

2          **MS. WICKS:**  Montillo.  It's Italian, Your Honor.

3          **THE COURT:**  Montillo.  Montillo.  Okay.  Hold on one

4    second, please.

5          (Pause.)

6          **THE COURT:**  All right.  So, with that, it's been

7    brought to my attention that we must first have an initial

8    appearance and an arraignment on the Second Superseding

9    Indictment in this case, and I would note that the Second

10   Superseding Indictment was returned -- hold on one second,

11   please.

12         (Pause.)

13         **THE COURT:**  This matter was referred to me from

14   Judge Garbis, as I recall, in the latter part of June, if I'm

15   not mistaken here.  No.  Let me see here.  Wait a minute.  Hold

16   on one second.

17         (Pause.)

18         **THE COURT:**  In the abundance of caution, Madam Clerk,

19   it would be helpful if you printed out the Second Superseding

20   Indictment for me, if you would, please.  Hold on one second

21   here.

22         (Pause.)

23         **THE COURT:**  I'm sorry.  I have a copy of it here.  I

24   have a copy of it right here.  This is the Second Superseding

25   Indictment that was filed in this case on October the 11th of

1       this year.

2                   If you'll please stand, Ms. Montillo.

3                   With respect to the Second Superseding Indictment

4       that was filed in this case -- yes.  This case was reassigned

5       to me at the end of June, and then I issued a scheduling order

6       in July.  And then certain motions were filed.  And then there

7       is a Second Superseding Indictment filed, essentially the

8       thrust of which is to add a count for filing a false tax return

9       under § 7206, correct, Ms. McDonald?

10                  **MS. McDONALD:**  Yes, sir, that's correct.

11                  **THE COURT:**  Okay.  And let me see if I see any other

12      changes here.  We're going to go through -- even though I know

13      you've been previously arraigned on the other charge,

14      Paragraph 10, Ms. Wicks, of the First Superseding Indictment,

15      which now changed Paragraph 10, reflected a change with respect

16      to -- if you have a copy there, it was part of the conspiracy

17      and scheme to defraud that, in January of 2011, Montillo and

18      MM -- the words, "used Deep Top Consulting to incorporate," has

19      been edited out, and it's, "caused Skywall, Ltd. to be

20      incorporated."  That's a change in Paragraph 10.

21                  Paragraph 12, it strikes the word "further" out.

22                  Paragraph 13, it strikes the word "further" out.

23                  Paragraph 14, it strikes the word "further" out, and

24      it states, "It was part of the conspiracy and scheme to defraud

25      that the co-schemers directed investors, victims to wire

1    transfer money to WEH and Skywall bank accounts at --" the

2    letters "HSBC" are stricken, and it states, "Hong Kong Shanghai

3    Bank."

4              Are you following along with me, Ms. Wicks, on this?

5              **MS. WICKS:**  Yes, Your Honor.  I have my redlined

6    version.

7              **THE COURT:**  Good.  I'm just going through here on the

8    redlines.  And then Paragraphs 15 and 16 edit out the word

9    "further."

10             And then Count 2 adds the phrase at the top, "Wire

11   Fraud."

12             Count 3, at the top, alleges count "Wire Fraud."

13             Count 4 captions "Conspiracy to Launder Money."

14             And then Paragraph 1 is changed to be, "from on or

15   about," to, "from in or about August 2010 through and in or

16   around December 2016."

17             Paragraph 1(b) of Count 4 adds reference to Choice

18   Bank Belize with respect to a conspiracy to launder money.

19             Manner and means on Page 9 changes the language as,

20   "Montillo and others opened bank accounts in Belize, including

21   an account in the name of WebStreet Media at Choice Bank, a

22   foreign bank within the meaning of 12 U.S.C. § 3101(7)."

23             Counts 5 through 12 now add the caption "Money

24   Laundering," and then it adds a Paragraph 1, the allegations of

25   Count 4, Paragraphs 2 through 6 are incorporated herein.

1          There is a reference here on Page 10 to Counts 8, 9,

2     10, 11, and 12, that the phrase "Web Street Media" is replaced

3     by "Choice Bank Belize."

4          There is change -- Count 13 is totally added, filing

5     a false tax return on or about July 25, 2014, in the District

6     of Maryland and elsewhere, and it charges a willful making and

7     subscribing to an individual income tax return.

8          Count 14, charging tax evasion, of the Second

9     Superseding Indictment, notes that, on or about July 25, 2014,

10    in the District of Maryland and elsewhere, the Defendant and

11    then it charges the matter of tax evasion.

12         Count 14 is now labeled Count 15, and the Grand Jury

13    for the District of Maryland further charges that, on or about

14    December 9, 2016, in the District of Maryland and elsewhere,

15    the Defendant, and then it charges filing a false tax return.

16         We'll go over whether your client waives a reading of

17    the entire Indictment or not in a minute, Ms. Wicks.  I'm just

18    trying to go through --

19         **MS. WICKS:**  Certainly, Your Honor.

20         **THE COURT:**  I was just notified before I came on the

21    bench.  I did not realize we had to go through another

22    arraignment on this.

23         Count 17 -- Count 16, the Grand Jury for the District

24    of Maryland further charges that, on or about December 9, 2016,

25    in the District of Maryland and elsewhere, the Defendant,

1    again, is charged with tax evasion.  The financial figure is

2    changed from 2013 from $291,294 to $264,861.76, with a tax due

3    and owing of $97,780 in place of the original figure of -- not

4    the original; the figure in the First Superseding Indictment of

5    $108,035.

6            Then we have Count 15, which is no longer Count 15;

7    it's Count 17, filing a false tax return.  The Grand Jury for

8    the District of Maryland further charges that.  And then it's

9    on or about February 12, 2016, in the District of Maryland and

10   elsewhere, the Defendant, and it's charged with filing a false

11   tax return for the calendar year 2014.

12           Count 18, with the Second Superseding Indictment, the

13   caption is "Tax Evasion," and the Grand Jury for the District

14   of Maryland further charges, on or about February 12th, 2016,

15   in the District of Maryland and elsewhere, the Defendant, and

16   then it charges tax evasion for the calendar year 2014.  Again,

17   it changes the figures that had originally been listed, so the

18   figure has been changed from $225,400 of total income to

19   $179,014.60.  The alleged additional income tax owing has been

20   changed from $78,354 to $60,181.  And then the wire fraud

21   forfeiture, that has also been amended and changed.

22           Section 1349, and then you have -- and § 1343 is

23   added as alleged in Counts 1 through 3, so that has been added.

24           And then, with respect to the money laundering

25   forfeiture allegations, Counts 2 through 10 have been changed

1     to read Counts 4 through 12.

2            I think that is a reasonably general summary of the

3     Second Superseding Indictment in this case.

4            Does your client waive complete reading in its

5     entirety of the Second Superseding Indictment, Ms. Wicks?

6     **MS. WICKS:**  Yes, Your Honor.

7     **THE COURT:**  All right.  So we don't need to read

8     through any further on the Second Superseding Indictment here,

9     but I want to have an initial appearance pursuant to Rule 5 of

10    the Federal Rules of Criminal Procedure with the Second

11    Superseding Indictment, which was filed on October the 11th.

12           And you understand the nature of the charges against

13    you, Ms. Montillo?

14     **THE DEFENDANT:**  I do.

15     **THE COURT:**  And do you understand your right to

16    employ counsel or to request the assignment of counsel?

17           Do you understand that?

18     **THE DEFENDANT:**  I do.

19     **THE COURT:**  I'm sorry?

20     **THE DEFENDANT:**  I do.

21     **THE COURT:**  Okay.  And, Ms. Wicks, you are Court-

22    appointed, correct?

23     **MS. WICKS:**  I am, Your Honor.

24     **THE COURT:**  All right.  And I want to thank you for

25    your service to the Court.

1           Ms. Montillo, Ms. Wicks is among a select group of

2      lawyers who are deemed qualified to handle Court-appointed

3      cases in the event of an inability of our public defender to

4      assume representation.

5           You have a right to a preliminary hearing.  Under

6      certain circumstances, you may secure pretrial release.

7           And your client is now on release, correct,

8      Ms. Wicks?

9           **MS. WICKS:**  Yes, Your Honor.

10          **THE COURT:**  All right.  If you start to make a

11     statement, you may stop under the principles of *Miranda versus*

12     *Arizona* and your privilege against self incrimination.

13          Do you understand that, Ms. Montillo?

14       (Counsel conferring with the Defendant.)

15          **THE COURT:**  Do you understand you have a privilege

16     against self incrimination?  No one can make you take the

17     witness stand.  Do you understand that?

18          **THE DEFENDANT:**  Yes.

19          **THE COURT:**  All right.  Do you understand any

20     statements you proffer may be used against you?

21          Do you understand that?

22          **THE DEFENDANT:**  Yes.

23          **THE COURT:**  All right.  With respect to the

24     conditions of release, there has already been a determination

25     of conditions of release in this case, which I don't think need

1    to be addressed here now.  There is a waiver of the reading of

2    the Second Superseding Indictment, and your plea is not guilty

3    to all counts; is that correct, Ms. Montillo?

4              **THE DEFENDANT:**  Yes.

5              **THE COURT:**  All right.  Is there anything further

6    from the point of view of the Government on this matter,

7    Ms. McDonald?

8              **MS. McDONALD:**  Your Honor, I think we should advise

9    her of the maximum penalties, which I can read.

10             **THE COURT:**  All right.  I'm sorry.  Again, I

11   literally was told we need to do this about a minute and a half

12   before I took the bench.

13             **MS. McDONALD:**  Yes, sir.

14             **THE COURT:**  So I had no idea we had to go -- this

15   Second Superseding Indictment was returned on October the 11th,

16   and today is November the 7th, so I apologize.

17             **MS. McDONALD:**  No, it's not your fault, Your Honor.

18             **THE COURT:**  I don't --

19             **MS. McDONALD:**  I can just put these on the record.

20             **THE COURT:**  Okay.  That's fine.

21             **MS. McDONALD:**  The wire fraud counts, Counts 1

22   through 3, the maximum penalty is 20 years' imprisonment,

23   $250,000 fine, and three years of supervised release.

24             For Count 4, the money laundering conspiracy, it's 20

25   years, $500,000 fine, three years of supervised release.

1              Counts 5 through 12, the individual money laundering

2    charges, ten years, $250,000, or three years of supervised

3    release.

4              The tax evasion charges, five years, $100,000, and

5    three years of supervised release.

6              And the false statement counts, three years,

7    $100,000, and three years of supervised release.

8              **THE COURT:**  All right.  Thank you.

9              Do you understand the maximum penalties if you're

10   convicted?  Do you understand that, Ms. Montillo?

11             **THE DEFENDANT:**  Yes.

12             **THE COURT:**  All right.  And are any of those

13   mandatory minimums, Ms. McDonald?

14             **MS. McDONALD:**  No, sir, they're not.

15             **THE COURT:**  Ultimately, the matter of sentencing is

16   within the province of the Court, Ms. Montillo, in the event

17   that there would be a conviction on any counts.

18             A presentence investigation report would be prepared,

19   and there would be an advisory guideline range, and the Court

20   would look at that as well and take in other factors in the

21   event there was to be a conviction on any of these matters.

22   You've been advised of the maximum penalties, none of which are

23   mandatory sentences that compel me to impose those sentences.

24             Do you understand that?

25             **THE DEFENDANT:**  Yes.  Thank you.

```
 1              THE COURT:  All right.  Is there anything else you
 2       want to cover on this, Ms. Wicks?
 3              MS. WICKS:  No.  Thank you, Your Honor.
 4              THE COURT:  Okay.  So, with that, I think that we are
 5       ready to proceed here.  You all may be seated for a moment.
 6              Now, let me just sort of summarize where we are on
 7       this.  Again, the trial date of this case is scheduled for
 8       Monday, December the 3rd.
 9              There are two motions that are now pending before the
10       Court to my knowledge.  There is a motion to dismiss counts,
11       and, although it's not specified in the titling of the motion,
12       it specifically is a motion to dismiss Counts 2 through 3 with
13       respect to wire fraud -- one second here -- which was filed on
14       September 4th, 2018, which is before the Superseding Indictment
15       was filed on October -- Second Superseding Indictment on
16       October the 11th.
17              And the Defendant's motion to dismiss counts is
18       focused upon Counts 2 through 3, charging wire fraud, and
19       Counts 5 through 12, charging money laundering.
20              Is that correct, Ms. Wicks?
21              MS. WICKS:  And, Your Honor, later on in the motion,
22       it's really just 5 through 7.
23              THE COURT:  All right.  So it is, in fact, just
24       Counts 5 through 7.  It's 2 through 3 and 5 through 7 --
25              MS. WICKS:  Right.
```

1    THE COURT:  -- with respect to money laundering.

2         And your motion to dismiss does not address any of

3    the other counts in terms of seeking to dismiss those; is that

4    correct?

5         MS. WICKS:  That's correct, Your Honor.

6         THE COURT:  All right.  Okay.  So I'll make a note of

7    that.

8         And then there is a motion to suppress -- that's

9    Paper Number 33, and I gather there is nothing about the Second

10   Superseding Indictment that causes you to need to amend that

11   motion, correct, Ms. Wicks?

12        MS. WICKS:  That's correct, Your Honor.

13        THE COURT:  All right.  Thank you.

14        And then there is a Defendant's corrective motion to

15   suppress evidence, Paper Number 36, and that essentially seeks

16   to suppress both evidence seized as a result of the execution

17   of a search warrant for information associated with an e-mail

18   account LaurenMontillo@aol.com, as well as seeking to suppress

19   statements Defendant made while the search warrant was executed

20   on December 22, 2016, as well as the fruits of any illegal

21   search.

22        That's essentially the thrust of your motion to

23   suppress evidence, correct?

24        MS. WICKS:  Yes, Your Honor.

25        THE COURT:  Okay.  All right.  And then you have

1    argued in your affidavit with respect to alleged insufficient

2    information in the affidavit for the search warrant that there

3    were deliberate or reckless misrepresentations and omissions in

4    violation of the rules set forth in *Franks versus Delaware* at

5    438 U.S. 154, the 1978 opinion of the Supreme Court, and you

6    have essentially requested a *Franks* hearing; is that correct?

7         **MS. WICKS:**  Yes, Your Honor.  I submit on the record

8    as to that.  There were --

9         **THE COURT:**  Right.  Okay.

10        **MS. WICKS:**  -- matters under investigation.

11        **THE COURT:**  All right.  That's fine.

12        Have I correctly summarized all of your motions

13   essentially just a general summary, Ms. Wicks?

14        **MS. WICKS:**  Yes, Your Honor.

15        **THE COURT:**  From your point of view, Ms. McDonald,

16   have I summarized correctly what the motions are before the

17   Court?

18        **MS. McDONALD:**  Yes, sir.

19        **THE COURT:**  All right.  So, given the issue with

20   respect to the matter of seeking to dismiss Counts 2, 3, 5, 6,

21   and 7, essentially on the argument of the tolling of an

22   applicable statute of limitations and issues that relate to the

23   Mutual Legal Assistance Treaty, I think what I'd like to do is

24   get to that later, if I can, and I would like to address the

25   motion to suppress evidence here, Paper Number 36, first.

```
1                    Is that agreeable to the Government, Ms. McDonald?

2              MS. McDONALD:  Yes, sir, it is.

3              THE COURT:  And, Ms. Wicks, agreeable to you?

4              MS. WICKS:  Yes, Your Honor.  Thank you.

5              THE COURT:  Okay.  All right.  With that, with

6    respect to that and the motion to suppress evidence, obviously

7    the burden of proof at this hearing is upon the Government, the

8    burden being no greater burden than a proof by preponderance of

9    the evidence with respect to the suppression motion here as set

10   forth by the Supreme Court in United States versus Matlock, 415

11   U.S. 164, and Colorado versus Connelly, 479 U.S. 157, a 1986

12   opinion.

13                    So, with that, I'd be glad to hear from the

14   Government.  Is there a presentation of any evidence here, or

15   is it just legal argument, Mr. Delaney?

16             MR. DELANEY:  Your Honor, with regard to the motion

17   to suppress the fruits of the search warrants, I think I'd

18   submit on the record, which includes the search warrants and

19   the affidavits themselves.

20             THE COURT:  Yes.

21             MR. DELANEY:  With regard to that portion, I can

22   submit on the record unless the Court would like to hear from

23   me further.

24                    With regard to the motion to suppress statements, I'm

25   prepared to call Special Agent Brad Lynch --
```

1          **THE COURT:**  Well, I think I'd just like to go step by

2     step on this.  First, with respect to the matter of the

3     application for search warrant, which is Sealed Document 36-1

4     and the affidavit presented by Mr. Lynch, who is here in court,

5     correct?  Mr. Lynch is here in court?

6          **MR. DELANEY:**  Yes, Your Honor.

7          **THE COURT:**  And he submitted an affidavit and

8     application for the search warrant to be executed, and that was

9     submitted here with respect to -- and then the search and

10     seizure warrant itself, both of which were -- they were

11     submitted to Judge Gesner and signed by Judge Gesner.  As to

12     that, you're just submitting on your submissions and summary;

13     is that correct?

14          **MR. DELANEY:**  Yes, Your Honor.  There were two

15     affidavits submitted in support of four search warrants

16     themselves.  There was the September 2016 affidavit, which was

17     23 pages long, and there was also a December 2016 affidavit

18     which contained even further information, and I think those two

19     documents have sufficient evidence to support the search

20     warrant, and I'm unaware of any allegation that anything in

21     them specifically was false.  I think they were well in support

22     of the search warrants themselves.

23          There is also an argument related to the Stored

24     Communications Act, I can address if the Court would like to

25     hear.

1          THE COURT:  Sure.

2          MR. DELANEY:  I was trying to understand exactly if I

3    had this argument correctly, but there is a note in the

4    Defendant's motion on Paragraph 4 that the search warrants'

5    issuance in Maryland for the search of the property in the

6    Eastern District of Virginia violates Rule 41, and, as I

7    submitted in my motion, that's an incorrect reading of the

8    Stored Communications Act, which is found at 18 U.S.C. § 2701,

9    et sequence.

10         THE COURT:  Do me a favor.  For some reason, the

11   sound system is here that you can hear me on Lombard Street in

12   my speaker, which does me no good at all, and no one can seem

13   to get it so I can hear you all better down there.  So clearly

14   I have to turn the microphone down when I speak and turn it up

15   when you all speak, and we never can get it right.  So I

16   apologize.  So pull the microphone closer to you or do it at

17   the podium there.

18         MR. DELANEY:  I'll address it at the podium.  Thank

19   you, Your Honor.

20         THE COURT:  That's fine.  This microphone is

21   literally turned up as high as it will go up here, and I've

22   complained because you can hear me literally up Charles Street,

23   and yet the lawyers here phase off in the distance, and I've

24   given up trying to correct it.  It's just -- no one can correct

25   it.

```
1           MR. DELANEY:  So you want me to be louder?

2           THE COURT:  Go ahead.  That's fine.  Just --

3           MR. DELANEY:  It's rarely that people want me to be

4    louder.

5           THE COURT:  That's fine.  That's right.  That's good.

6           MR. DELANEY:  Paragraph 4 of Defendant's motion

7    references Rule 41(d), which I think is an incorrect reading of

8    the Stored Communications Act, which requires a warrant by a

9    Court of competent jurisdiction, which is defined as any

10   District Court of the United States that has jurisdiction over

11   that offense, and, in my motion -- specifically, on Page 4 of

12   my response -- there are a series of court opinions from the

13   Third Circuit, Seventh Circuit, District of Arizona, and the

14   Middle District of Florida that support this warrant being

15   signed in the District of Maryland for a search of electronic

16   records in another district; specifically, that of Virginia.

17          So I think I can, again, submit based on my motion

18   for that portion as well, unless the Court wants to hear from

19   me further.

20          THE COURT:  No, that's fine.  It's all a matter of

21   record here.

22          MR. DELANEY:  Absolutely, Your Honor.

23          With regard to the motion to suppress statements, I

24   am prepared to call Special Agent Lynch if that's fine.

25          THE COURT:  Let me just try -- in terms of my
```

1   crossing Ts and dotting Is as to the motion to suppress

2   evidence, let me just cross Ts and dot Is on this first,

3   Mr. Delaney.

4        Ms. Wicks, I know you said you'd just submit on the

5   record here, okay?

6        **MS. WICKS:**  Yes, Your Honor.

7        **THE COURT:**  But I need for you -- if you'll just

8   address things, because this seems to -- I have previously

9   noted that just motions to suppress are very conclusory are

10  really of not great assistance to the Court.  I recognize there

11  is a matter of preservation of certain issues, but I just need

12  to address some things with you here, give you an opportunity

13  to respond.

14       You've noted that the affidavit supporting the

15  application for the AOL search warrant cannot support probable

16  cause because they contained unreliable information,

17  insufficient information, and there was an insufficient nexus

18  with the place being searched; the affidavit supporting the

19  search warrant contained stale information and/or are facially

20  deficient.

21       I just need for you to put some meat on the bones.

22  How so?

23       **MS. WICKS:**  And, Your Honor, what I was considering

24  when I wrote that is the fact that --

25       **THE COURT:**  Again, you have to pull your microphone

```
 1        closer as well, because you're not even -- no one has to keep
 2        rotating.
 3                Ms. Downs, do the best you can, okay?  I mean, just
 4        pull the microphone closer.  That's fine.
 5                MS. WICKS:  Okay.
 6                THE COURT:  Thank you.
 7                MS. WICKS:  Your Honor, as I said before, there were
 8        information still being investigated when the filing of motions
 9        occurred in September, but the affidavit essentially, I think,
10        if you look at the affidavit as a whole, it was a fishing
11        expedition in terms of the e-mails, because, both for the
12        search warrant for her e-mail and for -- we'll deal with this a
13        little later, but the request for information from China, there
14        was sort of the suggestion that she must be doing something
15        wrong, but not the clarity of we know she's doing something
16        wrong, and I think that's the problem with a search warrant
17        affidavit.  There has to be probable cause that, specifically,
18        the person -- the e-mail account belongs to a person who is
19        either doing something wrong herself, or we know that someone
20        is using that e-mail account to do something wrong.
21                And I don't think they're sufficient.  As I indicated
22        in my papers, I don't think that the affidavit for the
23        application contains sufficient information that that specific
24        e-mail account is being used to break the law and that the --
25        if anywhere, the proposition is:  Well, we have this
```

1    cooperator, and he's claiming that he did something illegal

2    with her.  But, even the way the affidavit is written, I'm

3    reading it to say:  Really, we're not quite sure -- there is

4    not much to back up what he's saying, so we're looking to see

5    if there is something to back him up, and I don't think, under

6    the standard of probable cause, that that's sufficient.

7              **THE COURT:**  All right.  Well, let me just make sure.

8              Mr. Delaney, I thought I heard you say that there

9    were three affidavits, and I want to make sure I'm not missing

10   something.

11             **MR. DELANEY:**  No, Your Honor.  There are --

12             **THE COURT:**  There is one affidavit?

13             **MR. DELANEY:**  There is one affidavit for the e-mail

14   search warrants, and then --

15             **THE COURT:**  Yes.

16             **MR. DELANEY:**  -- one affidavit for the residential

17   search warrants.

18             **THE COURT:**  Yes.  And I'm looking -- we're, first of

19   all, looking at the affidavit in support of the search warrant

20   for the premises at AOL, Incorporated, okay?

21             **MR. DELANEY:**  Yes, Your Honor.  One affidavit.

22             **THE COURT:**  All right.  And --

23             **MS. WICKS:**  I think what he's referring to is, in the

24   investigation, there is four different -- there is one

25   affidavit -- after the AOL affidavit, there is another

```
 1    affidavit that's used for several different search warrants.

 2    There is only one -- both my client's person and her residence

 3    is what she would have standing to move to suppress.

 4              THE COURT:  Okay.

 5              MS. WICKS:  There is another residence --

 6              THE COURT:  I have a copy -- I have the affidavit,

 7    and I've reviewed the affidavit in support of the AOL search

 8    warrant.

 9              MR. DELANEY:  Your Honor, may I approach?

10              THE COURT:  Yes.

11              MR. DELANEY:  I have a copy of the affidavit --

12              THE COURT:  Yes.

13              MR. DELANEY:  -- that was submitted in December 2016.

14              THE COURT:  All right.

15              MS. WICKS:  Yeah.  I think it was submitted as an

16    attachment under seal.

17              MR. DELANEY:  That's correct.  I have another copy of

18    it here.

19         (Document tendered to the Court.)

20              THE COURT:  Okay.  All right.  So that's your general

21    argument as to both of those, correct?

22              MS. WICKS:  Yes, Your Honor.

23              THE COURT:  All right.  I'd be glad to --

24              MS. WICKS:  Well -- I'm sorry.

25              THE COURT:  I'll review the papers.  If there is
```

1    nothing further you want to add on this, I will just note that

2    I see absolutely no basis for a *Franks* hearing here.  What is

3    your basis for you to believe there is false or misleading

4    information?

5            **MS. WICKS:**  And, Your Honor, I believe I said at the

6    beginning, at the time that this was filed, there was further

7    investigation --

8            **THE COURT:**  All right.  You're withdrawing your --

9            **MS. WICKS:**  I'm --

10           **THE COURT:**  Okay.  The record will reflect, then --

11           **MS. WICKS:**  I'm essentially standing on the fact that

12   I agree I'm not making those findings.

13           **THE COURT:**  All right.  Since there is no request for

14   a *Franks* hearing, we have essentially the motion to suppress

15   evidence with respect to -- the motion to suppress evidence,

16   Paper Number 36, is not just with respect to

17   LaurenMontillo@aol.com.  It is also in connection with the

18   search of her residence as well, correct?

19           **MS. WICKS:**  Yes, Your Honor.

20           **THE COURT:**  So it contains both.

21           **MS. WICKS:**  In part, my contention is, if the search

22   of the AOL account is suppressible, then that would lead to

23   suppression of the evidence and statements --

24           **THE COURT:**  All right.  I understand.

25           **MS. WICKS:**  -- of my client.

1          **THE COURT:**  All right.  So we have the affidavit with

2    respect to both the residence and the AOL.com, and both of you

3    are just submitting on the record on the submissions you've

4    made thus far?

5          **MS. WICKS:**  Yes, Your Honor.

6          **MR. DELANEY:**  Thank you, Your Honor.

7          **THE COURT:**  And neither side desires to present any

8    more testimony or witnesses or evidence on this, strictly legal

9    argument on that.  Correct from the point of view of the

10   Government?

11         **MR. DELANEY:**  Correct, Your Honor.

12         **THE COURT:**  Correct from the point of view of the

13   Defense?

14         **MS. WICKS:**  Yes, Your Honor.

15         **THE COURT:**  All right.  Anthony, hold that over

16   there.

17         Okay.  So, then, with that, we have also the

18   Defendant's motion to suppress statements made while the search

19   warrant was being executed on December 22, 2016, at her

20   residence.

21         **MR. DELANEY:**  That's correct.

22         **THE COURT:**  Okay.  And, with respect to that, the

23   motion to suppress statements, the Defendant has essentially

24   alleged from my review of the papers that she has argued that

25   her statements made during the execution of the search warrant

1    were involuntarily made due to the circumstances -- quote, the

2    circumstances, tricks, and coercive conditions of her custodial

3    investigations.

4         The Government has essentially responded that the

5    motion fails to identify any facts that support that legal

6    claim, and the Government has taken the position and argued

7    that *Miranda* warnings were not required because the Defendant

8    was not in custody, and has noted that she voluntarily gave

9    statements to the police.

10        And so, with that, we have evidence to be presented

11   in the form of the testimony of Agent Lynch; is that correct?

12        **MR. DELANEY:**  That's correct, Your Honor.

13        **THE COURT:**  Okay.  And, with that, let me just advise

14   Defense counsel, and so Ms. Montillo understands, that,

15   pursuant to the Federal Rules of Evidence, the formal Rules of

16   Evidence don't apply here, Ms. Montillo, pursuant to Rule 1101

17   of the Federal Rules of Evidence.

18        But, having said that, specifically under Rule 104(d)

19   of the Federal Rules of Evidence, as I said earlier, you have a

20   privilege against self incrimination, and no one can compel you

21   to testify.  Under Rule 104(d) of the Federal Rules of

22   Evidence, by testifying on a preliminary matter, including

23   admissibility of evidence, a defendant in a criminal case does

24   not become subject to cross-examination on other issues in the

25   case, meaning that -- and, just to make sure your client

1    understands, Ms. Wicks, that, to the extent that she were to

2    desire to testify on the matter of the facts surrounding the

3    search, that she would not be subject to cross-examination on

4    any other matter other than the facts surrounding the search.

5              Do you understand that, Ms. Montillo?

6         **THE DEFENDANT:**  I do.

7         **THE COURT:**  All right.  So, with that, I'd be glad to

8    hear from you, Mr. Delaney.  I'd be glad to hear from

9    Agent Lynch.  If you'll come forward, sir, and be sworn.

10        **BRAD LYNCH, GOVERNMENT'S WITNESS, SWORN**

11        **THE CLERK:**  Please be seated.

12             Adjust the microphone.

13             Please state and spell your name for the record.

14        **THE WITNESS:**  Brad Lynch, L-Y-N-C-H.

15        **THE CLERK:**  Thank you.

16        **MR. DELANEY:**  Your Honor, preliminarily, I would note

17   that IRS Special Agent Dominic Palumbo was also present on this

18   day and at the interview, and I would leave it up to the Court

19   whether or not you'd like to sequester him.

20        **THE COURT:**  Well, who is the case agent in the case?

21        **MR. DELANEY:**  Special Agent Brad Lynch is one of the

22   two case agents, and --

23        **THE COURT:**  Well, you're allowed to have one case

24   agent in the trial of the case.

25        (Counsel conferring.)

1          **MR. DELANEY:**  For the purposes of this hearing, I'd

2     say that Special Agent Palumbo is the case agent.

3          **THE COURT:**  That's fine.  He may stay here if he's

4     the designated case agent.

5          Any objection to that, Ms. Wicks?

6          **MS. WICKS:**  No, Your Honor.

7          **THE COURT:**  All right.  So, with that, we will

8     proceed.

9          **MR. DELANEY:**  Thank you, Your Honor.

10         **THE COURT:**  The witness has been sworn, correct?

11         **THE CLERK:**  Yes, Judge.

12         **THE COURT:**  Sir, if you'll state your full name again

13    for the record for me, please.  I'm sorry.

14         **THE WITNESS:**  Sure.  Brad Lynch, B-R-A-D, L-Y-N-C-H.

15         **THE COURT:**  All right.  Thank you, sir.

16         You may proceed, Mr. Delaney.

17                     **DIRECT EXAMINATION**

18    **BY MR. DELANEY:**

19    Q.  Special Agent Lynch, can you tell us who you work with?

20    A.  Sure.  I'm a special agent with the FBI.

21    Q.  And how long have you been with the FBI?

22    A.  It will be 21 years in January.

23    Q.  Have you participated in search warrants in the past?

24    A.  I have.

25    Q.  Approximately how many?

1    A.  Over a hundred.

2    Q.  Were you involved in the investigation and prosecution of

3    Lauren Montillo?

4    A.  Yes.

5    Q.  Do you recall the date of December 22nd, 2016?

6    A.  Yes.

7    Q.  Were you part of a search team on that date?

8    A.  I was.

9    Q.  For what location?

10   A.  1202 Berans Road, Owings Mills, Maryland.

11   Q.  And, to your knowledge, who resides at that address?

12   A.  It was -- Lauren Montillo used to live there, but she

13   doesn't live there anymore.

14   Q.  Were there other search warrants conducted on that day?

15   A.  Yes, there was.

16   Q.  Of what location or locations?

17   A.  145 Warwick Drive, Lutherville, Timonium.

18   Q.  Were you present for that?

19          **THE REPORTER:**  One more time.  One more time.

20          **THE WITNESS:**  Sure.  It's 145 Warwick Drive,

21   Lutherville, Timonium, in Maryland obviously.

22   **BY MR. DELANEY:**

23   Q.  Were you present for that search warrant?

24   A.  No.

25   Q.  Okay.  And, on December 22nd, 2016, did you have a warrant?

1   A.   Yes.

2   Q.   Was it a knock-and-announce warrant?

3   A.   It was.

4   Q.   Can you tell us what that means?

5   A.   It means that we have to knock on the door and announce

6   ourselves as law enforcement -- specifically, agents with the

7   FBI -- and we have a search warrant, and we need the door to be

8   opened.

9   Q.   Okay.  Prior to the day of that search, did you have

10   conversations regarding Ms. Montillo's minor child?

11   A.   Yes.

12   Q.   Did you set up any procedures in the event that child would

13   be present?

14   A.   Yes.  So we had -- we knew we would have at least a couple

15   of female agents who would be on the team, and they were going

16   to be with the child, and of course we knew that -- of course

17   there was a high probability that Chris Walsh, the boyfriend,

18   would be there, and he could be with the child as well.

19   Q.   Okay.  Approximately what time did the search occur?

20   A.   Right around 6:30.  I think that was the knock and announce

21   time.

22   Q.   And who knocked?

23   A.   I did.

24   Q.   Okay.  Can you tell us -- tell us what happened at that

25   point in time.

Direct Examination of Brad Lynch

1    A.   Sure.  I knocked on the door, pounded on the door.  It's a

2    big -- a big house, a big set of doors.

3    Q.   Let me stop you for just one moment, and I'm going to mark

4    for the record Government's Exhibit Number 1, a copy of which

5    has been provided to counsel before.

6            **MR. DELANEY:**  Do we have the DOAR system functional?

7            **THE CLERK:**  Yes.

8    **BY MR. DELANEY:**

9    Q.   Okay.  Do you recognize Government's Exhibit 1?

10   A.   Yes.  That's 1202 Berans Road.

11   Q.   Okay.  This is a --

12           **MR. DELANEY:**  Okay.  Thank you.

13   Q.   Now, you said you knocked on the door.  Is this the door

14   you knocked on (indicating)?

15   A.   Yes.

16   Q.   Okay.  How many people were with you at that point in time?

17   A.   Several.  We probably had seven or eight agents lined up at

18   the door with me, and we had agents in the back, agents in the

19   front.

20   Q.   What, if anything, did you say at that point in time?

21   A.   Loudly announced:  FBI, police.  We have a search warrant.

22   Open the door.

23   Q.   What happened at that point in time?

24   A.   There was some silence.  Sometimes it takes folks a little

25   bit to recognize what's going on.  I'm at the door, and so the

1    agents who are more kind of along the path can see up into that

2    window above there (indicating).

3    Q.  Okay.

4    A.  And they can see the second-floor landing.  And so they --

5    Q.  Were you having conversations with those other agents?

6    A.  Yes.  They were letting me know what they were seeing

7    inside.

8    Q.  Okay.  What did they communicate to you?

9    A.  They said that a female and male were coming out of the

10   bedroom.  The female had a phone.  She was going back and

11   forth, coming out of the bedroom, going back into bedroom, and

12   I was saying, you know, come down, open up the door, or we'll

13   have to break in the door.

14       So we let about -- I don't know -- maybe a full minute.  I

15   mean, that's a long time, but that's from the appearance of

16   Ms. Montillo coming out of the bedroom, and then, finally, we

17   just -- I gave the order to ram the door open, and --

18   Q.  And who did that?

19   A.  -- and made entrance.

20       That was Jason Bender.

21   Q.  FBI Special Agent Jason Bender?

22   A.  Yes.

23   Q.  Okay.  I'm going to turn to Page 2 of Government's Exhibit

24   Number 1.

25       Is this a copy of the door?

1    A.  Yes.

2    Q.  And is this where the door was hit with the ram

3    (indicating)?

4    A.  That's right.

5    Q.  All right.  What happened at that point in time?

6    A.  Once the door was opened, agents made entry, and we began

7    to clear the house.

8    Q.  You said, "clear the house."  Can you describe the process

9    by which the FBI clears a house?

10   A.  Sure.  We're -- we go in.  We start to make our way through

11   the different rooms of the house, kind of making sure nobody's

12   in there.  I mean, if there is somebody there, we kind of pull

13   them to the side.  We try and call them to the front, but, if

14   it's -- if it doesn't go that way, we might have to put cuffs

15   on them temporarily to detain them, and then we make our way

16   through all the rooms of the house until we're confident that

17   we've encountered everyone that is possibly in the house.

18   Q.  What is the purpose of you clearing the house?

19   A.  To eliminate all threats, because we just don't know what

20   we're going to face when we come to a house.  I mean, if people

21   have guns, knives, we don't know what we're going to encounter,

22   so --

23   Q.  Were agents, in fact, carrying guns that day?

24   A.  Yes, we were.

25   Q.  How many people were located in the house on that day?

1      A.   Three.

2      Q.   Who were they?

3      A.   That was Chris Walsh, Lauren Montillo, and her minor

4      daughter.

5      Q.   Okay.  Was anybody placed in handcuffs, to your knowledge,

6      that day?

7      A.   I'm pretty sure Chris Walsh was.

8      Q.   For what purpose?

9      A.   Just safety, temporarily detain him, and then we continued

10     to make our way through the house.

11     Q.   At some point in time, were those cuffs removed?

12     A.   Yes.

13     Q.   At what point?

14     A.   Within about a half an hour before that, because Special

15     Agent Loi Cao and myself had talked to Mr. Walsh downstairs in

16     the basement before we talked with Ms. Montillo, and so we

17     removed the cuffs for that.

18     Q.   I'm going to turn to Page 2.  Is this a copy of that front

19     door from the inside?

20     A.   Yes.

21     Q.   Okay.  And this is after you guys had already hit it?

22     A.   That's correct.

23     Q.   Okay.  Now, Page 3, again, is this that entry room that you

24     guys came into?

25     A.   Yes, it is.

1   Q.  Okay.  What happens -- once you guys had cleared the house,

2   can you describe where people are placed, what -- how does the

3   process work of a search at that moment?

4   A.  Sure.  So, if you look at this area here, this table

5   (indicating), that's kind of where we set up, because it's a

6   nice big table.  We had our search kit there.  People started

7   coming in.  They put letters on the walls.  We take

8   photographs.  We call them entry photographs, photographs of

9   the house as it appears before we do anything to it.  Obviously

10  we had to hit the door, so that was an exception.  And then we

11  also take exit photographs, but -- so, in the beginning, we

12  take entry photographs.  People are kind of walking around the

13  house to see if they see anything in plain sight evidence-wise

14  and just to kind of get a general layout of what the house

15  looks like.

16      Somebody will take -- draws a sketch of what the house

17  looks like, and, at some point -- well -- so Loi Cao was the

18  designated seizing agent that day, so he kind of sets up at

19  this table and starts preparing paperwork, labels, those type

20  things, and then obviously we want to talk to people.

21  Q.  To your knowledge, is Ms. Montillo placed in handcuffs?

22  A.  I didn't know, because I was -- I had peeled off to clear

23  some of the house and then helped in some of the other areas.

24  The next time I encountered Ms. Montillo, she was at the table

25  in the room where we were -- where we talked to her.

1    Q.  Okay.  Before we get to that, can we talk about her

2    daughter?  Where was her daughter during this time, and was

3    there anyone with her?  Oh, how old was her daughter?

4    A.  At the time, I think she was maybe nine or ten.

5    Q.  Okay.

6    A.  But I don't know where she was.  But I know that agents,

7    you know, took care of her and -- generally speaking, when

8    we're in a house on a search warrant, we can't let people just

9    go wherever they want.  I mean, they can go wherever they want,

10   but they need to be escorted, and so I didn't know where she

11   was, because I was in other places in the house.

12   Q.  Did you have opportunity to observe her daughter's

13   condition, whether she was in any stress at any point in time?

14   A.  Sure.  It was after I talked with Ms. Montillo, and the

15   daughter seemed to be doing okay.  She made kind of a -- a

16   comment that was funny to us, which was, you know, this is so

17   cool.  You all have cars and guns, and Ms. Montillo kind of

18   made the comment, but, you know, we're not going to talk about

19   this at school, which I understand, but she seemed to be okay.

20   Q.  Okay.  Let's talk about Ms. Montillo.  You said that she

21   was in another room.  Can you tell us:  When you came up from

22   the basement, where was Ms. Montillo?

23   A.  She was in a room -- so, if you look at this picture, if

24   you --

25   Q.  Okay.

1    A.  -- went through that entrance --

2    Q.  This entrance (indicating)?

3    A.  That's right.

4    Q.  Okay.

5    A.  There is a bigger room beyond that, and then --

6    Q.  Okay.  I'll turn to the next page of Government's

7    Exhibit 1.  This would be -- oh, from the other side.  This

8    would be that same room from the other side.  So is this the

9    entrance we were talking about there?

10   A.  That's right.

11   Q.  Okay.

12   A.  So this is the table where Loi Cao was set up.

13   Q.  Okay.  We will turn to the next page of Government's

14   Exhibit 1.  If we were to go through that entrance, is this the

15   room that you entered (indicating)?

16   A.  Yes.

17   Q.  Okay.  And then, turning to the final page of Government's

18   Exhibit 1, what are we looking at here?

19   A.  That's the room where we talked with Ms. Montillo.

20   Q.  Okay.  Is this the same room that we had just entered in

21   the previous picture?

22   A.  That's kind of an adjoining room onto that larger room.

23   Q.  Okay.  Is this the room where you were sitting with --

24   where Ms. Montillo was sitting?

25   A.  That's correct.

1    Q.  Okay.  And did there come a time when you, in fact,

2    interviewed Ms. Montillo?

3    A.  Yes.

4    Q.  Okay.  Tell us how that came about.

5    A.  I had finished talking with Mr. Walsh downstairs.  I came

6    upstairs.  My co-case agent, Dom Palumbo, had said something to

7    the effect of, you know, we should probably talk to Lauren.

8        And then we walked over, and Ms. Montillo was sitting in a

9    chair at this table, and so we sat down with her; told her, you

10   know, look, we just have a search warrant; we don't have an

11   arrest warrant for you; you're not under arrest; you know, you

12   don't have to answer our questions; we really don't need it,

13   but we'd like to ask you questions, and, if you want to answer

14   them, you can.

15   Q.  Okay.  Did she appear to understand what you were saying?

16   A.  Yes.

17   Q.  Did she agree to speak with you at that time?

18   A.  Yes.

19   Q.  Was there any hesitation?

20   A.  No.

21   Q.  Okay.  Now, where did you guys sit?

22   A.  I can't remember exact, but I want to say I was in this one

23   (indicating), because I remembered I had my laptop with me, so

24   the laptop was on the table, and then I can't remember if she

25   was here (indicating), or here (indicating), but it was roughly

1    these spaces where we all sat down at the table.

2    Q.  For the benefit of the record, you've circled three of the

3    chairs around the table?

4    A.  Yes.

5    Q.  Was Ms. Montillo restrained in any way during this

6    conversation?

7    A.  Nope.

8    Q.  Was she advised of her *Miranda* rights?

9    A.  No.

10   Q.  Why?

11   A.  Because she wasn't under arrest.

12   Q.  How long did the entire interview last?

13   A.  God, at the longest, half an hour.

14   Q.  Okay.  During that time, did you take any breaks?

15   A.  No, because it was such a short time.

16   Q.  Did she ever ask to take any breaks?

17   A.  No.  Only the end, when she asked for an attorney.

18   Q.  During this time, did anybody else enter or leave besides

19   yourself or Special Agent Palumbo?

20   A.  I don't remember anybody coming in during that time.

21   Q.  Can you describe Ms. Montillo's demeanor or her outward

22   appearance throughout the interview?

23   A.  She was a little hyper, but, I mean, some folks are.  I

24   mean, I understand the circumstances.  We just kind of came

25   into your house in a dynamic fashion, but, you know, she was

1    able to answer questions.

2    Q.  In your experience as an FBI agent, have you encountered

3    individuals who were under the influence of either drugs or

4    alcohol?

5    A.  Yes.

6    Q.  In your opinion, was Ms. Montillo under the influence of

7    anything at that point in time?

8    A.  No.

9    Q.  Okay.  It was early in the morning, right?

10   A.  That's right.

11   Q.  Had she had -- from what you observed, did she appear to

12   have woken up enough in order to answer the questions by that

13   point in time?

14   A.  Yes.

15   Q.  Did she tell you about her educational background?

16   A.  She did.

17   Q.  What did she tell you?

18   A.  She said she'd gone to college for a few years.  I don't

19   think she finished, but she had gone to a few years of college.

20   Q.  How about employment?

21   A.  She said she worked in real estate some, but wasn't working

22   at the time.

23   Q.  At any point in time during the interview, did you display

24   handcuffs?

25   A.  I had -- I wore them on my belt.  I wasn't like, you know,

1    holding them in my hand, because it's -- so I had them on my

2    belt.

3    Q.  Did you display your firearm?

4    A.  Wore it on my belt.

5    Q.  Okay.  Was Ms. Montillo threatened in any way in order to

6    get her to provide information?

7    A.  No.

8    Q.  Was she made any promises in order to get her to provide

9    information?

10   A.  No.

11   Q.  Would you describe her as cooperative during that

12   interview?

13   A.  For that time, it was somewhat cooperative, sure.

14   Q.  Okay.  At some point in time, did she request to end the

15   interview?

16   A.  Yes.

17   Q.  Okay.  Tell us what happened.

18   A.  So we had played a call that had been recorded with her

19   with our undercover agent where she posed as someone else, and

20   so we got to the end of that call, and so Ms. Montillo decided

21   she wanted to talk to an attorney, and so we said, "Okay.

22   That's fine."

23        So she wanted to go outside and smoke a cigarette, so we

24   went outside with her, and I gave her my phone so she could

25   make a phone call to the attorney, because, you know, we were

1    taking her phone as the evidence, and so she talked with

2    Becky Magaziner.

3    Q.  At the point in time when she requested to talk to an

4    attorney and end the interview, did you ask her any further

5    questions after that moment?

6    A.  No.

7             **MR. DELANEY:**  I have no further questions for Special

8    Agent Lynch.

9             Oh, actually, one more item.  I'm marking

10   Government's Exhibit 2.

11   **BY MR. DELANEY:**

12   Q.  Government's Exhibit 2, is this a copy of the report of

13   interview prepared after this date?

14   A.  Yes, it is, or it was.

15   Q.  Okay.

16            **MR. DELANEY:**  I submit those exhibits, and I have no

17   further questions of this witness.

18            **THE COURT:**  Sure.  Thank you, Mr. Delaney.

19            Ms. Wicks, any cross-examination?

20            **MS. WICKS:**  Thank you, Your Honor.

21                          **CROSS-EXAMINATION**

22   **BY MS. WICKS:**

23   Q.  Good afternoon, Agent.

24   A.  Hi, Ms. Wicks.

25   Q.  Prior to executing the warrant at that residence, had you

1   contacted local law enforcement to let them know about the

2   execution?

3   A.  I believe we had.

4   Q.  And, in making that notification, that's so they're aware

5   that something may be going on at that residence, correct?

6   A.  That's right.

7   Q.  And would the emergency dispatch system through 911 be

8   notified as well?

9   A.  No.  We normally just contact -- so we have what are called

10  task force officers attached to our -- to the building, so we

11  normally find somebody who is with that department and just

12  call them, let them know, hey, you know, we're going to be

13  executing a warrant tomorrow morning at this time.  Sometimes

14  they provide a uniformed vehicle just for presence; sometimes

15  they don't.  And sometimes it's, you know, hey, go ahead and do

16  what you need to do.

17  Q.  And, thinking back to the date in question, was there a

18  uniformed presence?

19  A.  There may have been.  I can't remember.

20  Q.  And were you aware that -- well, you were aware -- as you

21  were standing in front of the residence, you were aware from

22  the other agents that there was a female holding a phone,

23  correct?

24  A.  That's right.

25  Q.  And what, if anything, did the agents indicate that she

1    appeared to be doing with the phone?

2    A.  She was on the phone.  She was kind of holding it out.  She

3    was -- she was out of the bedroom, and then she would go back

4    into the bedroom, and then she would come back out and kind of

5    peer around the door, and it was a lot of in and out.

6    Q.  Okay.  And was there any of the law enforcement that was

7    there outside of the house at that point -- was anyone notified

8    that she was calling 911?

9    A.  I remember somebody saying that in the crowd, but that was

10   the end of it, because, at some point, we had to make entry.

11   Q.  Okay.  So -- but you are -- law enforcement, including

12   yourself, outside of the house, was aware at some point that

13   someone in the residence was calling 911, correct?

14   A.  Yes.

15   Q.  And were you concerned about what that might mean or what

16   the people in the house were thinking if they were calling 911?

17   A.  No, because we've encountered that before where obviously

18   some folks call 911 because they don't know what's going on,

19   but I was announcing myself loudly and continuously that it was

20   FBI, and we had a search warrant, you need to open the door; if

21   you don't open the door, we're going to have to open the door

22   for you.

23   Q.  When you were outside of the house, could you hear what, if

24   anything, was being discussed up on that second floor with that

25   female that was holding a phone and the male that was coming in

1  and out of the bedroom?

2  A.  No.

3  Q.  So it may be fair to say that maybe they couldn't hear you,

4  correct?

5  A.  I'm not sure, because they may have been talking

6  conversationally inside, whereas I was announcing myself with a

7  booming voice.

8  Q.  And, knowing that someone in the residence was calling 911,

9  that recording was not retrieved, correct?

10  A.  That's correct.

11  Q.  And so you don't know actually what, if anything, anyone

12  calling 911 that day said, correct?

13  A.  That's correct.

14  Q.  And do you recall -- well, did you recall learning where

15  the minor child was located in the residence?

16  A.  No.

17  Q.  And I think you said you didn't see the child until later

18  in the morning, correct?

19  A.  Right.

20  Q.  And how much time had passed until you saw the minor child

21  in the house?

22  A.  We hit the door at 6:30.  We interviewed Ms. Montillo right

23  around 7:00.  It went on for about a half an hour, so, sometime

24  shortly after that, I know we -- after she was able to talk to

25  her attorney, we went back inside, and I saw her at some point

1    during the -- during -- while we were executing the rest of the

2    search warrant.

3    Q.   Okay.  So, from the time that you yourself came into the

4    residence until after you had interviewed Chris, after you had

5    represented -- I'm sorry -- interviewed my client, after she

6    had gone outside to call the attorney, and after you came back

7    inside, that's -- at some point after that is when you yourself

8    saw the minor child?

9    A.   Yes.

10   Q.   But, to your knowledge, there were specifically female

11   agents on the search warrant team that day to deal with the

12   minor child and to deal with my client, correct?

13   A.   Yes.

14   Q.   Because, if you're executing a warrant and you clearly

15   specifically are thinking there is going to be a woman and a

16   minor child there, you ensure that there is females on the

17   team, correct?

18   A.   Absolutely.

19   Q.   And you know that Chris had been handcuffed because, when

20   interviewing him, you first had the handcuffs taken off,

21   correct?

22   A.   That's right.

23   Q.   And do you know how long he had been in handcuffs at the

24   time point that you interviewed him?

25   A.   If we made entry at 6:30, and I have interviewed him within

1    that half hour, I mean, within a half an hour, but I don't

2    think he was in cuffs that entire time.

3    Q.  And, at the time point that you came into the room -- the

4    photo displaying a glass table and some chairs around, that's

5    the correct room where you encountered my client, correct?

6    A.  Yes.

7    Q.  And, at that point, do you recall if she was handcuffed?

8    A.  No, I don't think she was handcuffed.

9    Q.  But, from the time that you came into the house until you

10   then came to that room, she had been out of your area -- out of

11   your sight for approximately 30 minutes, correct?

12   A.  That's correct.

13   Q.  And there were other agents that were dealing with her?

14   A.  Right.

15   Q.  And did you get any information from them before you went

16   into that room to attempt to interview her --

17   A.  Yeah.  They said --

18   Q.  -- with Agent Palumbo?

19   A.  Yeah.  They said she wanted to talk to us.

20   Q.  Okay.  And did you inquire what, if anything, they had said

21   to her?

22   A.  No.

23   Q.  So, between 6:30, when you're at the door executing -- to

24   execute the warrant and approximately a minute later when

25   you're ramming the door until about 7:00 a.m., when you go into

```
 1    the room to interview my client, you're unaware of what, if
 2    anything, was told to her by other agents on the scene?
 3    A.  Right.
 4    Q.  But what you are told -- well, do you recall what agent or
 5    what agents told you that she was interested in speaking with
 6    you?
 7    A.  No.  We had a lot of people on the team that day.
 8    Q.  And, prior to that day, had you yourself ever had
 9    interactions with my client?
10    A.  I don't think so.
11    Q.  And were you aware of any medical conditions that she had?
12    A.  I don't think so.
13    Q.  And, to your knowledge, prior to the time point when you're
14    interviewing her, she had asked for her medication, correct?
15    A.  Now that you bring it up, I think she -- gosh.  Did she?
16    It's very possible.
17    Q.  All right.
18    A.  I mean, that sounds like that could be a possibility, she
19    asked for some medication.
20    Q.  And do you recall what the medication was, or what it was
21    for?
22    A.  No.
23              MS. WICKS:  The Court's indulgence.
24    BY MS. WICKS:
25    Q.  You indicated that her boyfriend, Chris, had been placed in
```

```
 1    handcuffs for safety, correct?
 2    A.  Yes, ma'am.
 3    Q.  And a similar thing may have happened to my client,
 4    correct, when she was encountered --
 5    A.  Sure, could have.
 6    Q.  -- correct?
 7    A.  Yes.
 8    Q.  And you don't know what, if anything, was said to her
 9    before she asked to speak to you, correct?
10    A.  No, I have no idea.
11         MS. WICKS:  The Court's indulgence.
12    BY MS. WICKS:
13    Q.  From the point that the FBI came into the house that day,
14    she would have been escorted wherever she went in the house
15    until the search warrant is fully executed, correct?
16    A.  Yes, that's right.
17    Q.  The, I guess, conversation that you had with the minor
18    child saying something along the lines of, "This is so cool.
19    You all have guns and cars," that was after you talked to my
20    client, correct?
21    A.  Yes.
22    Q.  And so it was after she had indicated that she wanted to
23    speak with an attorney before answering any additional
24    questions, correct?
25    A.  Correct.
```

1    Q.  You've reviewed Government 2, the memorandum of the

2    interview, correct?

3    A.  I have.

4    Q.  And, other than what's stated in here, that she was asked

5    about and that she apparently answered, were there other

6    questions asked of her?

7    A.  No.  We try and memorialize what's in there if -- if it was

8    a negative response maybe or there were follow-up questions to

9    what's in there, that's generally about it.

10   Q.  And the interview of her on that date was not recorded,

11   correct?

12   A.  No.

13   Q.  It's not FBI practice to record these interviews, correct?

14   A.  No.  We only -- the policy now is we record interviews if

15   they're custodial, but this wasn't custodial, so we don't

16   record it.

17            **MS. WICKS:**  The Court's indulgence.

18   **BY MS. WICKS:**

19   Q.  Well, you indicated that you had your laptop on the table.

20   Were you taking notes during the interview on the laptop or on

21   a piece of paper?

22   A.  No.  On a piece of paper, we -- I think maybe Dom took the

23   notes, but -- because I was looking at different exhibits and

24   recordings that we had ready to play for her.

25   Q.  You indicated you had played one phone call for her,

1   correct?

2   A.  That's right.

3   Q.  And she was also shown other paperwork, correct?

4   A.  Yes.

5   Q.  To your recollection, are those essentially the two

6   categories of evidence that were displayed to her that day?

7   A.  That's right.

8   Q.  Your description was that she appeared to be a little

9   hyper, correct?

10  A.  Yeah.

11  Q.  And was that in reference to her request for medication?

12  A.  No.  I just mean, like, she seemed to have kind of an

13  aggressive type attitude, kind of a -- I guess a type A

14  personality, I guess is the best way to put it, because she was

15  like that through the rest of the time, because she stayed

16  there for -- in the house for a long time until she finally

17  left because she wanted to go get a phone.

18  Q.  So how long was she in the residence while the warrant was

19  being executed?

20  A.  It was a long time.  It was a few hours at least.

21  Q.  And Chris left with her daughter?

22  A.  I believe so.

23  Q.  When agents came into the house that day after the ramming

24  of the door, were there agents that had their guns displayed

25  other than as you're indicating, on their belt?

1    A.  When we first come in, yes.

2    Q.  Okay.  And, when you first come in, is she still up on the

3    second floor that the agents could see through the window?

4    A.  Yes.

5    Q.  And what, if anything, did you say as you came in the door?

6    A.  I don't remember saying much of anything, because, when I

7    went in, I peeled off to the left there, because I didn't -- of

8    course now we know what's there, but we didn't know how far and

9    deep room-wise it was going to go.  So I started to clear that

10   area, and then someone else took care of Ms. Montillo, and

11   then, after I finished clearing that area, then I came back out

12   and started helping other areas be cleared.  We cleared the

13   basement, et cetera.

14   Q.  As far as you were told and knew at the time, was she

15   compliant with what agents were asking her to do?

16   A.  I think, once we were in the house, yes.

17   Q.  After she went outside to smoke a cigarette and called her

18   attorney on your phone, I believe your testimony was, did she

19   indicate that she wanted to sit down with her attorney, or

20   essentially, since she asked to speak to a lawyer, there wasn't

21   any other attempt to ask her any questions?

22   A.  Right.  So she talked with her attorney on the phone for a

23   little bit.  I think she let me talk with her on the phone.

24   She had a question as to whether it was a federal search

25   warrant or a state search warrant.  I returned the phone to

1    Lauren.  She continued to talk to Becky, and, once the phone

2    call was done, you know, we stayed outside for a couple minutes

3    while she finished her cigarette, and then went back inside.

4    Q.  Okay.

5              MS. WICKS:  May I have the Court's indulgence?

6              THE COURT:  Certainly.

7         (Counsel conferring with the Defendant.)

8              THE COURT:  Can I see Exhibit 2, please?  By the way,

9    Government Exhibit 2 is what?

10             MR. DELANEY:  Government Exhibit 2 is a copy of the

11   302.

12             THE COURT:  Yes.  The FBI 302, is there a copy up

13   here at the desk?

14             MS. WICKS:  I have --

15             MR. DELANEY:  It's an IRS MOI.  I will pass up the

16   original copy -- oh, you have it.  So.

17             THE COURT:  So this is not an FBI 302; it's an IRS

18   form?

19             MR. DELANEY:  That's correct.

20             THE COURT:  Okay.  So an IRS agent took the

21   statement; he did not?

22             MR. DELANEY:  It is -- the two participants are

23   Bradford Lynch and Dominic Palumbo --

24             THE COURT:  Okay.

25             MR. DELANEY:  -- and it's signed by Dominic --

1    **THE COURT:**  Let me see this, please.  I don't need

2    the photographs.

3        (Document tendered to the Court.)

4        **THE COURT:**  So this is a statement taken, just while

5    we're waiting, for the Internal Revenue Service under -- an

6    Internal Revenue Service form; not an FBI 302, correct?

7            **MR. DELANEY:**  That's correct, Your Honor.

8            **THE COURT:**  All right.  You may continue, Ms. Wicks.

9            **MS. WICKS:**  Thank you.

10   **BY MS. WICKS:**

11   Q.  Agent, would it sound correct that, at approximately 8:30,

12   my client left to take her daughter to school, and then came

13   back?

14   A.  That -- that could have happened, sure.

15           **MS. WICKS:**  The Court's indulgence.

16       (Pause.)

17           **MS. WICKS:**  No further questions at this time, Your

18   Honor.

19           **THE COURT:**  The Court has a few questions.

20           Agent Lynch, just let me clarify here.  Just what I

21   understand, there was no FBI 302, which means the IRS took the

22   statement; you did not?

23           **THE WITNESS:**  That's correct.  So Mr. Palumbo and I

24   both interviewed her at the same time --

25           **THE COURT:**  I understand.

1          **THE WITNESS:**  -- and we agreed that he would write

2     the statement.

3          **THE COURT:**  Which means the IRS took the statement,

4     and you did not.  If you took the statement as an FBI agent,

5     you'd have filled out a Form 302, correct?

6          **THE WITNESS:**  Sure.

7          **THE COURT:**  Okay.  All right.  With respect to the --

8     just to the matter of the ramming of the door, as I understand

9     it, you arrived around 6:30 in the morning, you knocked, there

10    was no response, you saw a woman in the house with a telephone,

11    and then you took the step to ram the door, correct?

12         **THE WITNESS:**  That's right.  After we waited about a

13    minute.

14         **THE COURT:**  Waited about a minute.

15         **THE WITNESS:**  A full minute.

16         **THE COURT:**  I'm sorry?

17         **THE WITNESS:**  About a full minute.

18         **THE COURT:**  Okay.  You waited about a full minute,

19    and then you rammed the door?

20         **THE WITNESS:**  Correct.

21         **THE COURT:**  Okay.  How often -- how long have you

22    been an FBI agent?

23         **THE WITNESS:**  Twenty-one years, sir.

24         **THE COURT:**  How often have you rammed doors in white-

25    collar criminal cases?  I'm not talking about drug dealers.

 1    I'm talking about white-collar criminal cases.

 2           THE WITNESS:  Right.

 3           THE COURT:  I'm not talking about the number of times

 4    with respect to drug dealers, people known to be with guns.

 5    How many times have you rammed a door in a white-collar

 6    criminal case?

 7           THE WITNESS:  Probably five to ten.

 8           THE COURT:  Five to ten over the course of 21 years?

 9           THE WITNESS:  Yes, sir.

10           THE COURT:  All right.  And, when you do so, you

11    obviously then arrive not knowing -- if you take the step to

12    ram a door, which you agree is a step you ordinarily don't

13    take, correct?

14           THE WITNESS:  Yes, sir.  It's an extraordinary step,

15    because, you know, we want to make sure that they know we don't

16    want to do that.

17           THE COURT:  I understand.  It is an extraordinary

18    step.  That's why I'm asking the question.

19           So, when you take the extraordinary step of ramming a

20    door, you obviously, then, don't know what's behind the door or

21    what the situation is, so you clearly -- in defense of your own

22    position, you arrive with guns drawn; do you not?

23           THE WITNESS:  That's right, sir.

24           THE COURT:  All right.  So, when you rammed the door

25    and arrive in the house, guns were drawn, correct?

1          **THE WITNESS:**  Yes.

2          **THE COURT:**  All right.  And how quickly was

3    Chris Walsh handcuffed?

4          **THE WITNESS:**  That, I don't know, because, when we

5    went, in I peeled off --

6          **THE COURT:**  Okay.

7          **THE WITNESS:**  -- to the left, and then somebody else

8    handled him, because they were up on the second floor, so some

9    other agents handled --

10         **THE COURT:**  Well, I assume -- I gather -- I don't

11   know.  I'm waiting.  I guess we'll hear from Agent Palumbo.  I

12   assume that steps were taken pretty quickly with respect to

13   securing the residence, because you've rammed the door and you

14   arrive with guns drawn because you don't know what's inside the

15   house, obviously, correct?

16         **THE WITNESS:**  Yes, sir.  We try to do it in an

17   expedient fashion.

18         **THE COURT:**  Right.  And, to the extent that you take

19   the extraordinary step of ramming the door, then it appears

20   that apparently someone handcuffed Chris Walsh, correct?

21         **THE WITNESS:**  Yes, sir.

22         **THE COURT:**  Okay.  And you don't know whether or not

23   someone handcuffed the Defendant, Ms. Montillo, or not?

24         **THE WITNESS:**  That's right.  I don't know.

25         **THE COURT:**  Okay.  All right.  And, as I understand

1   it, every -- I know you say there were female officers there

2   with you.  Everyone was in plain clothes; is that correct?

3          THE WITNESS:  Yes, sir.

4          THE COURT:  Okay.

5          THE WITNESS:  However, we do wear -- we require --

6   our policy requires us, when we go in, we wear the shields --

7          THE COURT:  Right.

8          THE WITNESS:  -- identifying us as FBI or IRS or

9   police --

10         THE COURT:  You have shields on your chest, though,

11  when you went in?

12         THE WITNESS:  Correct.

13         THE COURT:  Okay.  And I gather that the cars that

14  were there in front of the house there at -- essentially on

15  Berans Road in Owings Mills, they were not marked police cars

16  as well, correct?

17         THE WITNESS:  No, they're not.  They're plain cars,

18  sir.

19         THE COURT:  All right.  I'm just trying to clarify.

20  All right.  Well, thank you very much.  Thank you.

21         All right.  Any redirect by the Government,

22  Mr. Delaney?

23         MR. DELANEY:  Briefly, Your Honor.

24         I'll also note for the benefit of the record that

25  Special Agent Palumbo was not part of the initial entrance

1    team, so I will not be calling him for that purpose, so, if

2    there is anything we'd like to cover, Special Agent Lynch would

3    be the one.

4         **THE COURT:**  All right.

5                         **REDIRECT EXAMINATION**

6    **BY MR. DELANEY:**

7    Q.  So, once you entered the residence, did you clearly

8    identify the purpose of why you were there?

9    A.  Yes.

10   Q.  Were any tricks used at any point in time?

11   A.  No tricks.

12   Q.  Okay.  And, when you sat down and -- at any point in time,

13   did you ever see Ms. Montillo in handcuffs?

14   A.  No.

15   Q.  Okay.  And, when you encountered her, did you clearly

16   identify who you were and what you were doing there?

17   A.  Yes.  I identified myself as an FBI agent, and Dom

18   identified himself as an IRS agent, and that she was a subject

19   of investigation, and we wanted to ask her questions.

20   Q.  Did Ms. Montillo ask you to take medication, to your

21   knowledge?

22   A.  It's a possibility, but I -- you know, that's a --

23              **THE COURT:**  The question being:  Did she ask --

24              **THE WITNESS:**  I don't recall.

25              **THE COURT:**  -- the agent if she could take

1    medication?

2              **MR. DELANEY:**  Yes, Your Honor.

3              **THE COURT:**  That came out that she asked the agent --

4              **THE WITNESS:**  If I'd take --

5              **THE COURT:**  -- if he'd take medication.

6    **BY MR. DELANEY:**

7    Q.  Is it your practice to allow -- to prevent or allow

8    individuals from taking medication at -- during the time of a

9    search warrant?

10   A.  If they can show -- if they have a medicine bottle and it

11   shows that -- the label shows that that medicine is prescribed

12   to them, and it's current, and it's something that's needed,

13   then, yes, we allow them to take that.

14   Q.  Okay.

15             **MR. DELANEY:**  Nothing further, Your Honor.

16             **THE COURT:**  All right.  Thank you.

17             Any recross just on that point, Ms. Wicks?

18             **MS. WICKS:**  No, Your Honor.  Thank you.

19             **THE COURT:**  All right.  Thank you.  You may step

20   down, Agent Lynch.  You may step down.  Thank you very much.

21        (Witness excused.)

22             **THE COURT:**  Any objection if he stays here in the

23   courtroom, Ms. Wicks?  Any objection if he stays here in the

24   courtroom?

25             **MS. WICKS:**  No, Your Honor.

1          **THE COURT:**  All right.  Ordinarily we just have one

2     case agent, but I'll have -- Agent Lynch can stay here.

3          Okay.  Mr. Delaney, any other testimony with respect

4     to this?

5          **MR. DELANEY:**  No, Your Honor.  I can present argument

6     if the Court wants to hear it.

7          **THE COURT:**  You can, but I will tell you that --

8     well, it's up to the Government, but I would certainly like to

9     hear more information about the entry in the house and who

10    dealt with Ms. Montillo.

11         **MR. DELANEY:**  Your Honor, I don't have any further

12    witnesses at this time to present to the Court.

13         What I can submit is that the evidence that we just

14    heard indicated not only that there was a full-minute pause

15    before Ms. Montillo came to the door, but that she entered and

16    exited a room multiple times despite repeated requests to come

17    downstairs.  It was only at that point in time that the

18    decision was made to take the door.

19         **THE COURT:**  No.  I'm not really -- Agent Lynch has

20    acknowledged that it's an extraordinary step, and it is.  It's

21    just an extraordinary step to take a ramming device and ram a

22    door down in a white-collar criminal case, and he indicates --

23    he's testified that he's done it five to ten times in 21 years.

24    I suspect it's more like five times in 21 years, and not ten.

25         So it's an extraordinary step.  So I'm trying to --

1   the Government is free to present whatever evidence it wants,

2   but, quite frankly, I'd like to know who dealt with the

3   Defendant.  If the Government chooses not to present that

4   evidence, that's fine, but clearly I recognize that -- it's

5   been established that --

6       (Counsel conferring.)

7       **THE COURT:**  It's been established that Chris Walsh,

8   her boyfriend, was handcuffed.

9       **MR. DELANEY:**  Yes, Your Honor.

10      **THE COURT:**  And I haven't heard any evidence with

11  respect to whether Ms. Montillo has been handcuffed.  I don't

12  know what actually occurred as to her in terms of the

13  voluntariness of any statements that were made and with respect

14  to whether or not it would or would not trigger *Miranda*

15  warnings, but, if the Government chooses not to present any

16  more evidence, that's fine.  I'm curious, quite frankly.  I'm

17  not sure if Ms. Montillo -- whether the Defendant is presenting

18  any evidence or not.  I don't know.

19      **MR. DELANEY:**  Yes, Your Honor.  I don't think the

20  Defendant can present any evidence that actually will overcome

21  the fact that this took place in her living room comfortably in

22  a chair.  I'm not going to make the argument at this moment,

23  though, because I think it's important to Your Honor that you

24  hear the information you think needs to be heard.

25      **THE COURT:**  That's why I'm asking.  That's why I'm

1    asking.

2         **MR. DELANEY:**  I'm happy to pause this hearing, even

3    right up to trial, to bring in the agent who came in that day

4    and encountered Ms. Montillo.

5         **THE COURT:**  Well, that's fine.

6         **MR. DELANEY:**  I'm happy to --

7         **THE COURT:**  Ms. Wicks, are you prepared to present

8    any testimony here today, or are you awaiting further testimony

9    from the Government, or what's your preference?

10        **MS. WICKS:**  Well, I would be interested to hear from

11   that agent.  I will let the Court know it's my understanding

12   that my client did call 911 that day.  I have been her lawyer

13   since May, and unfortunately learned that the County -- I think

14   it's Baltimore County -- that they destroy the 911 calls after

15   a year, so, by the time I've been in the case, we can't get --

16        **THE COURT:**  What evidence are you proffering to

17   present here today on this question?

18        **MS. WICKS:**  Well, so what I'm saying, I'm just making

19   a record as to why I can't put the 911 call --

20        **THE COURT:**  I understand --

21        **MS. WICKS:**  -- in.

22        **THE COURT:**  -- but what other evidence -- I

23   understand that, and that's fine.  You can make that proffer.

24   What other evidence are you intending to present here today?

25        **MS. WICKS:**  I think there is the potential for my

1    client to testify, but I would like the chance to make that

2    determination with her after we hear from the agent or agents

3    that dealt with her prior to the time point of the interview at

4    7 o'clock.

5         **THE COURT:**  All right.  Well, let me just let you

6    know where we are on the matter.  The matter of the validity of

7    the search warrant has been -- the facts have been submitted.

8    There is no testimony to be presented.  The legal positions

9    have been summarized, and the Court can deal with the papers

10   and ruling upon the validity of the search.

11        Correct from the point of view of the Government?

12        **MR. DELANEY:**  Yes, Your Honor.

13        **THE COURT:**  Correct from the point of view of the

14   Defense?

15        **MS. WICKS:**  Yes, Your Honor.

16        **THE COURT:**  All right.  Now, with respect to the

17   matter of the statements made by the Defendant on December the

18   22nd of 2016, as reflected in Government Exhibit 2, which is

19   the memorandum of Agent Palumbo with respect to the statements

20   that she made, I see what the statement is, and there is

21   nothing further to be submitted.  We'll have to make sure we

22   get an extra copy of this, Madam Clerk, here, and this is

23   Government Exhibit 2, just for my file.

24        Quite frankly, the Court would prefer if I get more

25   facts presented to me with respect to this matter.  Even by

1    Agent Lynch's testimony, it's an extraordinary event to have a

2    ramming device in a white-collar criminal case and ram a door

3    down, and then arrive with your guns drawn.  And those facts

4    are before me, and the facts are before me that, clearly, at

5    least the man in the house, Christopher Walsh, according to the

6    testimony I've heard thus far, was placed in handcuffs at some

7    point in time.

8        With respect to the matter of the custodial or non-

9    custodial nature of this, *Miranda* warnings, under *Miranda*

10   *versus Arizona*, the 1966 opinion of the Supreme Court, are

11   required when a subject is interrogated while in custody, and

12   the fact that one may say that the individual is not under

13   arrest is one factor to consider in determining whether one is

14   in custody or not, that's not totally dispositive, as I think

15   the Fourth Circuit has recognized in the case -- I think it's

16   *Giddings* or *Giddins*, whatever the name of the case is.

17       And the question becomes whether or not this is truly

18   a voluntary statement, and it depends upon the facts of each

19   case, as far as I'm concerned, and I would be much more

20   comfortable if the Government presents testimony of agents who

21   dealt and interacted with Ms. Montillo.

22       To put it bluntly, so it's clear here, the burden of

23   proof at a suppression hearing does not impose any greater

24   burden than preponderance of the evidence upon the Government,

25   but, as the Supreme Court has noted, I think in *Colorado versus*

1    *Connelly*, at 479 U.S. 157, an opinion of the Supreme Court in

2    1986, the preponderance of the evidence burden is there with

3    respect to a waiver of *Miranda* rights, and the preponderance of

4    the evidence burden in terms of voluntariness of the statement

5    is there, and the Government bears the burden of proof by a

6    preponderance of the evidence, which means that I'm more than

7    willing to give the Government time to get other agents

8    together before I make a finding.

9            But I will say this:  With respect to arriving with

10   your guns drawn after ramming a door down and at least one

11   person in the house is placed in handcuffs for a period of

12   time, I don't know that I'm prepared to make a finding that

13   someone is free to leave, and, based upon that and in fairness

14   to the Government, the Government is free to call other agents.

15   And, point of fact, I want to know who dealt with Ms. Montillo.

16   Who is the first person -- who is the first agent who spoke to

17   her?  What did that agent do?

18           Obviously it's clear -- it's not a criticism of the

19   Government.  To the extent that the Government feels it's

20   got -- as Agent Lynch has clearly candidly testified, if you

21   ram a door down and you go into a house, obviously you have

22   your guns drawn, because you don't have any idea what's behind

23   the door, and that's understandable.

24           By the same token, that also means that a defendant

25   certainly doesn't think that they're free to walk out the door

1    when people come in with their guns drawn and when someone's

2    been handcuffed.  So the notion that they're free to leave, if

3    that's the burden -- that is the burden, I guess, upon the

4    Government here -- I need to hear more testimony, and, in

5    fairness to the Defendant, the Defendant, before she makes a

6    determination under Rule 104(b), I believe, or 104(d), rather,

7    of the Federal Rules of Evidence, although the rules don't

8    apply formally, the reality is that a defendant in a

9    suppression hearing, when it comes to certain factual matters,

10    is free to testify as to those limited matters, and the

11    Government is free to cross-examine on those limited matters,

12    and so I don't have a full picture here of what actually

13    happened as to Ms. Montillo.

14         I have a full picture of a statement she made, and I

15    clearly see that there is a comment by Agent Palumbo that she's

16    told that she's free to have a lawyer talk if she wants to or

17    not, but that doesn't really end the inquiry in terms of the

18    overall nature of the voluntariness of a statement, and so I

19    need more evidence on that.

20         I can definitely rule on the papers with respect to

21    the validity of the search warrant or lack thereof, and I can

22    rule -- and I will follow up pretty quickly with respect to

23    rulings on that.  But, as to the matter of the suppression of

24    statements, I think we just need to continue the hearing.

25         So we will continue the hearing.  The trial date is

1    December the 3rd, and we'll go over some dates here.  Let me

2    make sure how much time we need.  I'm certainly not going to

3    wait until December the 3rd to do this.

4        (Whereupon, a conference was held at the bench off the

5    record with the law clerk.)

6            **THE COURT:**  All right.  With that, I don't think

7    there is anything else for me to address as to the motions to

8    suppress either the evidence that was seized -- the Defendant's

9    withdrawn any kind of request for a *Franks* hearing under *Franks*

10   *versus Delaware*, and the Government and the Defendant both

11   indicated that, as to the validity of the search warrants and

12   probable cause, that it all can be dealt with from the papers,

13   and I can rule as a matter of law.

14           Again, correct from the point of view of the

15   Government, Ms. McDonald and Mr. Delaney?

16           **MS. McDONALD:**  Yes, sir.

17           **THE COURT:**  Correct from your point of view,

18   Ms. Wicks?

19           **MS. WICKS:**  Yes, Your Honor.

20           **THE COURT:**  Okay.  That's fine.  So I think where we

21   are now is the matter of the Defendant's motion to dismiss

22   Counts 5, 6, and 7 of the Second Superseding Indictment in this

23   case.  Counts 5, 6, and 7 -- I'm sorry.  Counts 2 and 3, and

24   then 5, 6, and 7, Count 2 charging the Defendant with wire

25   fraud on or about April 26th, 2012; Count 3 charging the

1    Defendant with wire fraud on or about May 3, 2012; and then

2    Counts 5, 6, and 7 essentially charging the Defendant with

3    money laundering -- a money laundering violation in June, July,

4    and September of 2012 with respect to transfer of funds from

5    the bank here to SunTrust Bank.

6          And that relates to transfers from a bank, HSBC, in

7    Hong Kong, to accounts in SunTrust Bank, SunTrust Bank, and, in

8    Count 7, Citibank, and, as to that, that is a legal issue that

9    has been raised by the Defendant, and, as to that, Ms. Wicks,

10   I'd be glad to hear from you.

11         And, as I understand it, essentially the basis of the

12   Defendant's motion here is that these counts must be dismissed

13   because the Government did not timely file charges in light of

14   essentially the request under the Mutual Legal Assistance

15   Treaty with the Government of Hong Kong, and essentially the

16   issue of the statute of limitations that applies here as to

17   these charges under 18 United States Code § 3292, and so, with

18   that, I'd be glad to hear first from you, Ms. Wicks, and then

19   I'll hear from the Government, and I'll give you an opportunity

20   to respond.

21         Is there any testimony -- there is no testimony to be

22   presented on this issue, correct?

23         **MS. WICKS:**  No, Your Honor.  I submitted along with

24   my motion --

25         **THE COURT:**  From the Government, no testimony,

```
 1      correct?
 2              MS. McDONALD:  I agree, Your Honor.
 3              THE COURT:  Okay.  So, with that, it's a legal
 4      argument.  I'd be glad to hear from you, Ms. Wicks.
 5              MS. WICKS:  And, Your Honor, just I had filed under
 6      seal everything that I had received from the Government --
 7              THE COURT:  Yes.
 8              MS. WICKS:  -- regarding this issue --
 9              THE COURT:  Yes.
10              MS. WICKS:  -- and so that's an exhibit --
11              THE COURT:  That's fine.
12              MS. WICKS:  -- that I believe the Court has a copy
13      of.  And, before I confuse myself further, because, every time
14      I look at this issue, I get a little more confused myself, I
15      think, but the -- so the first issue as to -- that really, in
16      my mind, is whether or not the statute of limitations was even
17      running at the time point that the Court granted the request,
18      so that's why that really only had to do with -- just flipping
19      back --
20              THE COURT:  Well, that's a standard that you feel
21      should apply.
22              MS. WICKS:  Yes.
23              THE COURT:  The Government has noted that, upon any
24      kind of notice to a foreign government, that that notice has
25      been made.  You're attaching significance to when there is a
```

```
 1    particular notice to the Court.

 2              MS. WICKS:  Correct.

 3              THE COURT:  And the Government is essentially focused

 4    upon the matter of notice to the foreign government.  In a

 5    nutshell, that's essentially it, correct, Ms. McDonald?

 6              MS. McDONALD:  Yes, Your Honor.

 7              THE COURT:  Correct from your point of view,

 8    Ms. Wicks?

 9              MS. WICKS:  Yes, Your Honor.

10              THE COURT:  And that's it in a --

11              MS. WICKS:  And I think the issue really is a circuit

12    split.

13              THE COURT:  I'm sorry?

14              MS. WICKS:  I think the issue really is a circuit

15    split.  I mean, I noted one decision.  There is now a Ninth

16    Circuit decision that the Government put.  The District Court

17    decision that I cited, which is Kozeny, K-O-Z-E-N-Y.  There is

18    also a Second Circuit case which is 541 F.3d 166, which is a

19    2008 decision, and that upheld the District Court's finding

20    that the statute of limitations had expired.

21              So, in terms of that legal issue --

22              THE COURT:  I mean, I guess I'll give you time to

23    couch your arguments.  We need to go over the facts here in

24    terms of what is the facts that are not in dispute.

25              The circuit split that I can see essentially is the
```

1    case that you cited -- the District Court cite, which I've got

2    the Second Circuit cite here.  Essentially you have *United*

3    *States versus Kozeny*, K-O-Z-E-N-Y, 541 F.3d 166, a Second

4    Circuit opinion in 2008, in which the Second Circuit said the

5    plain language of 18 United States Code § 3292 -- why don't we

6    just step back for a minute here.

7            The language of § 3292 specifically states that --

8    § 3292(b), that the period of suspension under this section

9    shall begin on the date on which the official request is made,

10   and the gravamen here is that there is a circuit split over

11   whether the Government may request tolling of the statute of

12   limitations after the limitations period has run, and it

13   focuses upon whether the Government can achieve tolling by

14   requesting evidence from a foreign government before the

15   limitation period is issued, or if the Government must also

16   request tolling from the District Court before the expiration

17   of the limitations period.

18           And you've got the Second Circuit in that *Kozeny*

19   case, which has stated the plain language of § 3292 requires

20   that an application to suspend the running of statute of

21   limitations be filed, meaning with the Court, I gather, before

22   the limitations period is expired, whereas the Ninth Circuit, a

23   2011 opinion, three years later, in *United States versus*

24   *Jenkins*, J-E-N-K-I-N-S, 633 F.3d 788, allows the tolling of

25   statute of limitations period because the Government had made a

1    Mutual Legal Assistance Treaty request before the limitations

2    period expired, and apparently everyone agrees the Fourth

3    Circuit has never dealt with this issue, and so that's the

4    legal issue before the Court.

5           So I think I've set what the argument is, and I'd be

6    glad to hear from you on this, Ms. Wicks, and then I'll hear

7    from Ms. McDonald or Mr. Delaney.

8           **MS. WICKS:**  And, Your Honor, I think the Government

9    and I both agree in terms of the facts.  There is the

10   submission that the Court has every page of that the Government

11   made, and Judge Blake's Order --

12          **THE COURT:**  Well, let me just -- I'll summarize what

13   I think are the facts, and, if I have them wrong, tell me.

14          Count 2 of the Second Superseding Indictment charges

15   that -- and this is the operable Indictment here, the Second

16   Superseding Indictment -- charges that, on or about April 26,

17   2012, in the District of Maryland, the Defendant, Lauren M.

18   Montillo, for the purpose of executing a scheme and artifice to

19   defraud, transmitted and caused to be transmitted through

20   interstate commerce sounds, writings, signs, and symbols --

21   namely, an e-mail from her LaurenMontillo@aol.com account to

22   Kelly Ray Coronado, Del Rio, Texas at his Yahoo.com personal

23   address, and to Eric J. Becker using the e-mail address,

24   et cetera, et cetera.

25          Mr. Becker was a co-defendant in this case, but is

1    now deceased, correct?  He has passed away, correct?

2              **MS. WICKS:**  Yes, Your Honor.

3              **THE COURT:**  Okay.  I think no one disputes that.

4              And then Count 3 of the Second Superseding Indictment

5    includes the allegations of Count 1, and it alleges that, on or

6    about May 3, 2012, in the District of Maryland, that Lauren M.

7    Montillo, for the purposes of executing a scheme and artifice

8    to defraud, transmitted and caused to be transmitted in

9    interstate commerce sounds, writings, signs, and symbols --

10   namely, an e-mail from her LaurenMontillo@aol.com account to

11   Eric J. Becker at his Comcast.net personal e-mail account

12   regarding corrections to fake errors.

13             So, as to Count 2 and 3, the charges -- the

14   applicable statute of limitations for both of those are wire

15   fraud claims.  Yes.  Both Count 2 and Count 3 are charges under

16   the wire fraud statute, 18 United States Code § 1343.  The

17   facts are not in dispute that the applicable statute of

18   limitations for these offenses is five years as set forth under

19   18 United States Code § 3282(a), which means, as to Count 2,

20   the statute of limitations would expire on April 26, 2017, and,

21   as to Count 3, it would expire on May 3, 2017.

22             The Government agree with my summary of that from

23   your point of view, Ms. McDonald?

24             **MS. McDONALD:**  Yes, Your Honor.

25             **THE COURT:**  From your point of view, Ms. Wicks?

1          **MS. WICKS:**  Yes, Your Honor.

2          **THE COURT:**  Okay.  So they are the undisputed facts.

3          And then the facts apparently are clearly undisputed

4     that, on April 24th, 2017, the Government filed a Mutual Legal

5     Assistance Treaty, better known as MLAT, request with Hong

6     Kong -- with officials in Hong Kong to obtain evidence located

7     abroad, and the Government contends that that is the operable

8     date, which is clearly before April 26th or May 3rd of 2017,

9     and ultimately the Government requested *ex parte* and filed a

10    motion with the Court on May 5, 2017.

11         Apparently Judge Blake must have been the chambers

12    judge in this matter.  This case was never assigned to

13    Judge Blake.  It was assigned to Judge Garbis before it was

14    transferred to me, correct?

15         **MS. McDONALD:**  She was the Grand Jury Judge, Your

16    Honor.

17         **THE COURT:**  That's right.  She was the Grand Jury

18    Judge, so -- it was a preliminary matter under Grand Jury

19    investigation, so Judge Blake signed the -- was then the Chief

20    Judge of the Court.  On May 5, 2017, Judge Blake issued an

21    order which suspended the statute of limitations from April 24,

22    2017, until the foreign authority takes final action under the

23    request, which suspension will not exceed three years.

24         Now, they are apparently undisputed facts as well.

25    Correct from the point of view of the Government?

1          **MS. McDONALD:**  Yes, sir.

2          **THE COURT:**  Correct from your point of view,

3     Ms. Wicks?

4          **MS. WICKS:**  Yes, Your Honor.

5          **THE COURT:**  Okay.  So they are the facts that are not

6     being disputed.

7          Then, ultimately the first Indictment was filed on

8     December 14, 2017.  The First Superseding Indictment, bringing

9     Counts 2 and 3, was filed on January 18, 2018, and then we have

10    the Second Superseding Indictment filed on October 11, 2018.

11         The issue precisely before the Court here is whether

12    this Court properly tolled the statute of limitations pursuant

13    to 18 United States Code § 3292, and that's where we are.  And,

14    Ms. Wicks, I think I've set -- you're free to add anything you

15    want to your argument.  I've read your papers.  I understand

16    what your legal argument is, but anything else you want to add

17    on this?  I'll hear from the Government as well.

18         **MS. WICKS:**  Not as to Count 2 and 3, Your Honor.

19         **THE COURT:**  Okay.

20         **MS. WICKS:**  It's a slightly different argument as to

21    5 through 6 and 7.

22         **THE COURT:**  All right.  Well, let me just, as to

23    those two counts first -- as to Count 2 and 3, the Ninth

24    Circuit, in the *Jenkins* case, specifically noted and found that

25    an order pursuant to § 3292 can revive or extend an expired

1    period of limitations, and the starting point of the tolling of

2    the limitations period is an official request for evidence, not

3    the date the motion is made.

4            And, essentially, in the *Kozeny* case, the Second

5    Circuit noted that the statute allows a District Court to

6    suspend the running of the statute of limitations, but the

7    Court said, because the statute is no longer running, if it has

8    already expired, it cannot suspend an expired limitation

9    period.

10           The Ninth Circuit, in the *Jenkins* case, specifically

11   noted that the only specific requirement set forth under § 3292

12   is that the official request for evidence in a foreign country

13   be made before the statute of limitation expires, and that then

14   that application for suspension be submitted to the District

15   Court before the Indictment is filed.

16           And I just don't -- from what I can read -- I'm just

17   trying to give you an opportunity to respond, Ms. Wicks, on

18   this.  The statute only requires that the Government make an

19   application for the tolling before an Indictment is issued, and

20   the statute specifies that the suspension shall begin on the

21   date when the Government makes its request of a foreign

22   government.  I mean, that's essentially what it says in the

23   statute.

24           So I understand how the Second Circuit interpreted

25   this and how the Ninth Circuit interpreted it, and there is no

```
 1    question that the Government made its MLAT, M-L-A-T, Mutual

 2    Legal Assistance Treaty request, with the Hong Kong officials

 3    before the statute of limitations expired as to Count 2 on

 4    April 26th, and certainly before the limitations were expired

 5    on Count 3, May 3, 2017.

 6              I don't see how else it could be interpreted any

 7    other way.  If you want to add anything on this.  I understand

 8    what the legal issue is.  The Fourth Circuit hasn't ruled.

 9    I've looked at the Second Circuit.  I've looked at the Ninth

10    Circuit.  And I understand how the Second Circuit interpreted

11    this, but I don't get it from the language, quite frankly.

12              Anything else you want to add on this?

13         MS. WICKS:  No, Your Honor.  I mean, I clearly was

14    aware there was the circuit split and --

15         THE COURT:  Okay.  That's fine.

16         MS. WICKS:  -- raised the issue and --

17         THE COURT:  Ms. McDonald, you're ahead on this, but

18    do you want to add anything further?

19      (Laughter.)

20         MS. McDONALD:  Not while I'm ahead, Your Honor.

21    Thank you.

22      (Laughter.)

23         THE COURT:  That's right.  At one time, I'll tell

24    you -- we're laughing here.  One time, I had Judge Winter of

25    the Fourth Circuit ask me that question, and I said, "I have
```

1        nothing further to add, Your Honor," and Judge Winter --

2        ironically enough, I saw his daughter yesterday.  Judge Winter

3        looked at me and said, "Mr. Bennett, you've never been more

4        eloquent."

5            (Laughter.)

6            **THE COURT:**  So that's always the joke I've carried in

7        my career.  We're laughing again.

8            I'll look at this as well, and I'll rule upon it.

9        I've got all the papers I need to rule upon the issue of the

10       validity or lack thereof of a search warrant, and I have this

11       fully briefed on the statute of limitations question as to

12       Counts 2 and 3.

13           I'd be glad to hear from you on Counts 5 and 7,

14       Ms. Wicks, on this.  Counts 5, 6, and 7 essentially charge, so

15       we're clear here -- Count 5 charges that the Defendant,

16       Ms. Montillo, did knowingly engage and attempt to engage in the

17       following monetary transactions by, through, and to a financial

18       institution, affecting interstate and foreign commerce, in

19       criminally-derived property in a property of greater than

20       10,000.  That is the transfer of U.S. funds, such property

21       having been derived from a specified unlawful activity; that

22       is, wire fraud as described in Count 1.

23           And then it lists Count 5, provides a date of

24       June 28, 2012, an amount of $483,000 transferred from MLL

25       Holdings at HSBC Hong Kong to Grace B. Kilchenstein,

1    K-I-L-C-H-E-N-S-T-E-I-N, Esquire, in an escrow account,

2    Number 3945 at SunTrust Bank.

3          Count 6 charges that, on or about July 24th, 2012, in

4    an amount of $104,000, there was essentially the monetary

5    transaction from the same bank at HSBC Hong Kong to the same

6    Grace B. Kilchenstein, and the same account number.

7          And then Count 7 charges that, on or about September

8    21, 2012, there was a transfer of $65,000 from Skywall, Ltd.,

9    which is at HSBC Hong Kong, to Triple 7, LLC account,

10   Number 8787 at Citibank.

11         So, on that, I'll be glad to hear from you on the

12   statute of limitations argument as to those, Ms. Montillo -- I

13   mean, Ms. Wicks.

14         **MS. WICKS:**  That's fine, Your Honor.

15         Your Honor -- and, again, it's looking at the

16   exhibit, and I cited Exhibit 1 at 18, which is where the

17   Government claims that it needed the foreign evidence from the

18   MLAT to, quote, identify additional victims of similar frauds

19   and as well as sources and dispositions of fraud proceeds.  But

20   what's charged in 5, 6, and 7 are activity in 2012, the

21   transfer of funds into accounts in the United States.  So the

22   fact -- at that point for the money laundering, the money

23   laundering is occurring here in the United States in the

24   American Bank accounts.

25         So our position is that, as to Counts 5, 6, and 7,

```
 1    which occur in June, July, and September of 2012, at the time

 2    that the Indictment was returned on December 14th of 2017, that

 3    there was not additional evidence -- that essentially the

 4    Government's request for the evidence from Hong Kong is not an

 5    adequate showing that evidence of the money laundering would be

 6    found in Hong Kong and in the bank records in Hong Kong.  So

 7    the request for the tolling of the statute of limitations in

 8    2017, prior to when the statute of limitations would have

 9    expired, was not adequate to toll the statute of limitations.

10         So, for those three counts, which are June 28th,

11    2012; July 24th, 2012; and September 21st, 2012, it's our

12    position that the MLAT request in April of 2012 and the

13    Order of the Court in May of 2000 -- I'm sorry -- the MLAT

14    request and the Order of the Court in April and May of 2017

15    didn't toll the statute of limitations, and so, with the filing

16    of the first Indictment on December 14th, 2017, and the later

17    indictments, that the statute of limitations expired.

18         THE COURT:  Thank you very much, Ms. Wicks.

19         With that, Ms. McDonald, I'd be glad to hear from you

20    on this.

21         MS. McDONALD:  Thank you, Your Honor.

22         So, Your Honor, I must confess I don't completely

23    understand the argument.  The 5, 6, and 7 charge transfers from

24    HSB Hong Kong, okay, which is in China --

25         THE COURT:  Right.
```

```
 1            MS. McDONALD:  Okay.  From a Chinese bank account to
 2   an American Bank account.
 3            THE COURT:  Two different bank accounts?
 4            MS. McDONALD:  Yes, sir.
 5            THE COURT:  Yes.
 6            MS. McDONALD:  But they're two different Chinese bank
 7   accounts to two different U.S. bank accounts.  And we needed
 8   the MLAT results -- we call it -- we've been calling it MLAT,
 9   Your Honor, as the abbreviation for Mutual Legal Assistance
10   Treaty.
11            THE COURT:  Yes.  I think most people call it MLAT.
12            MS. McDONALD:  Yeah.
13            THE COURT:  Yes.
14            MS. McDONALD:  So we've needed the evidence from
15   China as to how the Chinese bank accounts got filled up,
16   because, unless they're getting filled up with the proceeds of
17   a specified unlawful activity, it's not a crime to transfer
18   money from China to the United States.
19            THE COURT:  Your point is that you were seeking
20   information clearly identifying international transfers, but,
21   until you get the information with respect to the actual source
22   of the funds, you have to make that determination before you
23   can present it to a Grand Jury for indictment.
24            MS. McDONALD:  Yes.  We're looking for what money was
25   deposited at the Hong Kong, Shanghai bank account, and we had
```

evidence that there were accounts -- that there were victims of wire fraud, but they were transferring their funds to an account called Worldwide Escrow Holdings, and we didn't have transfers from Worldwide Escrow back to the United States.

So we believed that we would have evidence of transfers among Hong Kong, Shanghai bank accounts and perhaps other banks before the money was brought into the United States, but we needed the evidence to confirm that.

**THE COURT:** Okay. Ms. Wicks, let me give you another bite at the apple on this. It's very beneficial for a hearing, because I believe counsel are entitled to know if I have any confusion and give you an opportunity to address it.

I really don't understand what your argument is. I mean, it's not that they're fishing on an offense. I believe Ms. McDonald is correct on this, is that the fact that there is money transferred, there may be illegal activity. There may be money transferred from a fund, but some of the money transferring from a fund may not be the fruits of the illegal activity. That's, in a nutshell, what the Government is saying, correct, Ms. McDonald?

**MS. McDONALD:** Yes, sir.

**THE COURT:** Meaning, if somebody has died and left funds from an estate having nothing to do with the alleged unlawful activity, and it goes into an account, it may be a transfer, it may be part of a transfer, and someone may be

1    engaged in illegal activity in another arena, but there is no

2    basis to find and prepare a count in an indictment to the Grand

3    Jury until you can look at the account or get information from

4    the account.

5            So what else would you have the Government do in that

6    case?  And, essentially, with respect to that, to say the

7    Government doesn't make an adequate showing that evidence of

8    the money laundering would be found in Hong Kong, well, there

9    is clearly adequate evidence to show that there is sufficient

10   activity in Hong Kong that gave rise to the return of the

11   Indictment.

12           You've zeroed in on only these three; not the other

13   accounts -- from Belize, for example -- and you've just focused

14   upon the Hong Kong accounts, correct?

15           **MS. WICKS:**  Right, because --

16           **THE COURT:**  Okay.

17           **MS. WICKS:**  -- there is that -- because I'm concerned

18   about the MLAT for Hong Kong.

19           **THE COURT:**  Okay.  So we're still focused on the MLAT

20   from Hong Kong, and what I'm saying is I'm not really sure what

21   your argument is with respect to -- this is not a statute of

22   limitations argument you're making; this is an argument as to

23   the adequate showing of evidence of money laundering, correct?

24           **MS. WICKS:**  Well, no, because the 18 U.S.C. § 3292

25   deals with the suspension of a statute of limitations.

1        **THE COURT:**  Okay.  So essentially -- I'm sorry.  Then

2    you're arguing that there is no basis for tolling of these

3    counts because of the representation made in the request?

4        **MS. WICKS:**  Correct, Your Honor.

5        **THE COURT:**  Okay.  All right.  And the request -- I

6    just had it in front of me here.  The request --

7        **MS. WICKS:**  And, Your Honor, if I wasn't clear in my

8    motion where I cited Exhibit 1 at Page 18, I don't think --

9    unfortunately I think my PDF for Exhibit 1 was not paginated.

10       **THE COURT:**  Right.

11       **MS. WICKS:**  And so I would -- there is a page that

12   says -- actually, Page 11, in the upper, right-hand corner, as

13   well as the bottom, and it's Paragraph 3 on that page.  So it's

14   Page 18 of my exhibit, but it's Page 11 of the April 24th, 2017

15   request, where I'm quoting from the two-sentence paragraph:

16   The prosecutor needs financial records concerning the funds in

17   the Hong Kong banks.

18       **THE COURT:**  What page are you on?

19       **MS. WICKS:**  So it's noted as Page 11 of what I filed.

20   It's the 18th page, but it is actually the --

21       **THE COURT:**  All right.  Go ahead.  I'm looking at --

22       **MS. WICKS:**  Attached to the Government's motion.

23       **THE COURT:**  What are you reading from?  I'll find it.

24   I've got --

25       **MS. WICKS:**  So it says -- it has 11 at the bottom,

1    and it has an 11 in the upper, right-hand corner.

2              **THE COURT:**  Yes.  I've got it right here.

3              **MS. WICKS:**  Okay.  So it's Paragraph III.

4              **THE COURT:**  It says:  The prosecutor needs financial

5    records concerning the funds in the Hong Kong banks to identify

6    additional victims of similar frauds, as well as the sources

7    and disposition of fraud proceeds.  The prosecutor needs the

8    registry information to help identify others who may have

9    participated in the scheme.

10             And your contention is that that doesn't provide

11   sufficient basis for the triggering of the tolling period?

12             **MS. WICKS:**  For the tolling of the period as to money

13   laundering, yes, Your Honor.

14             **THE COURT:**  Okay.  Well, thank you very much on that,

15   and I understand your argument, and I'll be ruling accordingly

16   as well on that as well on that matter.

17             So I will get out an opinion certainly by next week

18   with respect to the issue of the search warrant and the issue

19   as to the tolling under the MLAT notice, and we will continue

20   this hearing on the matter of the motion to suppress

21   statements.  That's where we are procedurally.

22             Correct from the point of view of the Government,

23   Ms. McDonald and Mr. Delaney?

24             **MS. McDONALD:**  Yes, Your Honor.

25             **THE COURT:**  Correct from your point of view,

1    Ms. Wicks?

2             **MS. WICKS:**  Yes, Your Honor.

3             **THE COURT:**  Okay.  All right.  So let's just look for

4    a two-hour time slot here for continuation of this hearing on

5    the motion to suppress statements.

6         (Pause.)

7             **THE COURT:**  How about if we -- I hesitate to do this,

8    because I don't like to do it the Wednesday before

9    Thanksgiving, but are you all available Wednesday morning

10   before Thanksgiving?

11            **MS. McDONALD:**  Your Honor, I plan to be out of town.

12            **THE COURT:**  Okay.  All right.  That's fine.

13            How about the Monday after Thanksgiving, Monday,

14   November 26th, in the morning?

15            **MR. DELANEY:**  Government is available.

16            **MS. WICKS:**  That's fine for me, Your Honor.

17            **THE COURT:**  Good for you, Ms. McDonald?

18            **MS. McDONALD:**  Yes, sir.

19            **THE COURT:**  Okay.  All right.  Then we'll continue

20   this until 10:30, Monday, November 26th, 2018.  We'll have a

21   continuation of this hearing with respect to the motion to

22   dismiss statements.  I think you included both motions to

23   suppress evidence and statements in one motion, if I'm not

24   mistaken, Ms. Wicks; is that correct?

25            **MS. WICKS:**  That is correct.

1          THE COURT:  So I will address in part and hold *sub*

2     *curiae* in part one portion of that, and so that would be -- I

3     think it would be Paper Number 33.  No.  I'm sorry.  Paper

4     Number 36, the motion to suppress evidence with respect to

5     statements.  So a continuation with respect to Paper Number 36,

6     motion to dismiss statements.  We'll continue this case, and

7     we'll set it in for a two-hour hearing.  If it takes that long,

8     it takes that long -- it doesn't make any difference -- from

9     10:30 to 12:30.

10          MS. McDONALD:  Your Honor?

11          THE COURT:  Yes, Ms. McDonald.

12          MS. McDONALD:  If I can just say one thing.  There

13     are two female FBI agents who obviously we're going to contact.

14          THE COURT:  Yes.

15          MS. McDONALD:  One of them has retired since the

16     execution of the search warrant, and, you know, we don't really

17     know the availability of our witnesses.

18          THE COURT:  Okay.

19          MS. McDONALD:  So, with that caveat, counsel is

20     available, and I'd like to go ahead and set it in for that, but

21     that would give us time to --

22          THE COURT:  That's fine.  The thing is we've got a

23     pretrial conference in this case scheduled for that

24     Wednesday -- Wednesday, November 28th, and this trial is

25     scheduled to go forward on Monday, December the 3rd.

1          **MS. McDONALD:**  Oh, I fully appreciate that, so I
2     think we need to move forward, but I was just saying that --
3          **THE COURT:**  Okay.  It is what it is, and that's where
4     we've got to go, and I'm confident in the FBI and their ability
5     to find people all over the face of the earth.  They can find
6     former agents, I think.  So we'll have it figure that out.
7        (Laughter.)
8          **MS. McDONALD:**  We'll be on it as soon as we recess
9     here, Your Honor.
10          **THE COURT:**  Okay.  Well, always be very careful.  I
11     know agents cringe when Assistant U.S. Attorneys say "we will
12     be on it."
13        (Laughter.)
14          **THE COURT:**  We're laughing here again.  That's what's
15     called a royal "we," Agent Lynch, but that's another matter.
16          Okay.  Anything else from the point of view of the
17     Government?
18          **MS. McDONALD:**  Nothing, Your Honor.
19          **THE COURT:**  All right.  Anything else from the point
20     of view of the Defense?
21          **MS. WICKS:**  Your Honor, I just wanted to raise a
22     scheduling issue.
23          **THE COURT:**  Okay.  By the way, before I forget, I do
24     have one other matter.  Wait a minute.
25          We apparently have been contacted in chambers by two

1      individuals who have contended they are victims of any alleged

2      improprieties by the Defendant here, Ms. Montillo, and they are

3      Victor Stone and Russell Butter.  Are you Mr. Butter?

4              **MR. STONE:**  I'm Mr. Stone, Your Honor.

5              **THE COURT:**  Mr. Stone.  Well, Mr. Stone, it's nice to

6      see you.

7              **MR. STONE:**  I'm not a victim.

8              **THE COURT:**  I'm sorry?  That's fine.

9              **MR. STONE:**  I'm an attorney licensed to practice in

10     this Court.

11             **THE COURT:**  All right.  Why don't you come over here.

12     Just come on over.  Thank you very much, Mr. Stone.  You've

13     been here throughout these proceedings.

14             **MR. STONE:**  Yes, I have.

15             **THE COURT:**  And, Mr. Stone, just identify yourself.

16             Yes, sir?

17             **MR. STONE:**  Yes.  I'm Victor Stone.  I have a brief

18     housekeeping matter.  It will only take probably less than two

19     minutes.

20             **THE COURT:**  Okay.  That's fine.  You're a lawyer

21     practicing where?

22             **MR. STONE:**  In this Court, in Maryland.

23             **THE COURT:**  Okay.  In this Court.

24             **MR. STONE:**  Yes.  Licensed in Maryland, in this

25     Court, as is Mr. Butler.

1            THE COURT:  You're a member of the Bar of this Court,

2      and your address is here in Maryland?

3            MR. STONE:  Yes.  My address here is in Maryland,

4      and --

5            THE COURT:  Okay.  Where do you practice?  Just put

6      it for the record, that's all.  What is your business address?

7            MR. STONE:  Upper Marlboro.  1001 Prince George's

8      Boulevard, Suite 750, Upper Marlboro.

9            THE COURT:  Okay.

10           MR. STONE:  At the direction of Deputy Clerk

11     Claudia Gibson --

12           THE COURT:  Yes.

13           MR. STONE:  -- she said today that -- I'm an

14     attorney.  Mr. Butler is an attorney.  Neither of us are a

15     victim, but we do represent somebody who was notified on

16     October 24th of this year that she is a victim.

17           THE COURT:  Okay.

18           MR. STONE:  We represent her as crime victim's

19     counsel.

20           THE COURT:  Right.

21           MR. STONE:  We don't expect to be participating

22     actively in most of the trial, although we will obviously want

23     to participate if we get -- should there be a sentencing at

24     some point or some other --

25           THE COURT:  Well, the point is:  What I recommend you

1    do is you talk to Ms. McDonald and Mr. Delaney, the Assistant

2    U.S. Attorneys, after these proceedings.  There is a victim-

3    witness coordinator, Ms. Shari Heiss-Forcina --

4             MR. STONE:  Yes.

5             THE COURT:  -- who deals with these kinds of issues,

6    deals with respect to claims of victims, and you certainly can

7    talk to Government lawyers about it.  You have every right to

8    be here, and so you notified the Court, and I appreciate it.

9    That's fine.

10            MR. STONE:  That's actually not quite why I'm here,

11   Your Honor.

12            THE COURT:  Okay.  Go ahead.

13            MR. STONE:  I'm here because, under the Federal

14   Criminal Code, the victim has a right to be separately

15   represented so that the victim can get notices of all the

16   hearings and copies of the pleadings.

17            THE COURT:  Under the Crime Victims Rights Act.

18            MR. STONE:  Under the Crime Victims Rights Act, under

19   § 3771.

20            THE COURT:  Yes.

21            MR. STONE:  And, for example, although I had spoken

22   to Ms. McDonald and actually the Clerk's Office today, I hadn't

23   been notified that we were in a different courtroom, and,

24   downstairs, they gave me a 2 o'clock starting time, so that

25   I -- we need to be officially notified, and we have a right to

1    do that and to file as an interested party, and the Clerk's

2    Office said to me that, if I would prepare a very short notice

3    of appearance, which I have, that, at your direction, they will

4    agree, and they said I should just file it here with your

5    clerk, and I have copies for other counsel.

6           **THE COURT:**  I think you've made reference to what I

7    believe is the Crime Victims Rights Act of 2004, as codified in

8    18 United States Code § 3771, correct?

9           **MR. STONE:**  That's correct.

10          **THE COURT:**  Okay.  Well, that's fine.  And, under

11   that law --

12          **MR. STONE:**  Under § (c)(2), Your Honor, it says that

13   a crime victim is allowed to be represented.

14          **THE COURT:**  It's here under section -- under that

15   law, victims directly harmed by the alleged crime have the

16   right to be notified of all proceedings, and we will

17   certainly -- and, again, Ms. Shari Heiss-Forcina --

18   Ms. McDonald can give you that information, and she'll keep

19   your clients abreast of any of those matters.

20          I'm just looking here if there are any other

21   provisions that need to be noted here.  And, pursuant to

22   Rule 32 of the Federal Rules of Criminal Procedure, if there

23   were to be a conviction in the case, you would have the right

24   to be present here at sentencing, and your client must be given

25   the opportunity to speak if there were to be a conviction here

```
 1        in this case.

 2               So I'm not sure what else you were asking of the

 3        Court here.  I'm aware of --

 4               MR. STONE:  All I'm asking the Court to do at this

 5        point is allow the motion to be filed which enters our notice

 6        of appearance in PACER so that we then get --

 7               THE COURT:  That's fine.

 8               MR. STONE:  -- access and notice of all the

 9        pleadings.

10               THE COURT:  There is no objection from the Government

11        on this, is there, Ms. McDonald?

12               MS. McDONALD:  No, Your Honor.

13               THE COURT:  No objection from the Defense, is there,

14        Ms. Wicks?

15               MS. WICKS:  No objection, assuming that his notice

16        notifies me who he represents so that I'm --

17               THE COURT:  Well, that's right.  That's fine.

18               MR. STONE:  It's on here, and, yes, I will.  I

19        definitely will do that.

20               MS. WICKS:  Okay.  Thank you.

21               THE COURT:  And thank you for coming up from Upper

22        Marlboro, Mr. Stone.  That can be one of the longer drives

23        along the East Coast of Maryland, actually.

24          (Laughter.)

25               MR. STONE:  May I approach the clerk and just give
```

1    him a copy of the motion to file, Your Honor?

2             **THE COURT:**  You certainly may.

3             **MR. STONE:**  And to counsel.

4             **THE COURT:**  And just give that to Ms. Downs, the

5    Deputy Clerk of Court, under the Crime Victims Rights Act of

6    2004.  Thank you very much, Mr. Stone.  And I'm sorry I did not

7    address this question earlier, counsel.

8             So, with that, is there anything further from the

9    point of view of the Government, Ms. McDonald?

10            **MS. McDONALD:**  Nothing from the Government, Your

11   Honor.

12            **THE COURT:**  Thank you very much.

13            And anything further from the point of view of the

14   Defense, Ms. Wicks?

15            **MS. WICKS:**  Your Honor, there is just a scheduling

16   matter.

17            **THE COURT:**  Okay.  Go ahead.

18            **MS. WICKS:**  We're scheduled to start trial on

19   December 3rd.

20            **THE COURT:**  Yes.

21            **MS. WICKS:**  We estimated two weeks.

22            **THE COURT:**  I think we have it down for eight days,

23   if I'm not mistaken.

24            **MS. WICKS:**  Okay.  Well, so, just out of an abundance

25   of caution, I was notified my daughter has a choir recital on

1    Friday, the 14th, at 6 o'clock in the District of Columbia --

2              THE COURT:  Okay.

3              MS. WICKS:  -- so I just wanted -- she knows, when

4    I'm in trial, that --

5              THE COURT:  We will do everything to make sure we're

6    not sitting on Friday, December 14th.  I think we'll be

7    finished by then.  We'll deal with it.

8              MS. WICKS:  Certainly, or if at least if I can just

9    leave in time to make it there.

10             THE COURT:  That's fine.  We're certainly willing to

11   do that.

12             MS. WICKS:  Okay.  Thank you.  That's it.

13             THE COURT:  She need not file a petition with the

14   Court on that.

15        (Laughter.)

16             THE COURT:  We're laughing again, and that's fine.

17   We can deal with that, okay?

18             MS. WICKS:  Thank you.

19             THE COURT:  Anything else from your point of view?

20             MS. WICKS:  No, Your Honor.  Thank you.

21             THE COURT:  Okay.  Well, good.  Well, thank you all

22   very much, and thank you for your very interesting legal

23   arguments on the Mutual Legal Assistance Treaty, MLAT treaty.

24   It's an interesting question, and I'll be getting on it right

25   away, and I'll see you here on Tuesday -- I mean -- I'm

1    sorry -- Monday, November 26th, at 10:30, and, Mr. Stone,

2    you've got these dates here now, and you're aware of what's

3    going on, and anything that's filed, you're going to get copies

4    of, obviously, so that's fine.

5            **MR. STONE:**  Thank you, Your Honor.  I expect you'll

6    see me here at all the hearings.

7            **THE COURT:**  All right.  With that, we're ready to

8    adjourn for the day, Ms. Downs.

9            And Mr. Vitti, my law clerk, and Mr. Giordano, we

10   have night court starting here like we normally do at 6:00, so

11   make sure you're back in time.

12       (Laughter.)

13           **THE COURT:**  With that, this Court stands adjourned

14   for the day.

15           **THE CLERK:**  All rise.  This Honorable Court now

16   stands adjourned.

17       (Proceedings adjourned.)

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5          I, Martin J. Giordano, Registered Merit Reporter and

 6     Certified Realtime Reporter, in and for the United States

 7     District Court for the District of Maryland, do hereby certify,

 8     pursuant to 28 U.S.C. § 753, that the foregoing is a true and

 9     correct transcript of the stenographically-reported proceedings

10     held in the above-entitled matter and that the transcript page

11     format is in conformance with the regulations of the Judicial

12     Conference of the United States.

13

14                    Dated this 26th day of June 2019.

15

16                    Martin J. Giordano

17                    MARTIN J. GIORDANO, RMR, CRR

18                    FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

INDEX

UNITED STATES v. LAUREN MONTILLO

MOTIONS HEARING - VOL I - NOVEMBER 7, 2018

                                                          PAGE
COMMENCEMENT OF PROCEEDINGS............................  2

WITNESSES FOR
  THE GOVERNMENT:

BRAD LYNCH
  Sworn................................................  27
  Direct Examination by MR. DELANEY....................  28
  Cross-Examination by MS. WICKS.......................  42
  Examination by the Court.............................  54
  Redirect Examination by MR. DELANEY..................  59
  Witness Excused......................................  60

PROCEEDINGS ADJOURNED.................................  97

## $

**$100,000** [2] - 12:4, 12:7
**$104,000** [1] - 80:4
**$108,035** [1] - 8:5
**$179,014.60** [1] - 8:19
**$225,400** [1] - 8:18
**$250,000** [2] - 11:23, 12:2
**$264,861.76** [1] - 8:2
**$291,294** [1] - 8:2
**$483,000** [1] - 79:24
**$500,000** [1] - 11:25
**$60,181** [1] - 8:20
**$65,000** [1] - 80:8
**$78,354** [1] - 8:20
**$97,780** [1] - 8:3

## 1

**1** [15] - 6:14, 6:24, 8:23, 11:21, 31:4, 31:9, 32:24, 37:7, 37:14, 37:18, 74:5, 79:22, 80:16, 85:8, 85:9
**1(b** [1] - 6:17
**10** [6] - 5:14, 5:15, 5:20, 7:1, 7:2, 8:25
**10,000** [1] - 79:20
**1001** [1] - 91:7
**101** [1] - 1:24
**104(b** [1] - 67:6
**104(d** [3] - 26:18, 26:21, 67:6
**10:30** [3] - 87:20, 88:9, 97:1
**11** [7] - 7:2, 76:10, 85:12, 85:14, 85:19, 85:25, 86:1
**1101** [1] - 26:16
**11th** [4] - 4:25, 9:11, 11:15, 13:16
**12** [8] - 5:21, 6:22, 6:23, 7:2, 8:9, 9:1, 12:1, 13:19
**1202** [2] - 29:10, 31:10
**12:30** [1] - 88:9
**12th** [1] - 8:14
**13** [2] - 5:22, 7:4
**1343** [2] - 8:22, 74:16
**1349** [1] - 8:22
**14** [4] - 5:23, 7:8, 7:12, 76:8
**145** [2] - 29:17, 29:20
**14th** [4] - 81:2, 81:16, 96:1, 96:6
**15** [4] - 6:8, 7:12, 8:6
**154** [1] - 15:5
**157** [2] - 16:11, 66:1
**16** [2] - 6:8, 7:23
**164** [1] - 16:11
**166** [2] - 71:18, 72:3
**17** [2] - 7:23, 8:7
**18** [13] - 8:12, 18:8, 69:17, 72:5, 74:16, 74:19, 76:9, 76:13, 80:16, 84:24, 85:8, 85:14, 93:8
**18th** [1] - 85:20
**1966** [1] - 65:10
**1978** [1] - 15:5

**1986** [2] - 16:11, 66:2

## 2

**2** [30] - 6:10, 6:25, 8:25, 13:12, 13:18, 13:24, 15:20, 32:23, 34:18, 42:10, 42:12, 50:1, 53:8, 53:9, 53:10, 64:18, 64:23, 68:23, 68:24, 73:14, 74:13, 74:15, 74:19, 76:9, 76:18, 76:23, 78:3, 79:12, 92:24, 99:6
**20** [2] - 11:22, 11:24
**2000** [1] - 81:13
**2004** [2] - 93:7, 95:6
**2008** [2] - 71:19, 72:4
**2010** [1] - 6:15
**2011** [2] - 5:17, 72:23
**2012** [14] - 68:25, 69:1, 69:4, 73:17, 74:6, 79:24, 80:3, 80:8, 80:20, 81:1, 81:11, 81:12
**2013** [1] - 8:2
**2014** [4] - 7:5, 7:9, 8:11, 8:16
**2016** [13] - 6:16, 7:14, 7:24, 8:9, 8:14, 14:20, 17:16, 17:17, 23:13, 25:19, 29:5, 29:25, 64:18
**2017** [14] - 74:20, 74:21, 75:4, 75:8, 75:10, 75:20, 75:22, 76:8, 78:5, 81:2, 81:8, 81:14, 81:16, 85:14
**2018** [7] - 1:7, 2:1, 13:14, 76:9, 76:10, 87:20, 99:3
**2019** [1] - 98:14
**21** [5] - 28:22, 56:8, 61:23, 61:24, 80:8
**21201** [1] - 1:24
**21st** [1] - 81:11
**22** [2] - 14:20, 25:19
**22nd** [3] - 29:5, 29:25, 64:18
**23** [1] - 17:17
**24** [1] - 75:21
**24th** [5] - 75:4, 80:3, 81:11, 85:14, 91:16
**25** [2] - 7:5, 7:9
**26** [2] - 73:16, 74:20
**26th** [7] - 68:25, 75:8, 78:4, 87:14, 87:20, 97:1, 98:14
**27** [1] - 99:9
**2701** [1] - 18:8
**28** [3] - 79:24, 98:8, 99:10
**28th** [2] - 81:10, 88:24
**2:36** [1] - 1:8

## 3

**3** [24] - 6:12, 8:23, 11:22, 13:12, 13:18, 13:24, 15:20, 34:23, 68:23, 68:25, 69:1, 74:4, 74:6, 74:13, 74:15, 74:21, 76:9, 76:18, 76:23, 78:5, 79:12, 85:13
**30** [1] - 47:11
**302** [6] - 53:11, 53:12, 53:17, 54:6, 54:21, 55:5
**3101(7)** [1] - 6:22

**32** [1] - 93:22
**3282(a** [1] - 74:19
**3292** [8] - 69:17, 72:5, 72:7, 72:19, 76:13, 76:25, 77:11, 84:24
**3292(b** [1] - 72:8
**33** [2] - 14:9, 88:3
**36** [5] - 14:15, 15:25, 24:16, 88:4, 88:5
**36-1** [1] - 17:3
**3771** [2] - 92:19, 93:8
**3945** [1] - 80:2
**3rd** [7] - 2:9, 13:8, 68:1, 68:3, 75:8, 88:25, 95:19

## 4

**4** [8] - 6:13, 6:17, 6:25, 9:1, 11:24, 18:4, 19:6, 19:11
**41** [1] - 18:6
**41(d** [1] - 19:7
**410-962-4504** [1] - 1:25
**415** [1] - 16:10
**42** [1] - 99:10
**438** [1] - 15:5
**479** [2] - 16:11, 66:1
**4:44** [1] - 1:8
**4th** [1] - 13:14

## 5

**5** [22] - 6:23, 9:9, 12:1, 13:19, 13:22, 13:24, 15:20, 68:22, 68:23, 68:24, 69:2, 75:10, 75:20, 76:21, 79:13, 79:14, 79:15, 79:23, 80:20, 80:25, 81:23
**54** [1] - 99:11
**541** [2] - 71:18, 72:3
**59** [1] - 99:11

## 6

**6** [13] - 6:25, 15:20, 68:22, 68:23, 68:24, 69:2, 76:21, 79:14, 80:3, 80:20, 80:25, 81:23, 96:1
**60** [1] - 99:12
**633** [1] - 72:24
**6:00** [1] - 97:10
**6:30** [5] - 30:20, 45:22, 46:25, 47:23, 55:9

## 7

**7** [21] - 1:7, 2:1, 13:22, 13:24, 15:21, 64:4, 68:22, 68:23, 68:24, 69:2, 69:8, 76:21, 79:13, 79:14, 80:7, 80:9, 80:20, 80:25, 81:23, 99:3
**7206** [1] - 5:9
**750** [1] - 91:8

**753** [1] - 98:8
**788** [1] - 72:24
**7:00** [2] - 45:23, 47:25
**7th** [1] - 11:16

## 8

**8** [1] - 7:1
**8787** [1] - 80:10
**8:30** [1] - 54:11

## 9

**9** [4] - 6:19, 7:1, 7:14, 7:24
**911** [10] - 43:7, 44:8, 44:13, 44:16, 44:18, 45:8, 45:12, 63:12, 63:14, 63:19
**97** [1] - 99:13

## A

**a.m** [1] - 47:25
**abbreviation** [1] - 82:9
**ability** [1] - 89:4
**able** [2] - 40:1, 45:24
**ABOVE** [1] - 1:9
**above-entitled** [1] - 98:10
**ABOVE-ENTITLED** [1] - 1:9
**abreast** [1] - 93:19
**abroad** [1] - 75:7
**absolutely** [3] - 19:22, 24:2, 46:18
**abundance** [2] - 4:18, 95:24
**access** [1] - 94:8
**according** [1] - 65:5
**accordingly** [1] - 86:15
**account** [19] - 6:21, 14:18, 21:18, 21:20, 21:24, 24:22, 73:21, 74:10, 74:11, 80:1, 80:6, 80:9, 82:1, 82:2, 82:25, 83:3, 83:24, 84:3, 84:4
**accounts** [13] - 6:1, 6:20, 69:7, 80:21, 80:24, 82:3, 82:7, 82:15, 83:1, 83:6, 84:13, 84:14
**achieve** [1] - 72:13
**acknowledged** [1] - 61:20
**Act** [7] - 17:24, 18:8, 19:8, 92:17, 92:18, 93:7, 95:5
**action** [1] - 75:22
**actively** [1] - 91:22
**activity** [8] - 79:21, 80:20, 82:17, 83:16, 83:19, 83:24, 84:1, 84:10
**actual** [1] - 82:21
**add** [9] - 5:8, 6:23, 24:1, 76:14, 76:16, 78:7, 78:12, 78:18, 79:1
**added** [3] - 7:4, 8:23
**additional** [5] - 8:19, 49:23, 80:18, 81:3, 86:6
**address** [16] - 14:2, 15:24, 17:24, 18:18, 20:8, 20:12, 29:11, 68:7, 73:23, 83:12,

88:1, 91:2, 91:3, 91:6, 95:7
**addressed** [1] - 11:1
**adds** [3] - 6:10, 6:17, 6:24
**adequate** [5] - 81:5, 81:9, 84:7, 84:9, 84:23
**adjoining** [1] - 37:22
**adjourn** [1] - 97:8
**adjourned** [3] - 97:13, 97:16, 97:17
**ADJOURNED.................................** [1] - 99:13
**adjust** [1] - 27:12
**admissibility** [1] - 26:23
**advise** [2] - 11:8, 26:13
**advised** [2] - 12:22, 39:8
**advisory** [1] - 12:19
**affecting** [1] - 79:18
**affidavit** [25] - 15:1, 15:2, 17:4, 17:7, 17:16, 17:17, 20:14, 20:18, 21:9, 21:10, 21:17, 21:22, 22:2, 22:12, 22:13, 22:16, 22:19, 22:21, 22:25, 23:1, 23:6, 23:7, 23:11, 25:1
**affidavits** [3] - 16:19, 17:15, 22:9
**afternoon** [5] - 2:4, 3:6, 3:22, 3:23, 42:23
**agent** [24] - 2:25, 27:20, 27:24, 28:2, 28:4, 28:20, 35:18, 38:6, 40:2, 41:19, 48:4, 53:20, 55:4, 55:22, 59:17, 59:18, 59:25, 60:3, 61:2, 63:3, 63:11, 64:2, 66:16, 66:17
**Agent** [31] - 1:18, 2:18, 2:19, 2:22, 16:25, 19:24, 26:11, 27:9, 27:17, 27:21, 28:2, 28:19, 32:21, 34:15, 39:19, 42:8, 42:23, 47:18, 54:11, 54:20, 57:11, 58:25, 59:2, 60:20, 61:2, 61:19, 64:19, 65:1, 66:20, 67:15, 89:15
**agents** [29] - 27:22, 30:6, 30:15, 31:17, 31:18, 32:1, 32:5, 33:6, 33:23, 36:6, 43:22, 43:25, 46:11, 47:13, 48:2, 48:5, 51:23, 51:24, 52:3, 52:15, 57:9, 64:2, 65:20, 66:7, 66:14, 88:13, 89:6, 89:11
**aggressive** [1] - 51:13
**agree** [7] - 24:12, 38:17, 56:12, 70:2, 73:9, 74:22, 93:4
**agreeable** [2] - 16:1, 16:3
**agreed** [1] - 55:1
**agrees** [1] - 73:2
**ahead** [8] - 19:2, 43:15, 78:17, 78:20, 85:21, 88:20, 92:12, 95:17
**alcohol** [1] - 40:4
**allegation** [1] - 17:20
**allegations** [3] - 6:24, 8:25, 74:5
**alleged** [7] - 8:19, 8:23, 15:1, 25:24, 83:23, 90:1, 93:15
**alleges** [2] - 6:12, 74:5
**allow** [4] - 60:7, 60:13, 94:5
**allowed** [2] - 27:23, 93:13
**allows** [2] - 72:24, 77:5
**amend** [1] - 14:10
**amended** [1] - 8:21

**AMERICA** [1] - 1:3
**American** [2] - 80:24, 82:2
**amount** [2] - 79:24, 80:4
**announce** [3] - 30:2, 30:5, 30:20
**announced** [1] - 31:21
**announcing** [2] - 44:19, 45:6
**answer** [4] - 38:12, 38:13, 40:1, 40:12
**answered** [1] - 50:5
**answering** [1] - 49:23
**Anthony** [1] - 25:15
**AOL** [5] - 20:15, 22:20, 22:25, 23:7, 24:22
**AOL.com** [1] - 25:2
**apologize** [3] - 3:4, 11:16, 18:16
**appear** [2] - 38:15, 40:11
**appearance** [7] - 2:11, 4:8, 9:9, 32:15, 39:22, 93:3, 94:6
**appeared** [2] - 44:1, 51:8
**apple** [1] - 83:10
**applicable** [3] - 15:22, 74:14, 74:17
**application** [7] - 17:3, 17:8, 20:15, 21:23, 72:20, 77:14, 77:19
**applies** [1] - 69:16
**apply** [3] - 26:16, 67:8, 70:21
**applying** [1] - 3:9
**appointed** [1] - 9:22, 10:2
**appreciate** [2] - 89:1, 92:8
**approach** [2] - 23:9, 94:25
**April** [10] - 68:25, 73:16, 74:20, 75:4, 75:8, 75:21, 78:4, 81:12, 81:14, 85:14
**area** [4] - 35:4, 47:10, 52:10, 52:11
**areas** [2] - 35:23, 52:12
**arena** [1] - 84:1
**argued** [3] - 15:1, 25:24, 26:6
**arguing** [1] - 85:2
**argument** [20] - 15:21, 16:15, 17:23, 18:3, 23:21, 25:9, 61:5, 62:22, 70:4, 73:5, 76:15, 76:16, 76:20, 80:12, 81:23, 83:13, 84:21, 84:22, 86:15
**arguments** [2] - 71:23, 96:23
**Arizona** [2] - 10:12, 19:13, 65:10
**arraigned** [1] - 5:13
**arraignment** [3] - 2:11, 4:8, 7:22
**arrest** [4] - 38:11, 39:11, 65:13
**arrive** [5] - 56:11, 56:22, 56:25, 57:14, 65:3
**arrived** [1] - 55:9
**arriving** [1] - 66:9
**artifice** [2] - 73:18, 74:7
**assigned** [2] - 75:12, 75:13
**assignment** [1] - 9:16
**Assistance** [7] - 15:23, 69:14, 73:1, 75:5, 78:2, 82:9, 96:23
**assistance** [1] - 20:10
**Assistant** [4] - 1:13, 1:13, 89:11, 92:1
**associated** [1] - 14:17
**assume** [3] - 10:4, 57:10, 57:12
**assuming** [1] - 94:15
**attached** [2] - 43:10, 85:22

**attaching** [1] - 70:25
**attachment** [1] - 23:16
**attempt** [3] - 47:16, 52:21, 79:16
**attention** [2] - 2:10, 4:7
**attitude** [1] - 51:13
**attorney** [3] - 39:17, 41:21, 41:25, 42:4, 45:25, 46:6, 49:23, 52:18, 52:19, 52:22, 90:9, 91:14
**Attorney** [2] - 1:13, 1:13
**Attorneys** [2] - 89:11, 92:2
**August** [1] - 6:15
**authority** [1] - 75:22
**availability** [1] - 88:17
**available** [3] - 87:9, 87:15, 88:20
**awaiting** [1] - 63:8
**aware** [9] - 43:4, 43:20, 43:21, 44:12, 48:11, 78:14, 94:3, 97:2

---

**B**

**background** [1] - 40:15
**Baltimore** [3] - 1:7, 1:24, 63:14
**bank** [14] - 6:1, 6:20, 6:22, 69:5, 69:6, 80:5, 81:6, 82:1, 82:3, 82:6, 82:7, 82:15, 82:25, 83:6
**Bank** [10] - 6:3, 6:18, 6:21, 7:3, 69:5, 69:7, 80:2, 80:24, 82:2
**banks** [3] - 83:7, 85:17, 86:5
**Bar** [1] - 91:1
**based** [2] - 19:17, 66:13
**basement** [3] - 34:16, 36:22, 52:13
**basis** [6] - 24:2, 24:3, 69:11, 84:2, 85:2, 86:11
**bears** [1] - 66:5
**Becker** [3] - 73:23, 73:25, 74:11
**Becky** [2] - 42:2, 53:1
**become** [1] - 26:24
**becomes** [1] - 65:17
**bedroom** [7] - 32:10, 32:11, 32:16, 44:3, 44:4, 45:1
**BEFORE** [1] - 1:10
**began** [1] - 33:6
**begin** [2] - 72:9, 77:20
**beginning** [2] - 24:6, 35:11
**behalf** [3] - 1:12, 1:14, 3:7
**behind** [3] - 3:1, 56:20, 66:22
**Belize** [4] - 6:18, 6:20, 7:3, 84:13
**belongs** [1] - 21:18
**belt** [4] - 40:25, 41:2, 41:4, 51:25
**bench** [3] - 7:21, 11:12, 68:4
**Bender** [2] - 32:20, 32:21
**beneficial** [1] - 83:10
**benefit** [2] - 39:2, 58:24
**Bennett** [2] - 2:3, 79:3
**BENNETT** [1] - 1:10
**Berans** [3] - 29:10, 31:10, 58:15
**best** [2] - 21:3, 51:14
**better** [2] - 18:13, 75:5
**between** [1] - 47:23

---

**beyond** [1] - 37:5
**big** [4] - 31:2, 35:6
**bigger** [1] - 37:5
**bit** [2] - 31:25, 52:23
**bite** [1] - 83:10
**Blake** [4] - 75:11, 75:13, 75:19, 75:20
**Blake's** [1] - 73:11
**bluntly** [1] - 65:22
**bones** [1] - 20:21
**booming** [1] - 45:7
**bottle** [1] - 60:10
**bottom** [2] - 85:13, 85:25
**Boulevard** [1] - 91:8
**boyfriend** [3] - 30:17, 48:25, 62:8
**BRAD** [3] - 27:10, 28:14, 99:9
**Brad** [6] - 2:19, 3:2, 16:25, 27:14, 27:21, 28:14
**Bradford** [1] - 53:23
**break** [2] - 21:24, 32:13
**breaks** [2] - 39:14, 39:16
**brief** [1] - 90:17
**briefed** [1] - 79:11
**briefly** [1] - 58:23
**bring** [2] - 48:15, 63:3
**bringing** [1] - 76:8
**brought** [3] - 2:10, 4:7, 83:7
**building** [1] - 43:10
**burden** [10] - 16:7, 16:8, 65:22, 65:24, 66:2, 66:4, 66:5, 67:3
**business** [1] - 91:6
**butler** [2] - 90:25, 91:14
**Butter** [1] - 90:3
**butter** [1] - 90:3
**BY** [11] - 28:18, 29:22, 31:8, 42:11, 42:22, 48:24, 49:12, 50:18, 54:10, 59:6, 60:6

---

**C**

**c)(2** [1] - 93:12
**calendar** [2] - 8:11, 8:16
**CAME** [1] - 1:9
**candidly** [1] - 66:20
**cannot** [2] - 20:15, 77:8
**Cao** [3] - 34:15, 35:17, 37:12
**caption** [2] - 6:23, 8:13
**captions** [1] - 6:13
**card** [2] - 3:1, 3:4
**care** [2] - 36:7, 52:10
**career** [1] - 79:7
**careful** [1] - 89:10
**carried** [1] - 79:6
**carrying** [1] - 33:23
**cars** [5] - 36:17, 49:19, 58:13, 58:15, 58:17
**case** [42] - 2:6, 2:8, 2:12, 4:9, 4:25, 5:4, 9:3, 10:25, 13:7, 26:23, 26:25, 27:20, 27:22, 27:23, 27:24, 28:2, 28:4, 38:6, 56:6, 61:2, 61:22, 63:15, 65:2, 65:15,

---

65:16, 65:19, 68:23, 71:18, 72:1, 72:19, 73:25, 75:12, 76:24, 77:4, 77:10, 84:6, 88:6, 88:23, 93:23, 94:1
**cases** [3] - 10:3, 55:25, 56:1
**categories** [1] - 51:6
**caused** [3] - 5:19, 73:19, 74:8
**causes** [1] - 14:10
**caution** [2] - 4:18, 95:25
**caveat** [1] - 88:19
**certain** [4] - 5:6, 10:6, 20:11, 67:9
**certainly** [12] - 7:19, 53:6, 61:8, 66:25, 68:2, 78:4, 86:17, 92:6, 93:17, 95:2, 96:8, 96:10
**CERTIFICATE** [1] - 98:1
**Certified** [1] - 98:6
**certify** [1] - 98:7
**cetera** [3] - 52:13, 73:24
**chair** [2] - 38:9, 62:22
**chairs** [2] - 39:3, 47:4
**chambers** [2] - 75:11, 89:25
**chance** [1] - 64:1
**change** [3] - 5:15, 5:20, 7:4
**changed** [7] - 5:15, 6:14, 8:2, 8:18, 8:20, 8:21, 8:25
**changes** [3] - 5:12, 6:19, 8:17
**charge** [3] - 5:13, 79:14, 81:23
**charged** [3] - 8:1, 8:10, 80:20
**charges** [20] - 7:6, 7:11, 7:13, 7:15, 7:24, 8:8, 8:14, 8:16, 9:12, 12:2, 12:4, 69:13, 69:17, 73:14, 73:16, 74:13, 74:15, 79:15, 80:3, 80:7
**charging** [6] - 7:8, 13:18, 13:19, 68:24, 68:25, 69:2
**Charles** [1] - 18:22
**chest** [1] - 58:10
**Chief** [1] - 75:19
**child** [11] - 30:10, 30:12, 30:16, 30:18, 45:15, 45:17, 45:20, 46:8, 46:12, 46:16, 49:18
**China** [4] - 21:13, 81:24, 82:15, 82:18
**Chinese** [3] - 82:1, 82:6, 82:15
**Choice** [3] - 6:17, 6:21, 7:3
**choir** [1] - 95:25
**chooses** [2] - 62:3, 62:15
**Chris** [10] - 30:17, 34:3, 34:7, 46:4, 46:19, 48:25, 51:21, 57:3, 57:20, 62:7
**Christopher** [1] - 65:5
**CI** [1] - 2:18
**cigarette** [3] - 41:23, 52:17, 53:3
**circled** [1] - 39:2
**circuit** [5] - 71:11, 71:14, 71:25, 72:10, 78:14
**Circuit** [21] - 19:13, 65:15, 71:16, 71:18, 72:2, 72:4, 72:18, 72:22, 73:3, 76:24, 77:5, 77:10, 77:24, 77:25, 78:8, 78:9, 78:10, 78:25
**circumstances** [4] - 10:6, 26:1, 26:2, 39:24
**cite** [2] - 72:1, 72:2

**cited** [4] - 71:17, 72:1, 80:16, 85:8
**Citibank** [2] - 69:8, 80:10
**claim** [1] - 26:6
**claiming** [1] - 22:1
**claims** [3] - 74:15, 80:17, 92:6
**clarify** [2] - 54:20, 58:19
**clarity** [1] - 21:15
**Claudia** [1] - 91:11
**clear** [8] - 33:7, 33:8, 35:22, 52:9, 65:22, 66:18, 79:15, 85:7
**cleared** [1] - 35:1, 52:12
**clearing** [2] - 33:18, 52:11
**clearly** [14] - 18:13, 46:14, 56:21, 59:7, 59:15, 62:4, 65:4, 66:20, 67:15, 75:3, 75:8, 78:13, 82:20, 84:9
**clears** [1] - 33:9
**CLERK** [6] - 2:2, 27:11, 27:15, 28:11, 31:7, 97:15
**Clerk** [4] - 4:18, 64:22, 91:10, 95:5
**clerk** [4] - 68:5, 93:5, 94:25, 97:9
**Clerk's** [2] - 92:22, 93:1
**client** [16] - 7:16, 9:4, 10:7, 24:25, 26:25, 46:5, 46:12, 47:5, 48:1, 48:9, 49:3, 49:20, 54:12, 63:12, 64:1, 93:24
**client's** [2] - 3:24, 23:2
**clients** [1] - 93:19
**closer** [3] - 18:16, 21:1, 21:4
**clothes** [1] - 58:2
**co** [3] - 5:25, 38:6, 73:25
**co-case** [1] - 38:6
**co-defendant** [1] - 73:25
**co-schemers** [1] - 5:25
**Coast** [1] - 94:23
**Code** [7] - 69:17, 72:5, 74:16, 74:19, 76:13, 92:14, 93:8
**codified** [1] - 93:7
**coercive** [1] - 26:2
**collar** [5] - 55:25, 56:1, 56:5, 61:22, 65:2
**college** [2] - 40:18, 40:19
**Colorado** [2] - 16:11, 65:25
**Columbia** [1] - 96:1
**Comcast.net** [1] - 74:11
**comfortable** [1] - 65:20
**comfortably** [1] - 62:21
**coming** [7] - 32:9, 32:11, 32:16, 35:7, 39:20, 44:25, 94:21
**COMMENCEMENT** [1] - 99:6
**comment** [3] - 36:16, 36:18, 67:15
**commerce** [3] - 73:20, 74:9, 79:18
**communicate** [1] - 32:8
**Communications** [3] - 17:24, 18:8, 19:8
**compel** [2] - 12:23, 26:20
**competent** [1] - 19:9
**complained** [1] - 18:22
**complete** [1] - 9:4
**completely** [1] - 81:22
**compliant** [1] - 52:15
**computer** [1] - 1:21
**concerned** [3] - 44:15, 65:19, 84:17

**concerning** [2] - 85:16, 86:5
**conclusory** [1] - 20:9
**condition** [1] - 36:13
**conditions** [4] - 10:24, 10:25, 26:2, 48:11
**conducted** [1] - 29:14
**Conference** [1] - 98:12
**conference** [2] - 68:4, 88:23
**conferring** [4] - 10:14, 27:25, 53:7, 62:6
**confess** [1] - 81:22
**confident** [2] - 33:16, 89:4
**confirm** [1] - 83:8
**conformance** [1] - 98:11
**confuse** [1] - 70:13
**confused** [1] - 70:14
**confusion** [1] - 83:12
**connection** [1] - 24:17
**Connelly** [2] - 16:11, 66:1
**consider** [1] - 65:13
**considering** [1] - 20:23
**Conspiracy** [1] - 6:13
**conspiracy** [4] - 5:16, 5:24, 6:18, 11:24
**Consulting** [1] - 5:18
**contact** [2] - 43:9, 88:13
**contacted** [2] - 43:1, 89:25
**contained** [3] - 17:18, 20:16, 20:19
**contains** [2] - 21:23, 24:20
**contended** [1] - 90:1
**contends** [1] - 75:7
**contention** [2] - 24:21, 86:10
**continuation** [3] - 87:4, 87:21, 88:5
**continue** [6] - 54:8, 67:24, 67:25, 86:19, 87:19, 88:6
**continued** [2] - 34:9, 53:1
**continuously** [1] - 44:19
**conversation** [2] - 39:6, 49:17
**conversationally** [1] - 45:6
**conversations** [2] - 30:10, 32:5
**convicted** [1] - 12:10
**conviction** [4] - 12:17, 12:21, 93:23, 93:25
**cool** [2] - 36:17, 49:18
**cooperative** [2] - 41:11, 41:13
**cooperator** [1] - 22:1
**coordinator** [1] - 92:3
**copies** [3] - 92:16, 93:5, 97:3
**copy** [16] - 4:23, 4:24, 5:16, 23:6, 23:11, 23:17, 31:4, 32:25, 34:18, 42:12, 53:10, 53:12, 53:16, 64:22, 70:12, 95:1
**corner** [2] - 85:12, 86:1
**Coronado** [1] - 73:22
**correct** [101] - 3:25, 5:9, 5:10, 9:22, 10:7, 11:3, 13:20, 14:4, 14:5, 14:11, 14:12, 14:23, 15:6, 17:5, 17:13, 18:24, 23:17, 23:21, 24:18, 25:9, 25:11, 25:12, 25:21, 26:11, 26:12, 28:10, 34:22, 37:25, 43:5, 43:23, 44:13, 45:4, 45:9, 45:10, 45:12, 45:13, 45:18,

46:12, 46:17, 46:21, 47:5, 47:11, 47:12, 48:14, 49:1, 49:4, 49:6, 49:9, 49:15, 49:20, 49:24, 49:25, 50:2, 50:11, 50:13, 51:1, 51:3, 51:9, 53:19, 54:6, 54:7, 54:11, 54:23, 55:5, 55:11, 55:20, 56:13, 56:25, 57:15, 57:20, 58:2, 58:12, 58:16, 64:11, 64:13, 68:14, 68:17, 69:22, 70:1, 71:2, 71:5, 71:7, 74:1, 75:14, 75:25, 76:2, 83:15, 83:20, 84:14, 84:23, 85:4, 86:22, 86:25, 87:24, 87:25, 93:8, 93:9, 98:9
**corrections** [1] - 74:12
**corrective** [1] - 14:14
**correctly** [5] - 3:18, 3:25, 15:12, 15:16, 18:3
**couch** [1] - 71:23
**Counsel** [2] - 10:14, 53:7
**counsel** [14] - 2:14, 3:8, 9:16, 26:14, 27:25, 31:5, 62:6, 83:11, 88:19, 91:19, 93:5, 95:3, 95:7
**count** [3] - 5:8, 6:12, 84:2
**Count** [36] - 6:10, 6:12, 6:13, 6:17, 6:25, 7:4, 7:8, 7:12, 7:23, 8:6, 8:7, 8:12, 11:24, 68:24, 68:25, 69:8, 73:14, 74:4, 74:5, 74:13, 74:15, 74:19, 74:21, 76:18, 76:23, 78:3, 78:5, 79:15, 79:22, 79:23, 80:3, 80:7
**country** [1] - 77:12
**Counts** [21] - 6:23, 7:1, 8:23, 8:25, 9:1, 11:21, 12:1, 13:12, 13:18, 13:19, 13:24, 15:20, 68:22, 68:23, 69:2, 76:9, 79:12, 79:13, 79:14, 80:25
**counts** [11] - 11:3, 11:21, 12:6, 12:17, 13:10, 13:17, 14:3, 69:12, 76:23, 81:10, 85:3
**County** [2] - 63:13, 63:14
**couple** [2] - 30:14, 53:2
**course** [4] - 30:16, 52:8, 56:8
**Court** [60] - 2:2, 3:10, 9:21, 9:25, 10:2, 12:16, 12:19, 13:10, 15:5, 15:17, 16:10, 16:22, 17:24, 19:9, 19:10, 19:18, 20:10, 23:19, 27:18, 54:3, 54:19, 61:6, 61:12, 63:11, 64:9, 64:24, 65:10, 65:25, 66:1, 70:12, 70:17, 71:1, 71:16, 72:1, 72:16, 72:21, 73:4, 73:10, 75:10, 75:20, 76:11, 76:12, 77:5, 77:7, 77:15, 81:13, 81:14, 90:10, 90:22, 90:23, 90:25, 91:1, 92:8, 94:3, 94:4, 95:5, 96:14, 97:13, 97:15, 98:7
**court** [4] - 17:4, 17:5, 19:12, 97:10
**COURT** [253] - 1:1, 2:4, 2:20, 3:3, 3:12, 3:16, 3:20, 3:24, 4:3, 4:6, 4:13, 4:18, 4:23, 5:11, 6:7, 7:20, 9:7, 9:15, 9:19, 9:21, 9:24, 10:10, 10:15, 10:19, 10:23, 11:5, 11:10, 11:14, 11:18, 11:20, 12:8, 12:12, 12:15, 13:1, 13:4, 13:23, 14:1, 14:6, 14:13, 14:25, 15:9, 15:11, 15:15, 15:19, 16:3, 16:5, 16:20, 17:1, 17:7, 18:1, 18:10, 18:20, 19:2, 19:5, 19:20, 19:25, 20:7, 20:25, 21:6, 22:7, 22:12,

22:15, 22:18, 22:22, 23:4, 23:6, 23:10,
23:12, 23:14, 23:20, 23:23, 23:25,
24:8, 24:10, 24:13, 24:20, 24:24, 25:1,
25:7, 25:12, 25:15, 25:22, 26:13, 27:7,
27:20, 27:23, 28:3, 28:7, 28:10, 28:12,
28:15, 42:18, 53:6, 53:8, 53:12, 53:17,
53:20, 53:24, 54:1, 54:4, 54:8, 54:19,
54:25, 55:3, 55:7, 55:14, 55:16, 55:18,
55:21, 55:24, 56:3, 56:8, 56:10, 56:17,
56:24, 57:2, 57:6, 57:10, 57:18, 57:22,
57:25, 58:4, 58:7, 58:10, 58:13, 58:19,
59:4, 59:23, 59:25, 60:3, 60:5, 60:16,
60:19, 60:22, 61:1, 61:7, 61:19, 62:7,
62:10, 62:25, 63:5, 63:7, 63:16, 63:20,
63:22, 64:5, 64:13, 64:16, 68:6, 68:17,
68:20, 69:25, 70:3, 70:7, 70:9, 70:11,
70:20, 70:23, 71:3, 71:7, 71:10, 71:13,
71:22, 73:12, 74:3, 74:25, 75:2, 75:17,
76:2, 76:5, 76:19, 76:22, 78:15, 78:17,
78:23, 79:6, 81:18, 81:25, 82:3, 82:5,
82:11, 82:13, 82:19, 83:9, 83:22,
84:16, 84:19, 85:1, 85:5, 85:10, 85:18,
85:21, 85:23, 86:2, 86:4, 86:14, 86:25,
87:3, 87:7, 87:12, 87:17, 87:19, 88:1,
88:11, 88:14, 88:18, 88:22, 89:3,
89:10, 89:14, 89:19, 89:23, 90:5, 90:8,
90:11, 90:15, 90:20, 90:23, 91:1, 91:5,
91:9, 91:12, 91:17, 91:20, 91:25, 92:5,
92:12, 92:17, 92:20, 93:6, 93:10,
93:14, 94:7, 94:10, 94:13, 94:17,
94:21, 95:2, 95:4, 95:12, 95:17, 95:20,
95:22, 96:2, 96:5, 96:10, 96:13, 96:16,
96:19, 96:21, 97:7, 97:13, 98:18
**Court's** [6] - 48:23, 49:11, 50:17, 53:5,
54:15, 71:19
**Court-appointed** [1] - 10:2
**Court.............................** [1] - 99:11
**Courthouse** [1] - 1:23
**courtroom** [5] - 2:23, 3:13, 60:23,
60:24, 92:23
**cover** [2] - 13:2, 59:2
**Crime** [4] - 92:17, 92:18, 93:7, 95:5
**crime** [4] - 82:17, 91:18, 93:13, 93:15
**criminal** [6] - 26:23, 55:25, 56:1, 56:6,
61:22, 65:2
**Criminal** [5] - 1:4, 2:7, 9:10, 92:14,
93:22
**criminally** [1] - 79:19
**criminally-derived** [1] - 79:19
**cringe** [1] - 89:11
**criticism** [1] - 66:18
**CROSS** [1] - 42:21
**cross** [5] - 20:2, 26:24, 27:3, 42:19,
67:11
**Cross** [1] - 99:10
**cross-examination** [3] - 26:24, 27:3,
42:19
**Cross-Examination** [1] - 99:10
**CROSS-EXAMINATION** [1] - 42:21
**cross-examine** [1] - 67:11

**crossing** [1] - 20:1
**crowd** [1] - 44:9
**CRR** [2] - 1:23, 98:17
**cuffs** [4] - 33:14, 34:11, 34:17, 47:2
**curiae** [1] - 88:2
**curious** [1] - 62:16
**current** [1] - 60:12
**custodial** [5] - 26:2, 50:15, 65:8, 65:9
**custody** [3] - 26:8, 65:11, 65:14

# D

**date** [12] - 13:7, 29:5, 29:7, 42:13,
43:17, 50:10, 67:25, 72:9, 75:8, 77:3,
77:21, 79:23
**Dated** [1] - 98:14
**dates** [2] - 68:1, 97:2
**daughter** [9] - 34:4, 36:2, 36:3, 36:15,
51:21, 54:12, 79:2, 95:25
**daughter's** [1] - 36:12
**days** [1] - 95:22
**deal** [6] - 21:12, 46:11, 46:12, 64:9,
96:7, 96:17
**dealers** [2] - 55:25, 56:4
**dealing** [1] - 47:13
**deals** [3] - 84:25, 92:5, 92:6
**dealt** [7] - 61:10, 62:2, 64:3, 65:21,
66:15, 68:12, 73:3
**deceased** [1] - 74:1
**December** [20] - 2:9, 6:16, 7:14, 7:24,
13:8, 14:20, 17:17, 23:13, 25:19, 29:5,
29:25, 64:17, 68:1, 68:3, 76:8, 81:2,
81:16, 88:25, 95:19, 96:6
**decided** [1] - 41:20
**decision** [5] - 61:18, 71:15, 71:16,
71:17, 71:19
**deemed** [1] - 10:2
**deep** [1] - 52:9
**Deep** [1] - 5:18
**Defendant** [28] - 1:6, 1:14, 3:5, 7:10,
7:15, 7:25, 8:10, 8:15, 10:14, 14:19,
25:23, 26:7, 53:7, 57:23, 62:3, 62:17,
62:20, 64:17, 67:5, 68:10, 68:24, 69:1,
69:2, 69:9, 73:17, 79:15, 90:2
**defendant** [4] - 26:23, 66:24, 67:8,
73:25
**DEFENDANT** [11] - 3:23, 4:1, 9:14, 9:18,
9:20, 10:18, 10:22, 11:4, 12:11, 12:25,
27:6
**Defendant's** [8] - 13:17, 14:14, 18:4,
19:6, 25:18, 68:8, 68:21, 69:12
**defender** [2] - 3:10, 10:3
**defense** [1] - 56:21
**Defense** [6] - 25:13, 26:14, 64:14,
89:20, 94:13, 95:14
**deficient** [1] - 20:20
**defined** [1] - 19:9
**definitely** [2] - 67:20, 94:19
**defraud** [4] - 5:17, 5:24, 73:19, 74:8

**Del** [1] - 73:22
**Delaney** [15] - 1:13, 2:17, 2:21, 16:15,
20:3, 22:8, 27:8, 28:16, 42:18, 58:22,
61:3, 68:15, 73:7, 86:23, 92:1
**DELANEY** [53] - 16:16, 16:21, 17:6,
17:14, 18:2, 18:18, 19:1, 19:3, 19:6,
19:22, 22:11, 22:13, 22:16, 22:21,
23:9, 23:11, 23:13, 23:17, 25:6, 25:11,
25:21, 26:12, 27:16, 27:21, 28:1, 28:9,
28:18, 29:22, 31:6, 31:8, 31:12, 42:7,
42:11, 42:16, 53:10, 53:15, 53:19,
53:22, 53:25, 54:7, 58:23, 59:6, 60:2,
60:6, 60:15, 61:5, 61:11, 62:9, 62:19,
63:2, 63:6, 64:12, 87:15
**DELANEY...................** [1] - 99:11
**DELANEY.....................** [1] - 99:10
**Delaware** [2] - 15:4, 68:10
**deliberate** [1] - 15:3
**demeanor** [1] - 39:21
**department** [1] - 43:11
**deposited** [1] - 82:25
**Deputy** [2] - 91:10, 95:5
**derived** [2] - 79:19, 79:21
**describe** [4] - 33:8, 35:2, 39:21, 41:11
**described** [1] - 79:22
**description** [1] - 51:8
**designated** [2] - 28:4, 35:18
**desire** [1] - 27:2
**desires** [1] - 25:7
**desk** [1] - 53:13
**despite** [1] - 61:16
**destroy** [1] - 63:14
**detain** [2] - 33:15, 34:9
**determination** [4] - 10:24, 64:2, 67:6,
82:22
**determining** [1] - 65:13
**device** [2] - 61:21, 65:2
**died** [1] - 83:22
**difference** [1] - 88:8
**different** [9] - 22:24, 23:1, 33:11, 50:23,
76:20, 82:3, 82:6, 82:7, 92:23
**DIRECT** [1] - 28:17
**Direct** [1] - 99:10
**directed** [1] - 5:25
**direction** [2] - 91:10, 93:3
**directly** [2] - 3:8, 93:15
**discussed** [1] - 44:24
**dismiss** [9] - 13:10, 13:12, 13:17, 14:2,
14:3, 15:20, 68:21, 87:22, 88:6
**dismissed** [1] - 69:12
**dispatch** [1] - 43:7
**display** [2] - 40:23, 41:3
**displayed** [2] - 51:6, 51:24
**displaying** [1] - 47:4
**disposition** [1] - 86:7
**dispositions** [1] - 80:19
**dispositive** [1] - 65:14
**dispute** [2] - 71:24, 74:17
**disputed** [1] - 76:6

**disputes** [1] - 74:3
**distance** [1] - 18:23
**District** [26] - 7:5, 7:10, 7:13, 7:14, 7:23, 7:25, 8:8, 8:9, 8:13, 8:15, 18:6, 19:10, 19:13, 19:14, 19:15, 71:16, 71:19, 72:1, 72:16, 73:17, 74:6, 77:5, 77:14, 96:1, 98:7
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 19:16
**DIVISION** [1] - 1:2
**DOAR** [1] - 31:6
**Docket** [1] - 1:4
**Document** [3] - 17:3, 23:19, 54:3
**documents** [1] - 17:19
**Dom** [3] - 38:6, 50:22, 59:17
**Dominic** [5] - 1:18, 2:18, 27:17, 53:23, 53:25
**done** [2] - 53:2, 61:23
**door** [44] - 30:5, 30:7, 31:1, 31:13, 31:18, 31:22, 31:25, 32:12, 32:13, 32:17, 32:25, 33:2, 33:6, 34:19, 35:10, 44:5, 44:20, 44:21, 45:22, 47:23, 47:25, 51:24, 52:5, 55:8, 55:11, 55:19, 56:5, 56:12, 56:20, 56:24, 57:13, 57:19, 61:15, 61:18, 61:22, 65:2, 66:10, 66:21, 66:23, 66:25
**doors** [2] - 31:2, 55:24
**dot** [1] - 20:2
**dotting** [1] - 20:1
**down** [14] - 18:13, 18:14, 32:12, 38:9, 39:1, 52:19, 59:12, 60:20, 61:22, 65:3, 66:10, 66:21, 95:22
**downs** [3] - 21:3, 95:4, 97:8
**downstairs** [4] - 34:15, 38:5, 61:17, 92:24
**drawn** [7] - 56:22, 56:25, 57:14, 65:3, 66:10, 66:22, 67:1
**draws** [1] - 35:16
**Drive** [2] - 29:17, 29:20
**drives** [1] - 94:22
**drug** [2] - 55:25, 56:4
**drugs** [1] - 40:3
**due** [2] - 8:2, 26:1
**during** [13] - 3:11, 25:25, 36:2, 39:5, 39:14, 39:18, 39:20, 40:23, 41:11, 46:1, 50:20, 60:8
**dynamic** [1] - 39:25

## E

**e-mail** [10] - 14:17, 21:12, 21:18, 21:20, 21:24, 22:13, 73:21, 73:23, 74:10, 74:11
**e-mails** [1] - 21:11
**early** [1] - 40:9
**earth** [1] - 89:5
**East** [1] - 94:23
**Eastern** [1] - 18:6
**edit** [1] - 6:8

**edited** [1] - 5:19
**educational** [1] - 40:15
**effect** [1] - 38:7
**eight** [2] - 31:17, 95:22
**either** [3] - 21:19, 40:3, 68:8
**electronic** [1] - 19:15
**eliminate** [1] - 33:19
**eloquent** [1] - 79:4
**elsewhere** [6] - 7:6, 7:10, 7:14, 7:25, 8:10, 8:15
**emergency** [1] - 43:7
**employ** [1] - 9:16
**employment** [1] - 40:20
**encounter** [1] - 33:21
**encountered** [8] - 33:17, 35:24, 40:2, 44:17, 47:5, 49:4, 59:15, 63:4
**end** [7] - 5:5, 39:17, 41:14, 41:20, 42:4, 44:10, 67:17
**enforcement** [4] - 30:6, 43:1, 44:6, 44:11
**engage** [2] - 79:16
**engaged** [1] - 84:1
**ensure** [1] - 46:16
**enter** [1] - 39:18
**entered** [4] - 37:15, 37:20, 59:7, 61:15
**enters** [1] - 94:5
**entire** [3] - 7:17, 39:12, 47:2
**entirety** [1] - 9:5
**entitled** [2] - 83:11, 98:10
**ENTITLED** [1] - 1:9
**entrance** [6] - 32:19, 37:1, 37:2, 37:9, 37:14, 58:25
**entry** [7] - 33:6, 34:23, 35:8, 35:12, 44:10, 46:25, 61:9
**Eric** [2] - 73:23, 74:11
**errors** [1] - 74:12
**escorted** [2] - 36:10, 49:14
**escrow** [1] - 80:1
**Escrow** [2] - 83:3, 83:4
**Esquire** [3] - 1:15, 1:16, 80:1
**essentially** [29] - 5:7, 14:15, 14:22, 15:6, 15:13, 15:21, 21:9, 24:11, 24:14, 25:23, 26:4, 51:5, 52:20, 58:14, 69:2, 69:11, 69:14, 69:15, 71:3, 71:5, 71:25, 72:2, 77:4, 77:22, 79:14, 80:4, 81:3, 84:6, 85:1
**established** [2] - 62:5, 62:7
**estate** [2] - 40:21, 83:23
**estimated** [1] - 95:21
**et** [4] - 18:9, 52:13, 73:24
**evasion** [5] - 7:8, 7:11, 8:1, 8:16, 12:4
**Evasion** [1] - 8:13
**event** [5] - 10:3, 12:16, 12:21, 30:12, 65:1
**evidence** [51] - 14:15, 14:16, 14:23, 15:25, 16:6, 16:9, 16:14, 17:19, 20:2, 24:15, 24:23, 25:8, 26:10, 26:23, 35:13, 42:1, 51:6, 61:13, 62:1, 62:4, 62:10, 62:16, 62:18, 62:20, 63:16,

63:22, 63:24, 65:24, 66:2, 66:4, 66:6, 67:19, 68:8, 72:14, 75:6, 77:2, 77:12, 80:17, 81:3, 81:4, 81:5, 82:14, 83:1, 83:5, 83:8, 84:7, 84:9, 84:23, 87:23, 88:4
**Evidence** [6] - 26:15, 26:16, 26:17, 26:19, 26:22, 67:7
**evidence-wise** [1] - 35:13
**ex** [1] - 75:9
**exact** [1] - 38:22
**exactly** [1] - 18:2
**EXAMINATION** [3] - 28:17, 42:21, 59:5
**Examination** [4] - 99:10, 99:10, 99:11, 99:11
**examination** [3] - 26:24, 27:3, 42:19
**examine** [1] - 67:11
**example** [2] - 84:13, 92:21
**exceed** [1] - 75:23
**exception** [1] - 35:10
**excused** [1] - 60:21
**Excused.....................................** [1] - 99:12
**execute** [1] - 47:24
**executed** [5] - 14:19, 17:8, 25:19, 49:15, 51:19
**executing** [7] - 42:25, 43:13, 46:1, 46:14, 47:23, 73:18, 74:7
**execution** [4] - 14:16, 25:25, 43:2, 88:16
**Exhibit** [16] - 31:4, 31:9, 32:23, 37:7, 37:14, 37:18, 42:10, 42:12, 53:8, 53:9, 53:10, 64:18, 64:23, 80:16, 85:8, 85:9
**exhibit** [3] - 70:10, 80:16, 85:14
**exhibits** [2] - 42:16, 50:23
**exit** [1] - 35:11
**exited** [1] - 61:16
**expect** [2] - 91:21, 97:5
**expedient** [1] - 57:17
**expedition** [1] - 21:11
**experience** [1] - 40:2
**expiration** [1] - 72:16
**expire** [2] - 74:20, 74:21
**expired** [10] - 71:20, 72:22, 73:2, 76:25, 77:8, 78:3, 78:4, 81:9, 81:17
**expires** [1] - 77:13
**extend** [1] - 76:25
**extent** [3] - 27:1, 57:18, 66:19
**extra** [1] - 64:22
**extraordinary** [8] - 56:14, 56:17, 56:19, 57:19, 61:21, 61:25, 65:1

## F

**F.3d** [3] - 71:18, 72:3, 72:24
**face** [2] - 33:20, 89:5
**facially** [1] - 20:19
**fact** [10] - 13:23, 20:24, 24:11, 33:23, 38:1, 62:21, 65:12, 66:15, 80:22, 83:15

**factor** [1] - 65:13
**factors** [1] - 12:20
**facts** [17] - 26:5, 27:2, 27:4, 64:7, 64:25, 65:3, 65:4, 65:18, 71:23, 71:24, 73:9, 73:13, 74:17, 75:2, 75:3, 75:24, 76:5
**factual** [1] - 67:9
**fails** [1] - 26:5
**fair** [1] - 45:3
**fairness** [2] - 66:13, 67:5
**fake** [1] - 74:12
**false** [8] - 5:8, 7:5, 7:15, 8:7, 8:10, 12:6, 17:21, 24:3
**familiar** [1] - 2:24
**far** [5] - 25:4, 52:8, 52:14, 65:6, 65:19
**fashion** [2] - 39:25, 57:17
**fault** [1] - 11:17
**favor** [1] - 18:10
**FBI** [21] - 2:19, 28:20, 28:21, 30:7, 31:21, 32:21, 33:9, 40:2, 44:20, 49:13, 50:13, 53:12, 53:17, 54:6, 54:21, 55:4, 55:22, 58:8, 59:17, 88:13, 89:4
**February** [2] - 8:9, 8:14
**federal** [1] - 52:24
**FEDERAL** [1] - 98:18
**Federal** [8] - 9:10, 26:15, 26:17, 26:19, 26:21, 67:7, 92:13, 93:22
**female** [4] - 30:15, 32:9, 32:10, 43:22, 44:25, 46:10, 58:1, 88:13
**females** [1] - 46:16
**few** [4] - 40:18, 40:19, 51:20, 54:19
**figure** [5] - 8:1, 8:3, 8:4, 8:18, 89:6
**figures** [1] - 8:17
**file** [6] - 64:23, 69:13, 93:1, 93:4, 95:1, 96:13
**filed** [19] - 4:25, 5:4, 5:6, 5:7, 9:11, 13:13, 13:15, 24:6, 70:5, 72:21, 75:4, 75:9, 76:7, 76:9, 76:10, 77:15, 85:19, 94:5, 97:3
**filing** [7] - 5:8, 7:4, 7:15, 8:7, 8:10, 21:8, 81:15
**filled** [3] - 55:5, 82:15, 82:16
**final** [2] - 37:17, 75:22
**finally** [2] - 32:16, 51:16
**financial** [4] - 8:1, 79:17, 85:16, 86:4
**findings** [1] - 24:12
**fine** [33] - 3:12, 11:20, 11:23, 11:25, 15:11, 18:20, 19:2, 19:5, 19:20, 19:24, 21:4, 28:3, 41:22, 62:4, 62:16, 63:5, 63:23, 68:20, 70:11, 78:15, 80:14, 87:12, 87:16, 88:22, 90:8, 90:20, 92:9, 93:10, 94:7, 94:17, 96:10, 96:16, 97:4
**Finegar** [5] - 1:16, 3:9, 3:17, 3:19, 3:20
**FINEGAR** [1] - 3:19
**finished** [3] - 38:5, 40:19, 52:11, 53:3, 96:7
**firearm** [1] - 41:3
**first** [15] - 4:7, 15:25, 17:2, 20:2, 22:18, 46:20, 52:1, 52:2, 66:16, 69:18, 70:15, 76:7, 76:23, 81:16
**First** [3] - 5:14, 8:4, 76:8

**fishing** [2] - 21:10, 83:14
**five** [6] - 12:4, 56:7, 56:8, 61:23, 61:24, 74:18
**flipping** [1] - 70:18
**Floor** [1] - 1:23
**floor** [4] - 32:4, 44:24, 52:3, 57:8
**Florida** [1] - 19:14
**FOCR** [1] - 1:23
**focused** [4] - 13:18, 71:3, 84:13, 84:19
**focuses** [1] - 72:13
**folks** [3] - 31:24, 39:23, 44:18
**follow** [2] - 50:8, 67:22
**follow-up** [1] - 50:8
**following** [2] - 6:4, 79:17
**FOR** [3] - 1:1, 1:9, 99:7
**force** [1] - 43:10
**Forcina** [2] - 92:3, 93:17
**foregoing** [1] - 98:8
**foreign** [9] - 6:22, 70:24, 71:4, 72:14, 75:22, 77:12, 77:21, 79:18, 80:17
**forfeiture** [2] - 8:21, 8:25
**forget** [1] - 89:23
**form** [3] - 26:11, 53:18, 54:6
**Form** [1] - 55:5
**formal** [1] - 26:15
**formally** [1] - 67:8
**format** [1] - 98:11
**former** [1] - 89:6
**forth** [5] - 15:4, 16:10, 32:11, 74:18, 77:11
**forward** [3] - 27:9, 88:25, 89:2
**four** [2] - 17:15, 22:24
**Fourth** [5] - 1:23, 65:15, 73:2, 78:8, 78:25
**frankly** [4] - 62:2, 62:16, 64:24, 78:11
**Franks** [6] - 15:4, 15:6, 24:2, 24:14, 68:9
**fraud** [12] - 8:20, 11:21, 13:13, 13:18, 68:25, 69:1, 74:15, 74:16, 79:22, 80:19, 83:2, 86:7
**Fraud** [2] - 6:11, 6:12
**frauds** [2] - 80:18, 86:6
**free** [9] - 62:1, 66:13, 66:14, 66:25, 67:2, 67:10, 67:11, 67:16, 76:14
**Friday** [2] - 96:1, 96:6
**front** [6] - 31:19, 33:13, 34:18, 43:21, 58:14, 85:6
**fruits** [3] - 14:20, 16:17, 83:18
**full** [8] - 28:12, 32:14, 55:15, 55:17, 55:18, 61:14, 67:12, 67:14
**full-minute** [1] - 61:14
**fully** [3] - 49:15, 79:11, 89:1
**functional** [1] - 31:6
**fund** [2] - 83:17, 83:18
**funds** [8] - 69:4, 79:20, 80:21, 82:22, 83:2, 83:23, 85:16, 86:5
**funny** [1] - 36:16

**G**

**Garbis** [2] - 4:14, 75:13
**gather** [4] - 14:9, 57:10, 58:13, 72:21
**general** [4] - 9:2, 15:13, 23:20, 35:14
**generally** [2] - 36:7, 50:9
**George's** [1] - 91:7
**Gesner** [2] - 17:11
**Gibson** [1] - 91:11
**Giddings** [2] - 65:16
**Giddins** [1] - 65:16
**Giordano** [2] - 97:9, 98:5
**GIORDANO** [2] - 1:23, 98:17
**given** [3] - 15:19, 18:24, 93:24
**glad** [16] - 16:13, 23:23, 27:7, 27:8, 69:10, 69:18, 70:4, 73:6, 79:13, 80:11, 81:19
**glass** [1] - 47:4
**God** [1] - 39:13
**gosh** [1] - 48:15
**Government** [66] - 1:12, 11:6, 16:1, 16:7, 16:14, 25:10, 26:4, 26:6, 50:1, 53:9, 53:10, 58:21, 61:8, 62:1, 62:3, 62:15, 63:9, 64:11, 64:18, 64:23, 65:20, 65:24, 66:5, 66:7, 66:14, 66:19, 67:4, 67:11, 68:10, 68:15, 69:13, 69:15, 69:19, 69:25, 70:6, 70:23, 71:3, 71:16, 72:11, 72:13, 72:15, 72:25, 73:8, 73:10, 74:22, 75:4, 75:7, 75:9, 75:25, 76:17, 77:18, 77:21, 78:1, 80:17, 83:19, 84:5, 84:7, 86:22, 87:15, 89:17, 92:7, 94:10, 95:9, 95:10
**government** [4] - 70:24, 71:4, 72:14, 77:22
**GOVERNMENT** [1] - 99:8
**Government's** [10] - 31:4, 31:9, 32:23, 37:6, 37:13, 37:17, 42:10, 42:12, 81:4, 85:22
**GOVERNMENT'S** [1] - 27:10
**Grace** [2] - 79:25, 80:6
**Grand** [9] - 7:12, 7:23, 8:7, 8:13, 75:15, 75:17, 75:18, 82:23, 84:2
**granted** [1] - 70:17
**gravamen** [1] - 72:10
**great** [1] - 20:10
**greater** [3] - 16:8, 65:23, 79:19
**group** [1] - 10:1
**guess** [6] - 49:17, 51:13, 51:14, 57:11, 67:3, 71:22
**guideline** [1] - 12:19
**guilty** [1] - 11:2
**guns** [13] - 33:21, 33:23, 36:17, 49:19, 51:24, 56:4, 56:22, 56:25, 57:14, 65:3, 66:10, 66:22, 67:1
**guys** [4] - 34:21, 34:24, 35:1, 38:21

# H

**half** [6] - 11:11, 34:14, 39:13, 45:23, 47:1
**hand** [1] - 41:1, 85:12, 86:1
**handcuffed** [9] - 46:19, 47:7, 47:8, 57:3, 57:20, 57:23, 62:8, 62:11, 67:2
**handcuffs** [9] - 34:5, 35:21, 40:24, 46:20, 46:23, 49:1, 59:13, 65:6, 66:11
**handle** [1] - 10:2
**handled** [2] - 57:8, 57:9
**happy** [2] - 63:2, 63:6
**harmed** [1] - 93:15
**hear** [28] - 16:13, 16:22, 17:25, 18:11, 18:13, 18:22, 19:18, 27:8, 44:23, 45:3, 57:11, 61:6, 61:9, 62:24, 63:10, 64:2, 67:4, 69:10, 69:18, 69:19, 70:4, 73:6, 76:17, 79:13, 80:11, 81:19
**heard** [5] - 22:8, 61:14, 62:10, 62:24, 65:6
**HEARING** [2] - 1:9, 99:3
**hearing** [18] - 2:8, 10:5, 15:6, 16:7, 24:2, 24:14, 28:1, 63:2, 65:23, 67:9, 67:24, 67:25, 68:9, 83:10, 86:20, 87:4, 87:21, 88:7
**hearings** [2] - 92:16, 97:6
**Heiss** [2] - 92:3, 93:17
**Heiss-Forcina** [2] - 92:3, 93:17
**held** [2] - 68:4, 98:10
**help** [1] - 86:8
**helped** [1] - 35:23
**helpful** [1] - 4:19
**helping** [1] - 52:12
**hereby** [1] - 98:7
**herein** [1] - 6:25
**herself** [1] - 21:19
**hesitate** [1] - 87:7
**hesitation** [1] - 38:19
**hi** [1] - 42:24
**high** [2] - 18:21, 30:17
**himself** [1] - 59:18
**hit** [4] - 33:2, 34:21, 35:10, 45:22
**hold** [6] - 4:3, 4:10, 4:15, 4:20, 25:15, 88:1
**holding** [4] - 41:1, 43:22, 44:2, 44:25
**Holdings** [2] - 79:25, 83:3
**Hong** [22] - 6:2, 69:7, 69:15, 75:5, 75:6, 78:2, 79:25, 80:5, 80:9, 81:4, 81:6, 81:24, 82:25, 83:6, 84:8, 84:10, 84:14, 84:18, 84:20, 85:17, 86:5
**Honor** [97] - 2:16, 3:6, 3:15, 4:2, 6:5, 7:19, 9:6, 9:23, 10:9, 11:8, 11:17, 13:3, 13:21, 14:5, 14:12, 14:24, 15:7, 15:14, 16:4, 16:16, 17:6, 17:14, 18:19, 19:22, 20:6, 20:23, 21:7, 22:11, 22:21, 23:9, 23:22, 24:5, 24:19, 25:5, 25:6, 25:11, 25:14, 26:12, 27:16, 28:6, 28:9, 42:20, 54:7, 54:18, 58:23, 60:2, 60:15, 60:18, 60:25, 61:5, 61:11, 62:9, 62:19,

62:23, 64:12, 64:15, 68:19, 69:23, 70:2, 70:5, 71:6, 71:9, 73:8, 74:2, 74:24, 75:1, 75:16, 76:4, 76:18, 78:13, 78:20, 79:1, 80:14, 80:15, 81:21, 81:22, 82:9, 85:4, 85:7, 86:13, 86:24, 87:2, 87:11, 87:16, 88:10, 89:9, 89:18, 89:21, 90:4, 92:11, 93:12, 94:12, 95:1, 95:11, 95:15, 96:20, 97:15
**HONORABLE** [1] - 1:10
**Honorable** [3] - 2:2, 2:3, 97:15
**hour** [7] - 34:14, 39:13, 45:23, 47:1, 87:4, 88:7
**hours** [1] - 51:20
**house** [39] - 31:2, 33:7, 33:8, 33:9, 33:11, 33:16, 33:17, 33:18, 33:20, 33:25, 34:10, 35:1, 35:9, 35:13, 35:14, 35:16, 35:23, 36:8, 36:11, 39:25, 44:7, 44:12, 44:16, 44:23, 45:21, 47:9, 49:13, 49:14, 51:16, 51:23, 52:16, 55:10, 56:25, 57:15, 58:14, 61:9, 65:5, 66:11, 66:21
**housekeeping** [2] - 2:13, 90:18
**HSB** [1] - 81:24
**HSBC** [5] - 6:2, 69:6, 79:25, 80:5, 80:9
**hundred** [1] - 29:1
**hyper** [2] - 39:23, 51:9

# I

**idea** [3] - 11:14, 49:10, 66:22
**identified** [2] - 59:17, 59:18
**identify** [8] - 2:14, 26:5, 59:8, 59:16, 80:18, 86:5, 86:8, 90:15
**identifying** [2] - 58:8, 82:20
**Ill** [1] - 86:3
**illegal** [5] - 14:20, 22:1, 83:16, 83:18, 84:1
**important** [1] - 62:23
**impose** [2] - 12:23, 65:23
**imprisonment** [1] - 11:22
**improprieties** [1] - 90:2
**IN** [1] - 1:1
**inability** [1] - 10:3
**included** [1] - 87:22
**includes** [2] - 16:18, 74:5
**including** [3] - 6:20, 26:22, 44:11
**income** [3] - 7:7, 8:18, 8:19
**incorporate** [1] - 5:18
**Incorporated** [1] - 22:20
**incorporated** [2] - 5:20, 6:25
**incorrect** [2] - 18:7, 19:7
**incrimination** [3] - 10:12, 10:16, 26:20
**INDEX** [1] - 99:1
**indicate** [2] - 43:25, 52:19
**indicated** [7] - 21:21, 48:25, 49:22, 50:19, 50:25, 61:14, 68:11
**indicates** [1] - 61:22
**indicating** [9] - 31:14, 33:3, 35:5, 37:2, 37:15, 38:23, 38:25, 51:25

indicating) [1] - 32:2
**Indictment** [34] - 2:12, 4:9, 4:10, 4:20, 4:25, 5:3, 5:7, 5:14, 7:9, 7:17, 8:4, 8:12, 9:3, 9:5, 9:8, 9:11, 11:2, 11:15, 13:14, 13:15, 14:10, 68:22, 73:14, 73:15, 73:16, 74:4, 76:7, 76:8, 76:10, 77:15, 77:19, 81:2, 81:16, 84:11
**indictment** [2] - 82:23, 84:2
**indictments** [1] - 81:17
**individual** [3] - 7:7, 12:1, 65:12
**individuals** [4] - 40:3, 60:8, 90:1
**indulgence** [5] - 48:23, 49:11, 50:17, 53:5, 54:15
**influence** [2] - 40:3, 40:6
**information** [20] - 14:17, 15:2, 17:18, 20:16, 20:17, 20:19, 21:8, 21:13, 21:23, 24:4, 41:6, 41:9, 47:15, 61:9, 62:24, 82:20, 82:21, 84:3, 86:8, 93:18
**initial** [4] - 2:11, 4:7, 9:9, 58:25
**inquire** [1] - 47:20
**inquiry** [1] - 67:17
**inside** [7] - 32:7, 34:19, 45:6, 45:25, 46:7, 53:3, 57:14
**institution** [1] - 79:18
**insufficient** [3] - 15:1, 20:17
**intending** [1] - 63:24
**interacted** [1] - 65:21
**interactions** [1] - 48:9
**interested** [3] - 48:5, 63:10, 93:1
**interesting** [2] - 96:22, 96:24
**Internal** [2] - 54:5, 54:6
**international** [1] - 82:20
**interpreted** [4] - 77:24, 77:25, 78:6, 78:10
**interrogated** [1] - 65:11
**interstate** [3] - 73:20, 74:9, 79:18
**interview** [14] - 27:18, 39:12, 39:22, 40:23, 41:12, 41:15, 42:4, 42:13, 47:16, 48:1, 50:2, 50:10, 50:20, 64:3
**interviewed** [7] - 38:2, 45:22, 46:4, 46:5, 46:24, 46:25, 54:24
**interviewing** [2] - 46:20, 48:14
**interviews** [2] - 50:13, 50:14
**investigated** [1] - 21:8
**investigation** [7] - 12:18, 15:10, 22:24, 24:7, 29:2, 59:19, 75:19
**investigations** [1] - 26:3
**investors** [1] - 5:25
**involuntarily** [1] - 26:1
**involved** [1] - 29:2
**ironically** [1] - 79:2
**IRS** [10] - 1:18, 2:18, 27:17, 53:15, 53:17, 53:20, 54:21, 55:3, 58:8, 59:18
**issuance** [1] - 18:5
**issue** [19] - 15:19, 69:8, 69:16, 69:22, 70:8, 70:14, 70:15, 71:11, 71:14, 71:21, 73:3, 73:4, 76:11, 78:8, 78:16, 79:9, 86:18, 89:22
**issued** [4] - 5:5, 72:15, 75:20, 77:19

**issues** [4] - 15:22, 20:11, 26:24, 92:5
**Italian** [1] - 4:2
**item** [1] - 42:9
**itself** [1] - 17:10

# J

**January** [3] - 5:17, 28:22, 76:9
**Jason** [2] - 32:20, 32:21
**Jenifer** [2] - 1:15, 3:7
**Jenkins** [3] - 72:24, 76:24, 77:10
**JENKINS** [1] - 72:24
**joining** [2] - 3:8, 3:11
**joke** [1] - 79:6
**Joyce** [2] - 1:13, 2:16
**Judge** [16] - 4:14, 17:11, 28:11, 73:11, 75:11, 75:13, 75:15, 75:18, 75:19, 75:20, 78:24, 79:1, 79:2
**judge** [1] - 75:12
**Judicial** [1] - 98:11
**July** [7] - 5:6, 7:5, 7:9, 69:3, 80:3, 81:1, 81:11
**June** [7] - 4:14, 5:5, 69:3, 79:24, 81:1, 81:10, 98:14
**jurisdiction** [2] - 19:9, 19:10
**Jury** [9] - 7:12, 7:23, 8:7, 8:13, 75:15, 75:17, 75:18, 82:23, 84:3
**jury** [1] - 2:9

# K

**K-O-Z-E-N-Y** [1] - 71:17
**keep** [2] - 21:1, 93:18
**Kelly** [1] - 73:22
**Kilchenstein** [2] - 79:25, 80:6
**KILCHENSTEIN** [1] - 80:1
**kind** [17] - 32:1, 33:11, 33:12, 35:5, 35:12, 35:14, 35:18, 36:15, 36:17, 37:22, 39:24, 44:2, 44:4, 51:12, 51:13, 68:9, 70:24
**kinds** [1] - 92:5
**kit** [1] - 35:6
**knives** [1] - 33:21
**knock** [3] - 30:2, 30:5, 30:20
**knock-and-announce** [1] - 30:2
**knocked** [5] - 30:22, 31:1, 31:13, 31:14, 55:9
**knowing** [2] - 45:8, 56:11
**knowingly** [1] - 79:16
**knowledge** [7] - 13:10, 29:11, 34:5, 35:21, 46:10, 48:13, 59:21
**known** [2] - 56:4, 75:5
**knows** [1] - 96:3
**Kong** [22] - 6:2, 69:7, 69:15, 75:6, 78:2, 79:25, 80:5, 80:9, 81:4, 81:6, 81:24, 82:25, 83:6, 84:8, 84:10, 84:14, 84:18, 84:20, 85:17, 86:5
**Kozeny** [4] - 71:17, 72:3, 72:18, 77:4

**KOZENY** [1] - 72:3

# L

**L-Y-N-C-H** [2] - 27:14, 28:14
**label** [1] - 60:11
**labeled** [1] - 7:12
**labels** [1] - 35:19
**lack** [2] - 67:21, 79:10
**landing** [1] - 32:4
**language** [5] - 6:19, 72:5, 72:7, 72:19, 78:11
**laptop** [4] - 38:23, 38:24, 50:19, 50:20
**larger** [1] - 37:22
**last** [1] - 39:12
**latter** [1] - 4:14
**laughing** [4] - 78:24, 79:7, 89:14, 96:16
**Laughter** [8] - 78:19, 78:22, 79:5, 89:7, 89:13, 94:24, 96:15, 97:12
**Launder** [1] - 6:13
**launder** [1] - 6:18
**laundering** [13] - 8:24, 11:24, 12:1, 13:19, 14:1, 69:3, 80:22, 80:23, 81:5, 84:8, 84:23, 86:13
**Laundering** [1] - 6:24
**LAUREN** [2] - 1:5, 99:2
**Lauren** [8] - 2:7, 29:3, 29:12, 34:3, 38:7, 53:1, 73:17, 74:6
**LaurenMontillo@aol.com** [4] - 14:18, 24:17, 73:21, 74:10
**law** [10] - 21:24, 30:6, 43:1, 44:6, 44:11, 68:5, 68:13, 93:11, 93:15, 97:9
**lawyer** [4] - 52:20, 63:12, 67:16, 90:20
**lawyers** [3] - 10:2, 18:23, 92:7
**layout** [1] - 35:14
**lead** [1] - 24:22
**learned** [1] - 63:13
**learning** [1] - 45:14
**least** [5] - 30:14, 51:20, 65:5, 66:10, 96:8
**leave** [5] - 27:18, 39:18, 66:13, 67:2, 96:9
**left** [6] - 51:17, 51:21, 52:7, 54:12, 57:7, 83:22
**legal** [11] - 16:15, 25:8, 26:5, 64:8, 69:8, 70:3, 71:21, 73:4, 76:16, 78:8, 96:22
**Legal** [7] - 15:23, 69:14, 73:1, 75:4, 78:2, 82:9, 96:23
**less** [1] - 90:18
**letters** [2] - 6:2, 35:7
**letting** [1] - 32:6
**licensed** [2] - 90:9, 90:24
**light** [1] - 69:13
**limitation** [3] - 72:15, 77:8, 77:13
**limitations** [30] - 15:22, 69:16, 70:16, 71:20, 72:12, 72:17, 72:21, 72:22, 72:25, 73:1, 74:14, 74:18, 74:20, 75:21, 76:12, 77:1, 77:2, 77:6, 78:3, 78:4, 79:11, 80:12, 81:7, 81:8, 81:9,

81:15, 81:17, 84:22, 84:25
**limited** [2] - 67:10, 67:11
**lined** [1] - 31:17
**lines** [1] - 49:18
**listed** [1] - 8:17
**lists** [1] - 79:23
**literally** [3] - 11:11, 18:21, 18:22
**live** [2] - 29:12, 29:13
**living** [1] - 62:21
**LLC** [1] - 80:9
**local** [1] - 43:1
**located** [3] - 33:25, 45:15, 75:6
**location** [2] - 29:9, 29:16
**locations** [1] - 29:16
**Loi** [3] - 34:15, 35:17, 37:12
**Lombard** [2] - 1:24, 18:11
**longest** [1] - 39:13
**look** [10] - 2:24, 12:20, 21:10, 35:4, 36:23, 38:10, 70:14, 79:8, 84:3, 87:3
**looked** [3] - 78:9, 79:3
**looking** [9] - 22:4, 22:18, 22:19, 37:18, 50:23, 80:15, 82:24, 85:21, 93:20
**looks** [2] - 35:15, 35:17
**louder** [2] - 19:1, 19:4
**loudly** [2] - 31:21, 44:19
**Ltd** [2] - 5:19, 80:8
**Lutherville** [2] - 29:17, 29:21
**Lynch** [22] - 2:19, 3:2, 3:3, 16:25, 17:4, 17:5, 19:24, 26:11, 27:9, 27:14, 27:21, 28:14, 28:19, 42:8, 53:23, 54:20, 59:2, 60:20, 61:2, 61:19, 66:20, 89:15
**LYNCH** [3] - 3:2, 27:10, 99:9
**Lynch's** [1] - 65:1

# M

**ma'am** [1] - 49:2
**Madam** [2] - 4:18, 64:22
**Magaziner** [1] - 42:2
**mail** [10] - 14:17, 21:12, 21:18, 21:20, 21:24, 22:13, 73:21, 73:23, 74:10, 74:11
**mails** [1] - 21:11
**male** [2] - 32:9, 44:25
**man** [1] - 65:5
**mandatory** [2] - 12:13, 12:23
**manner** [1] - 6:19
**mark** [1] - 31:3
**marked** [1] - 58:15
**marking** [1] - 42:9
**Marlboro** [3] - 91:7, 91:8, 94:22
**MARTIN** [2] - 1:23, 98:17
**Martin** [1] - 98:5
**MARYLAND** [1] - 1:1
**Maryland** [24] - 1:7, 1:24, 7:6, 7:10, 7:13, 7:14, 7:24, 7:25, 8:8, 8:9, 8:14, 8:15, 18:5, 19:15, 29:10, 29:21, 73:17, 74:6, 90:22, 90:24, 91:2, 91:3, 94:23, 98:7

**Matlock** [1] - 16:10
**matter** [30] - 4:13, 7:11, 11:6, 12:15, 15:20, 17:2, 19:20, 20:11, 26:22, 27:2, 27:4, 55:8, 64:6, 64:17, 64:25, 65:8, 67:23, 68:13, 68:21, 71:4, 75:12, 75:18, 86:16, 86:20, 89:15, 89:24, 90:18, 95:16, 98:10
**MATTER** [1] - 1:9
**matters** [6] - 12:21, 15:10, 67:9, 67:10, 67:11, 93:19
**maximum** [4] - 11:9, 11:22, 12:9, 12:22
**McDonald** [61] - 1:13, 2:16, 2:20, 5:9, 5:10, 11:7, 11:8, 11:13, 11:17, 11:19, 11:21, 12:13, 12:14, 15:15, 15:18, 16:1, 16:2, 68:15, 68:16, 70:2, 71:5, 71:6, 73:7, 74:23, 74:24, 75:15, 76:1, 78:17, 78:20, 81:19, 81:21, 82:1, 82:4, 82:6, 82:12, 82:14, 82:24, 83:15, 83:20, 83:21, 86:23, 86:24, 87:11, 87:17, 87:18, 88:10, 88:11, 88:12, 88:15, 88:19, 89:1, 89:8, 89:18, 92:1, 92:22, 93:18, 94:11, 94:12, 95:9, 95:10
**mean** [18] - 21:3, 32:15, 33:12, 33:20, 36:9, 39:23, 39:24, 44:15, 47:1, 48:18, 51:12, 71:15, 71:22, 77:22, 78:13, 80:13, 83:14, 96:25
**meaning** [4] - 6:22, 26:25, 72:21, 83:22
**means** [8] - 6:19, 30:4, 30:5, 54:21, 55:3, 66:6, 66:24, 74:19
**meat** [1] - 20:21
**mechanical** [1] - 1:21
**Media** [2] - 6:21, 7:2
**medical** [1] - 48:11
**medication** [8] - 48:14, 48:19, 48:20, 51:11, 59:20, 60:1, 60:5, 60:8
**medicine** [2] - 60:10, 60:11
**member** [1] - 91:1
**memorandum** [2] - 50:1, 64:19
**memorialize** [1] - 50:7
**Merit** [1] - 98:5
**microphone** [6] - 18:14, 18:16, 18:20, 20:25, 21:4, 27:12
**Middle** [1] - 19:14
**might** [2] - 33:14, 44:15
**Mills** [2] - 29:10, 58:15
**mind** [1] - 70:16
**minimums** [1] - 12:13
**minor** [8] - 30:10, 34:3, 45:15, 45:20, 46:8, 46:12, 46:16, 49:17
**minute** [14] - 2:5, 4:15, 7:17, 11:11, 32:14, 47:24, 55:13, 55:14, 55:15, 55:17, 55:18, 61:14, 72:6, 89:24
**minutes** [3] - 47:11, 53:2, 90:19
**Miranda** [7] - 10:11, 26:7, 39:8, 62:14, 65:9, 66:3
**misleading** [1] - 24:3
**misrepresentations** [1] - 15:3
**missing** [1] - 22:9
**mistaken** [3] - 4:15, 87:24, 95:23

**MLAT** [13] - 75:5, 78:1, 80:18, 81:12, 81:13, 82:8, 82:11, 84:18, 84:19, 86:19, 96:23
**MLL** [1] - 79:24
**MM** [1] - 5:18
**MOI** [1] - 53:15
**moment** [5] - 13:5, 31:3, 35:3, 42:5, 62:22
**Monday** [6] - 13:8, 87:13, 87:20, 88:25, 97:1
**monetary** [2] - 79:17, 80:4
**money** [21] - 6:1, 6:18, 8:24, 11:24, 12:1, 13:19, 14:1, 69:3, 80:22, 81:5, 82:18, 82:24, 83:7, 83:16, 83:17, 84:8, 84:23, 86:12
**Money** [2] - 6:13, 6:23
**MONTILLO** [2] - 1:5, 99:2
**Montillo** [57] - 2:7, 3:7, 3:22, 3:25, 4:1, 4:2, 4:3, 5:2, 5:17, 6:20, 9:13, 10:1, 10:13, 11:3, 12:10, 12:16, 26:14, 26:16, 27:5, 29:3, 29:12, 32:16, 34:3, 34:16, 35:21, 35:24, 36:14, 36:17, 36:20, 36:22, 37:19, 37:24, 38:2, 38:8, 39:5, 40:6, 41:5, 41:20, 45:22, 52:10, 57:23, 59:13, 59:20, 61:10, 61:15, 62:11, 62:17, 63:4, 65:21, 66:15, 67:13, 73:18, 74:7, 79:16, 80:12, 90:2
**Montillo's** [2] - 30:10, 39:21
**morning** [6] - 40:9, 43:13, 45:18, 55:9, 87:9, 87:14
**most** [2] - 82:11, 91:22
**motion** [42] - 13:10, 13:11, 13:12, 13:17, 13:21, 14:2, 14:8, 14:11, 14:14, 14:22, 15:25, 16:6, 16:9, 16:16, 16:24, 18:4, 18:7, 19:6, 19:11, 19:17, 19:23, 20:1, 24:14, 24:15, 25:18, 25:23, 26:5, 68:21, 69:12, 69:24, 75:10, 77:3, 85:8, 85:22, 86:20, 87:5, 87:21, 87:23, 88:4, 88:6, 94:5, 95:1
**MOTIONS** [2] - 1:9, 99:3
**motions** [9] - 2:8, 5:6, 13:9, 15:12, 15:16, 20:9, 21:8, 68:7, 87:22
**move** [2] - 23:3, 89:2
**MR** [81] - 16:16, 16:21, 17:6, 17:14, 18:2, 18:18, 19:1, 19:3, 19:6, 19:22, 22:11, 22:13, 22:16, 22:23, 23:9, 23:11, 23:13, 23:17, 25:6, 25:11, 25:21, 26:12, 27:16, 27:21, 28:1, 28:9, 28:18, 29:22, 31:6, 31:8, 31:12, 42:7, 42:11, 42:16, 53:10, 53:15, 53:19, 53:22, 53:25, 54:7, 58:23, 59:6, 60:2, 60:6, 60:15, 61:5, 61:11, 62:9, 62:19, 63:2, 63:6, 64:12, 87:15, 90:4, 90:7, 90:9, 90:14, 90:17, 90:22, 90:24, 91:3, 91:7, 91:10, 91:13, 91:18, 91:21, 92:4, 92:10, 92:13, 92:18, 92:21, 93:9, 93:12, 94:4, 94:8, 94:18, 94:25, 95:3, 97:5, 99:10, 99:11
**MS** [142] - 2:16, 3:6, 3:15, 3:19, 4:2, 5:10, 6:5, 7:19, 9:6, 9:23, 10:9, 11:8,

11:13, 11:17, 11:19, 11:21, 12:14, 13:3, 13:21, 13:25, 14:5, 14:12, 14:24, 15:7, 15:10, 15:14, 15:18, 16:2, 16:4, 20:6, 20:23, 21:5, 21:7, 22:23, 23:5, 23:15, 23:22, 23:24, 24:5, 24:9, 24:11, 24:19, 24:21, 24:25, 25:5, 25:14, 28:6, 42:20, 42:22, 48:23, 48:24, 49:11, 49:12, 50:17, 50:18, 53:5, 53:14, 54:9, 54:10, 54:15, 54:17, 60:18, 60:25, 63:10, 63:18, 63:21, 63:25, 64:15, 68:16, 68:19, 69:23, 70:2, 70:5, 70:8, 70:10, 70:12, 70:22, 71:2, 71:6, 71:9, 71:11, 71:14, 73:8, 74:2, 74:24, 75:1, 75:15, 76:1, 76:4, 76:18, 76:20, 78:13, 78:16, 78:20, 80:14, 81:21, 82:1, 82:4, 82:6, 82:12, 82:14, 82:24, 83:21, 84:15, 84:17, 84:24, 85:4, 85:7, 85:11, 85:19, 85:22, 85:25, 86:3, 86:12, 86:24, 87:2, 87:11, 87:16, 87:18, 87:25, 88:10, 88:12, 88:15, 88:19, 89:1, 89:8, 89:18, 89:21, 94:12, 94:15, 94:20, 95:10, 95:15, 95:18, 95:21, 95:24, 96:3, 96:8, 96:12, 96:18, 96:20, 99:10
**multiple** [1] - 61:16
**must** [7] - 4:7, 21:14, 69:12, 72:15, 75:11, 81:22, 93:24
**Mutual** [7] - 15:23, 69:14, 73:1, 75:4, 78:1, 82:9, 96:23

## N

**name** [9] - 2:25, 3:1, 3:4, 3:17, 3:24, 6:21, 27:13, 28:12, 65:16
**namely** [2] - 73:21, 74:10
**Natalie** [2] - 1:16, 3:9
**nature** [3] - 9:12, 65:9, 67:18
**need** [23] - 9:7, 10:25, 11:11, 14:10, 20:7, 20:11, 20:21, 30:7, 36:10, 38:12, 43:16, 44:20, 54:1, 67:4, 67:19, 67:24, 68:2, 71:23, 79:9, 89:2, 92:25, 93:21, 96:13
**needed** [5] - 60:12, 80:17, 82:7, 82:14, 83:8
**needs** [4] - 62:24, 85:16, 86:4, 86:7
**negative** [1] - 50:8
**never** [5] - 2:11, 18:15, 73:3, 75:12, 79:3
**next** [4] - 35:24, 37:6, 37:13, 86:17
**nexus** [1] - 20:17
**nice** [10] - 2:20, 2:21, 2:22, 3:3, 3:12, 3:14, 3:16, 3:21, 35:6, 90:5
**night** [1] - 97:10
**nine** [1] - 36:4
**Ninth** [6] - 71:15, 72:22, 76:23, 77:10, 77:25, 78:9
**nobody's** [1] - 33:11
**non** [1] - 65:8
**none** [1] - 12:22
**normally** [3] - 43:9, 43:11, 97:10

**NORTHERN** [1] - 1:2
**note** [6] - 4:9, 14:6, 18:3, 24:1, 27:16, 58:24
**noted** [11] - 20:9, 20:14, 26:8, 65:25, 70:23, 71:15, 76:24, 77:5, 77:11, 85:19, 93:21
**notes** [3] - 7:9, 50:20, 50:23
**nothing** [8] - 14:9, 24:1, 60:15, 64:21, 79:1, 83:23, 89:18, 95:10
**notice** [9] - 70:24, 71:1, 71:4, 86:19, 93:2, 94:5, 94:8, 94:15
**notices** [1] - 92:15
**notification** [1] - 43:4
**notified** [9] - 7:20, 43:8, 44:7, 91:15, 92:8, 92:23, 92:25, 93:16, 95:25
**notifies** [1] - 94:16
**notion** [1] - 67:2
**November** [6] - 1:7, 11:16, 87:14, 87:20, 88:24, 97:1
**NOVEMBER** [2] - 2:1, 99:3
**number** [2] - 56:3, 80:6
**Number** [12] - 2:7, 14:9, 14:15, 15:25, 24:16, 31:4, 32:24, 80:2, 80:10, 88:3, 88:4, 88:5
**nutshell** [2] - 71:5, 83:19

## O

**o'clock** [3] - 64:4, 92:24, 96:1
**objection** [6] - 28:5, 60:22, 60:23, 94:10, 94:13, 94:15
**observe** [1] - 36:12
**observed** [1] - 40:11
**obtain** [1] - 75:6
**obviously** [13] - 16:6, 29:21, 35:9, 35:20, 44:17, 56:11, 56:20, 57:15, 66:18, 66:21, 88:13, 91:22, 97:4
**occur** [2] - 30:19, 81:1
**occurred** [2] - 21:9, 62:12
**occurring** [1] - 80:23
**October** [7] - 4:25, 9:11, 11:15, 13:15, 13:16, 76:10, 91:16
**OF** [5] - 1:1, 1:3, 2:1, 98:1, 99:6
**offense** [2] - 19:11, 83:14
**offenses** [1] - 74:18
**Office** [2] - 92:22, 93:2
**officers** [2] - 43:10, 58:1
**OFFICIAL** [2] - 98:1, 98:18
**official** [3] - 72:9, 77:2, 77:12
**officially** [1] - 92:25
**officials** [2] - 75:6, 78:2
**often** [2] - 55:21, 55:24
**old** [1] - 36:3
**omissions** [1] - 15:3
**ON** [1] - 1:9
**once** [5] - 33:6, 35:1, 52:16, 53:1, 59:7
**one** [41] - 4:3, 4:10, 4:16, 4:20, 10:16, 13:13, 18:12, 18:24, 21:1, 22:12, 22:13, 22:16, 22:21, 22:24, 23:2,

26:20, 27:21, 27:23, 29:19, 31:3, 38:22, 42:9, 50:25, 55:23, 59:3, 61:1, 65:12, 65:13, 66:10, 71:15, 74:3, 78:23, 78:24, 87:23, 88:2, 88:12, 88:15, 89:24, 94:22
**open** [6] - 31:22, 32:12, 32:17, 44:20, 44:21
**opened** [3] - 6:20, 30:8, 33:6
**operable** [2] - 73:15, 75:7
**opinion** [8] - 15:5, 16:12, 40:6, 65:10, 66:1, 72:4, 72:23, 86:17
**opinions** [1] - 19:12
**opportunity** [6] - 20:12, 36:12, 69:19, 77:17, 83:12, 93:25
**order** [7] - 5:5, 32:17, 40:12, 41:5, 41:8, 75:21, 76:25
**Order** [2] - 73:11, 81:13, 81:14
**ordinarily** [2] - 56:12, 61:1
**original** [3] - 8:3, 8:4, 53:16
**originally** [1] - 8:17
**ourselves** [1] - 30:6
**outside** [6] - 41:23, 41:24, 44:7, 44:12, 44:23, 46:6, 52:17, 53:2
**outward** [1] - 39:21
**overall** [1] - 67:18
**overcome** [1] - 62:20
**owing** [2] - 8:3, 8:19
**Owings** [2] - 29:10, 58:15
**own** [1] - 56:21

## P

**PACER** [1] - 94:6
**PAGE** [1] - 99:6
**page** [9] - 37:6, 37:13, 37:17, 73:10, 85:11, 85:13, 85:18, 85:20, 98:10
**Page** [1] - 6:19, 7:1, 19:11, 32:23, 34:18, 34:23, 85:8, 85:12, 85:14, 85:19
**pages** [1] - 17:17
**paginated** [1] - 85:9
**Palumbo** [14] - 1:18, 2:18, 2:22, 27:17, 28:2, 38:6, 39:19, 47:18, 53:23, 54:23, 57:11, 58:25, 64:19, 67:15
**panel** [1] - 3:9
**Paper** [7] - 14:9, 14:15, 15:25, 24:16, 88:3, 88:5
**paper** [2] - 50:21, 50:22
**papers** [8] - 21:22, 23:25, 25:24, 64:9, 67:20, 68:12, 76:15, 79:9
**paperwork** [2] - 35:19, 51:3
**Paragraph** [13] - 55:14, 5:15, 5:20, 5:21, 5:22, 5:23, 6:14, 6:17, 6:24, 18:4, 19:6, 85:13, 86:3
**paragraph** [1] - 85:15
**Paragraphs** [2] - 6:8, 6:25
**part** [9] - 4:14, 5:16, 5:24, 24:21, 29:7, 58:25, 83:25, 88:1, 88:2
**parte** [1] - 75:9

**participants** [1] - 53:22
**participate** [1] - 91:23
**participated** [2] - 28:23, 86:9
**participating** [1] - 91:21
**particular** [1] - 71:1
**party** [1] - 93:1
**pass** [1] - 53:15
**passed** [2] - 45:20, 74:1
**past** [1] - 28:23
**path** [1] - 32:1
**Pause** [6] - 4:5, 4:12, 4:17, 4:22, 54:16, 87:6
**pause** [2] - 61:14, 63:2
**PDF** [1] - 85:9
**peeled** [3] - 35:22, 52:7, 57:5
**peer** [1] - 44:5
**penalties** [3] - 11:9, 12:9, 12:22
**penalty** [1] - 11:22
**pending** [1] - 13:9
**people** [15] - 19:3, 31:16, 33:20, 33:25, 35:2, 35:6, 35:12, 35:20, 36:8, 44:16, 48:7, 56:4, 67:1, 82:11, 89:5
**perhaps** [1] - 83:6
**period** [13] - 66:11, 72:8, 72:12, 72:15, 72:17, 72:22, 72:25, 73:2, 77:1, 77:2, 77:9, 86:11, 86:12
**person** [5] - 21:18, 23:2, 66:11, 66:16
**personal** [2] - 73:22, 74:11
**personality** [1] - 51:14
**petition** [1] - 96:13
**phase** [1] - 18:23
**phone** [15] - 32:10, 41:24, 41:25, 42:1, 43:22, 44:1, 44:2, 44:25, 50:25, 51:17, 52:18, 52:22, 52:23, 52:25, 53:1
**photo** [1] - 47:4
**photographs** [6] - 35:8, 35:11, 35:12, 54:2
**phrase** [2] - 6:10, 7:2
**picture** [4] - 36:23, 37:21, 67:12, 67:14
**piece** [2] - 50:21, 50:22
**place** [3] - 8:3, 20:18, 62:21
**placed** [6] - 34:5, 35:2, 35:21, 48:25, 65:6, 66:11
**places** [1] - 36:11
**plain** [5] - 35:13, 58:2, 58:17, 72:5, 72:19
**plan** [1] - 87:11
**play** [1] - 50:24
**played** [2] - 41:18, 50:25
**plea** [1] - 11:2
**pleadings** [2] - 92:16, 94:9
**PM** [1] - 1:8
**podium** [2] - 18:17, 18:18
**point** [58] - 11:6, 15:15, 25:9, 25:12, 30:25, 31:16, 31:20, 31:23, 33:5, 34:11, 34:13, 35:17, 36:13, 40:7, 40:13, 40:23, 41:14, 42:3, 44:7, 44:10, 44:12, 45:25, 46:7, 46:24, 47:3, 47:7, 48:13, 49:13, 59:10, 59:12, 60:17,

61:17, 64:3, 64:11, 64:13, 65:7, 66:15,
68:14, 68:17, 70:17, 71:7, 74:23,
74:25, 75:25, 76:2, 77:1, 80:22, 82:19,
86:22, 86:25, 89:16, 89:19, 91:24,
91:25, 94:5, 95:9, 95:13, 96:19
**police** [4] - 26:9, 31:21, 58:9, 58:15
**policy** [2] - 50:14, 58:6
**portion** [3] - 16:21, 19:18, 88:2
**posed** [1] - 41:19
**position** [4] - 26:6, 56:22, 80:25, 81:12
**positions** [1] - 64:8
**possibility** [2] - 48:18, 59:22
**possible** [1] - 48:16
**possibly** [1] - 33:17
**potential** [1] - 63:25
**pounded** [1] - 31:1
**practice** [4] - 50:13, 60:7, 90:9, 91:5
**practicing** [1] - 90:21
**precisely** [1] - 76:11
**prefer** [1] - 64:24
**preference** [1] - 63:9
**preliminarily** [1] - 27:16
**preliminary** [3] - 10:5, 26:22, 75:18
**premises** [1] - 22:20
**prepare** [2] - 84:2, 93:2
**prepared** [6] - 12:18, 16:25, 19:24,
42:13, 63:7, 66:12
**preparing** [1] - 35:19
**preponderance** [5] - 16:8, 65:24, 66:2,
66:3, 66:6
**prescribed** [1] - 60:11
**presence** [2] - 43:14, 43:18
**present** [17] - 1:17, 25:7, 27:17, 29:18,
29:23, 30:13, 61:5, 61:12, 62:1, 62:3,
62:15, 62:20, 63:7, 63:17, 63:24,
82:23, 93:24
**presentation** [1] - 16:14
**presented** [5] - 17:4, 26:10, 64:8, 64:25,
69:22
**presentence** [1] - 12:18
**presenting** [1] - 62:17
**presents** [1] - 65:20
**preservation** [1] - 20:11
**presiding** [1] - 2:3
**pretrial** [2] - 10:6, 88:23
**pretty** [3] - 34:7, 57:12, 67:22
**prevent** [1] - 60:7
**previous** [1] - 37:21
**previously** [2] - 5:13, 20:8
**Prince** [1] - 91:7
**principles** [1] - 10:11
**printed** [1] - 4:19
**privilege** [3] - 10:12, 10:15, 26:20
**probability** [1] - 30:17
**probable** [4] - 20:15, 21:17, 22:6, 68:12
**problem** [1] - 21:16
**procedurally** [1] - 86:21
**Procedure** [2] - 9:10, 93:22
**procedures** [1] - 30:12

**proceed** [3] - 13:5, 28:8, 28:16
**PROCEEDINGS** [2] - 2:1, 99:13
**Proceedings** [2] - 1:21, 97:17
**proceedings** [4] - 90:13, 92:2, 93:16,
98:9
**PROCEEDINGS..........................** [1] -
99:6
**proceeds** [3] - 80:19, 82:16, 86:7
**process** [2] - 33:8, 35:3
**produced** [1] - 1:21
**proffer** [2] - 10:20, 63:23
**proffering** [1] - 63:16
**promises** [1] - 41:8
**pronouncing** [2] - 3:17, 3:24
**proof** [4] - 16:7, 16:8, 65:23, 66:5
**properly** [1] - 76:12
**property** [4] - 18:5, 79:19, 79:20
**proposition** [1] - 21:25
**prosecution** [1] - 29:2
**prosecutor** [3] - 85:16, 86:4, 86:7
**provide** [4] - 41:6, 41:8, 43:14, 86:10
**provided** [1] - 31:5
**provides** [1] - 79:23
**province** [1] - 12:16
**provisions** [1] - 93:21
**public** [2] - 3:10, 10:3
**pull** [4] - 18:16, 20:25, 21:4, 33:12
**purpose** [5] - 33:18, 34:8, 59:1, 59:8,
73:18
**purposes** [2] - 28:1, 74:7
**pursuant** [7] - 9:9, 26:15, 26:16, 76:12,
76:25, 93:21, 98:8
**put** [9] - 11:19, 20:21, 33:14, 35:7,
51:14, 63:19, 65:22, 71:16, 91:5

## Q

**qualified** [1] - 10:2
**questions** [14] - 38:12, 38:13, 40:1,
40:12, 42:5, 42:7, 42:17, 49:24, 50:6,
50:8, 52:21, 54:17, 54:19, 59:19
**quickly** [3] - 57:2, 57:12, 67:22
**quite** [6] - 22:3, 62:2, 62:16, 64:24,
78:11, 92:10
**quote** [2] - 26:1, 80:18
**quoting** [1] - 85:15

## R

**raise** [1] - 89:21
**raised** [2] - 69:9, 78:16
**ram** [7] - 32:17, 33:2, 55:11, 56:12,
61:21, 65:2, 66:21
**rammed** [4] - 55:19, 55:24, 56:5, 56:24,
57:13
**ramming** [8] - 47:25, 51:23, 55:8, 56:19,
57:19, 61:21, 65:2, 66:10
**range** [1] - 12:19

**rarely** [1] - 19:3
**rather** [1] - 67:6
**Ray** [1] - 73:22
**RDB-17-0655** [2] - 1:4, 2:7
**read** [5] - 9:1, 9:7, 11:9, 76:15, 77:16
**reading** [7] - 7:16, 9:4, 11:1, 18:7, 19:7,
22:3, 85:23
**ready** [3] - 13:5, 50:24, 97:7
**real** [1] - 40:21
**reality** [1] - 67:8
**realize** [1] - 7:21
**really** [13] - 13:22, 20:10, 22:3, 38:12,
61:19, 67:17, 70:15, 70:18, 71:11,
71:14, 83:13, 84:20, 88:16
**Realtime** [1] - 98:6
**reason** [2] - 2:10, 18:10
**reasonably** [1] - 9:2
**reassigned** [1] - 5:4
**received** [1] - 70:6
**recess** [1] - 89:8
**recital** [1] - 95:25
**reckless** [1] - 15:3
**recognize** [4] - 20:10, 31:9, 31:25, 62:4
**recognized** [1] - 65:15
**recollection** [1] - 51:5
**recommend** [1] - 91:25
**record** [20] - 2:15, 11:19, 15:7, 16:18,
16:22, 19:21, 20:5, 24:10, 25:3, 27:13,
28:13, 31:4, 39:2, 50:13, 50:14, 50:16,
58:24, 63:19, 68:5, 91:6
**recorded** [3] - 1:21, 41:18, 50:10
**recording** [1] - 45:9
**recordings** [1] - 50:24
**records** [4] - 19:16, 81:6, 85:16, 86:5
**recross** [1] - 60:17
**Redirect** [1] - 99:11
**redirect** [1] - 58:21
**REDIRECT** [1] - 59:5
**redlined** [1] - 6:5
**redlines** [1] - 6:8
**reference** [4] - 6:17, 7:1, 51:11, 93:6
**references** [1] - 19:7
**referred** [1] - 4:13
**referring** [1] - 22:23
**reflect** [1] - 24:10
**reflected** [2] - 5:15, 64:18
**regard** [4] - 16:16, 16:21, 16:24, 19:23
**regarding** [3] - 30:10, 70:8, 74:12
**Registered** [1] - 98:5
**registry** [1] - 86:8
**regulations** [1] - 98:11
**relate** [1] - 15:22
**related** [1] - 17:23
**relates** [1] - 69:6
**release** [9] - 10:6, 10:7, 10:24, 10:25,
11:23, 11:25, 12:3, 12:5, 12:7
**remember** [6] - 38:22, 38:24, 39:20,
43:19, 44:9, 52:6
**remembered** [1] - 38:23

**removed** [2] - 34:11, 34:17
**repeated** [1] - 61:16
**replaced** [1] - 7:2
**report** [2] - 12:18, 42:12
**reported** [1] - 98:9
**REPORTER** [3] - 29:19, 98:1, 98:18
**Reporter** [2] - 98:5, 98:6
**represent** [2] - 91:15, 91:18
**representation** [2] - 10:4, 85:3
**represented** [3] - 46:5, 92:15, 93:13
**represents** [1] - 94:16
**request** [26] - 9:16, 21:13, 24:13, 41:14,
   51:11, 68:9, 69:14, 70:17, 72:9, 72:11,
   72:16, 73:1, 75:5, 75:23, 77:2, 77:12,
   77:21, 78:2, 81:4, 81:7, 81:12, 81:14,
   85:3, 85:5, 85:6, 85:15
**requested** [3] - 15:6, 42:3, 75:9
**requesting** [1] - 72:14
**requests** [1] - 61:16
**require** [1] - 58:5
**required** [2] - 26:7, 65:11
**requirement** [1] - 77:11
**requires** [4] - 19:8, 58:6, 72:19, 77:18
**residence** [15] - 23:2, 23:5, 24:18, 25:2,
   25:20, 42:25, 43:5, 43:21, 44:13, 45:8,
   45:15, 46:4, 51:18, 57:13, 59:7
**residential** [1] - 22:16
**resides** [1] - 29:11
**respect** [41] - 3:5, 5:3, 5:15, 6:18, 8:24,
   10:23, 13:13, 14:1, 15:1, 15:20, 16:6,
   16:9, 17:2, 17:9, 24:15, 24:16, 25:2,
   25:22, 55:7, 56:4, 57:12, 61:3, 62:11,
   62:13, 64:16, 64:19, 64:25, 65:8, 66:3,
   66:9, 67:20, 67:22, 69:4, 82:21, 84:6,
   84:21, 86:18, 87:21, 88:4, 88:5, 92:6
**respond** [2] - 20:13, 69:20, 77:17
**responded** [1] - 26:4
**response** [3] - 19:12, 50:8, 55:10
**rest** [2] - 46:1, 51:15
**restrained** [1] - 39:5
**result** [1] - 14:16
**results** [1] - 82:8
**resumes** [1] - 2:3
**retired** [1] - 88:15
**retrieved** [1] - 45:9
**return** [7] - 5:8, 7:5, 7:7, 7:15, 8:7, 8:11,
   84:10
**returned** [4] - 4:10, 11:15, 52:25, 81:2
**Revenue** [2] - 54:5, 54:6
**review** [2] - 23:25, 25:24
**reviewed** [2] - 23:7, 50:1
**revive** [1] - 76:25
**Richard** [1] - 2:3
**RICHARD** [1] - 1:10
**right-hand** [2] - 85:12, 86:1
**rights** [2] - 39:8, 66:3
**Rights** [4] - 92:17, 92:18, 93:7, 95:5
**Rio** [1] - 73:22
**rise** [3] - 2:2, 84:10, 97:15

**RMR** [2] - 1:23, 98:17
**Road** [3] - 29:10, 31:10, 58:15
**room** [20] - 34:23, 35:25, 36:21, 36:23,
   37:5, 37:8, 37:15, 37:19, 37:20, 37:22,
   37:23, 47:3, 47:5, 47:10, 47:16, 48:1,
   52:9, 61:16, 62:21
**room-wise** [1] - 52:9
**rooms** [2] - 33:11, 33:16
**rotating** [1] - 21:2
**roughly** [1] - 38:25
**royal** [1] - 89:15
**rule** [5] - 67:20, 67:22, 68:13, 79:8, 79:9
**Rule** [8] - 9:9, 18:6, 19:7, 26:16, 26:18,
   26:21, 67:6, 93:22
**ruled** [1] - 78:8
**rules** [2] - 15:4, 67:7
**Rules** [8] - 9:10, 26:15, 26:17, 26:19,
   26:21, 67:7, 93:22
**ruling** [2] - 64:10, 86:15
**rulings** [1] - 67:23
**run** [1] - 72:12
**running** [4] - 70:17, 72:20, 77:6, 77:7
**Russell** [1] - 90:3

# S

**S/A** [1] - 3:2
**safety** [2] - 34:9, 49:1
**sat** [3] - 38:9, 39:1, 59:12
**saw** [5] - 45:20, 45:25, 46:8, 55:10, 79:2
**scene** [1] - 48:2
**scheduled** [5] - 2:9, 13:7, 88:23, 88:25,
   95:18
**scheduling** [3] - 5:5, 89:22, 95:15
**scheme** [5] - 5:17, 5:24, 73:18, 74:7,
   86:9
**schemers** [1] - 5:25
**school** [2] - 36:19, 54:12
**score** [2] - 3:1, 3:4
**seal** [2] - 23:16, 70:6
**Sealed** [1] - 17:3
**Sean** [2] - 1:13, 2:17
**search** [56] - 14:17, 14:19, 14:21, 15:2,
   16:17, 16:18, 17:3, 17:8, 17:9, 17:15,
   17:19, 17:22, 18:4, 18:5, 19:15, 20:15,
   20:19, 21:12, 21:16, 22:14, 22:17,
   22:19, 23:1, 23:7, 24:18, 24:21, 25:18,
   25:25, 27:3, 27:4, 28:23, 29:7, 29:14,
   29:23, 30:7, 30:9, 30:19, 31:21, 35:3,
   35:6, 36:8, 38:10, 44:20, 46:2, 46:11,
   49:15, 52:24, 52:25, 60:9, 64:7, 64:10,
   67:21, 68:11, 79:10, 86:18, 88:16
**searched** [1] - 20:18
**seated** [3] - 2:5, 13:5, 27:11
**second** [9] - 4:4, 4:10, 4:16, 4:20, 13:13,
   32:4, 44:24, 52:3, 57:8
**Second** [31] - 2:12, 4:8, 4:9, 4:19, 4:24,
   5:3, 5:7, 7:8, 8:12, 9:3, 9:5, 9:8, 9:10,
   11:2, 11:15, 13:15, 14:9, 68:22, 71:18,

72:2, 72:3, 72:4, 72:18, 73:14, 73:15,
   74:4, 76:10, 77:4, 77:24, 78:9, 78:10
**second-floor** [1] - 32:4
**section** [3] - 8:22, 72:8, 93:14
**secure** [1] - 10:6
**securing** [1] - 57:13
**see** [27] - 2:20, 2:21, 2:22, 3:3, 3:12,
   3:16, 4:15, 5:11, 22:4, 24:2, 32:1,
   32:4, 35:13, 45:17, 52:3, 53:8, 54:1,
   59:13, 64:20, 67:15, 71:25, 78:6, 90:6,
   96:25, 97:6
**seeing** [1] - 32:6
**seeking** [4] - 14:3, 14:18, 15:20, 82:19
**seeks** [1] - 14:15
**seem** [1] - 18:12
**seized** [2] - 14:16, 68:8
**seizing** [1] - 35:18
**seizure** [1] - 17:10
**select** [1] - 10:1
**self** [3] - 10:12, 10:16, 26:20
**sentence** [1] - 85:15
**sentences** [2] - 12:23
**sentencing** [3] - 12:15, 91:23, 93:24
**separately** [1] - 92:14
**September** [7] - 13:14, 17:16, 21:9,
   69:4, 80:7, 81:1, 81:11
**sequence** [1] - 18:9
**sequester** [1] - 27:19
**series** [1] - 19:12
**service** [1] - 9:25
**Service** [2] - 54:5, 54:6
**session** [1] - 2:3
**set** [12] - 15:4, 16:9, 30:12, 31:2, 35:5,
   37:12, 73:5, 74:18, 76:14, 77:11, 88:7,
   88:20
**sets** [1] - 35:18
**seven** [1] - 31:17
**Seventh** [1] - 19:13
**several** [2] - 23:1, 31:17
**shall** [2] - 72:9, 77:20
**Shanghai** [3] - 6:2, 82:25, 83:6
**Shari** [2] - 92:3, 93:17
**shields** [2] - 58:6, 58:10
**short** [2] - 39:15, 93:2
**shortly** [2] - 3:9, 45:24
**show** [2] - 60:10, 84:9
**showing** [3] - 81:5, 84:7, 84:23
**shown** [1] - 51:3
**shows** [2] - 60:11
**side** [4] - 25:7, 33:13, 37:7, 37:8
**sight** [2] - 35:13, 47:11
**signed** [4] - 17:11, 19:15, 53:25, 75:19
**significance** [1] - 70:25
**signs** [2] - 73:20, 74:9
**silence** [1] - 31:24
**similar** [3] - 49:3, 80:18, 86:6
**sit** [2] - 38:21, 52:19
**sitting** [4] - 37:23, 37:24, 38:8, 96:6
**situation** [1] - 56:21

**sketch** [1] - 35:16
**Skywall** [3] - 5:19, 6:1, 80:8
**slightly** [1] - 76:20
**slot** [1] - 87:4
**smoke** [2] - 41:23, 52:17
**someone** [9] - 21:19, 41:19, 44:13, 45:8, 52:10, 57:20, 57:23, 66:13, 83:25
**sometime** [1] - 45:23
**sometimes** [4] - 31:24, 43:13, 43:14, 43:15
**somewhat** [1] - 41:13
**soon** [1] - 89:8
**sorry** [17] - 2:25, 3:1, 4:23, 9:19, 11:10, 23:24, 28:13, 46:5, 55:16, 68:23, 71:13, 81:13, 85:1, 88:3, 90:8, 95:6, 97:1
**sort** [2] - 13:6, 21:14
**sound** [2] - 18:11, 54:11
**sounds** [3] - 48:18, 73:20, 74:9
**source** [1] - 82:21
**sources** [2] - 80:19, 86:6
**spaces** [1] - 39:1
**speaker** [1] - 18:12
**speaking** [2] - 36:7, 48:5
**special** [1] - 28:20
**Special** [15] - 1:18, 2:17, 2:18, 16:25, 19:24, 27:17, 27:21, 28:2, 28:19, 32:21, 34:14, 39:19, 42:7, 58:25, 59:2
**specific** [2] - 21:23, 77:11
**specifically** [12] - 13:12, 17:21, 19:11, 19:16, 21:17, 26:18, 30:6, 46:10, 46:15, 72:7, 76:24, 77:10
**specified** [3] - 13:11, 79:21, 82:17
**specifies** [1] - 77:20
**spell** [1] - 27:13
**split** [5] - 71:12, 71:15, 71:25, 72:10, 78:14
**spoken** [1] - 92:21
**stale** [1] - 20:19
**stand** [2] - 5:2, 10:17
**standard** [2] - 22:6, 70:20
**standing** [3] - 23:3, 24:11, 43:21
**stands** [2] - 97:13, 97:16
**start** [3] - 10:10, 33:10, 95:18
**started** [3] - 35:6, 52:9, 52:12
**starting** [3] - 77:1, 92:24, 97:10
**starts** [1] - 35:19
**state** [3] - 27:13, 28:12, 52:25
**statement** [13] - 10:11, 12:6, 53:21, 54:4, 54:22, 55:2, 55:3, 55:4, 64:20, 65:18, 66:4, 67:14, 67:18
**statements** [19] - 10:20, 14:19, 16:24, 19:23, 24:23, 25:18, 25:23, 25:25, 26:9, 62:13, 64:17, 64:19, 67:24, 86:21, 87:5, 87:22, 87:23, 88:5, 88:6
**States** [19] - 2:6, 2:17, 16:10, 19:10, 69:17, 72:3, 72:5, 72:23, 74:16, 74:19, 76:13, 80:21, 80:23, 82:18, 83:4, 83:8,
93:8, 98:6, 98:12
**STATES** [3] - 1:1, 1:3, 99:2
**states** [3] - 5:24, 6:2, 72:7
**statute** [30] - 15:22, 69:16, 70:16, 71:20, 72:11, 72:20, 72:25, 74:14, 74:16, 74:17, 74:20, 75:21, 76:12, 77:5, 77:6, 77:7, 77:13, 77:18, 77:20, 77:23, 78:3, 79:11, 80:12, 81:7, 81:8, 81:9, 81:15, 81:17, 84:21, 84:25
**stay** [2] - 28:3, 61:2
**stayed** [2] - 51:15, 53:2
**stays** [2] - 60:22, 60:23
**stenographically** [1] - 98:9
**stenographically-reported** [1] - 98:9
**stenography** [1] - 1:21
**step** [15] - 17:1, 17:2, 55:11, 56:11, 56:12, 56:14, 56:18, 56:19, 57:19, 60:19, 60:20, 61:20, 61:21, 61:25, 72:6
**steps** [1] - 57:12
**still** [3] - 21:8, 52:2, 84:19
**Stone** [3] - 90:3, 90:5, 90:17
**STONE** [26] - 90:4, 90:7, 90:9, 90:14, 90:17, 90:22, 90:24, 91:3, 91:7, 91:10, 91:13, 91:18, 91:21, 92:4, 92:10, 92:13, 92:18, 92:21, 93:9, 93:12, 94:4, 94:8, 94:18, 94:25, 95:3, 97:5
**stone** [7] - 90:4, 90:5, 90:12, 90:15, 94:22, 95:6, 97:1
**stop** [2] - 10:11, 31:3
**Stored** [3] - 17:23, 18:8, 19:8
**Street** [4] - 1:24, 7:2, 18:11, 18:22
**stress** [1] - 36:13
**stricken** [1] - 6:2
**strictly** [1] - 25:8
**strikes** [3] - 5:21, 5:22, 5:23
**sub** [1] - 88:1
**subject** [4] - 26:24, 27:3, 59:18, 65:11
**submission** [1] - 73:10
**submissions** [2] - 17:12, 25:3
**submit** [7] - 15:7, 16:18, 16:22, 19:17, 20:4, 42:16, 61:13
**submitted** [11] - 17:7, 17:9, 17:11, 17:15, 18:7, 23:13, 23:15, 64:7, 64:21, 69:23, 77:14
**submitting** [2] - 17:12, 25:3
**subscribing** [1] - 7:7
**sufficient** [6] - 17:19, 21:21, 21:23, 22:6, 84:9, 86:11
**suggestion** [1] - 21:14
**Suite** [1] - 91:8
**summarize** [2] - 13:6, 73:12
**summarized** [3] - 15:12, 15:16, 64:9
**summary** [4] - 9:2, 15:13, 17:12, 74:22
**SunTrust** [4] - 69:5, 69:7, 80:2
**Superseding** [26] - 2:12, 4:8, 4:10, 4:19, 4:24, 5:3, 5:7, 5:14, 7:9, 8:4, 8:12, 9:3, 9:5, 9:8, 9:11, 11:2, 11:15, 13:14, 13:15, 14:10, 68:22, 73:14, 73:16, 74:4, 76:8, 76:10
**supervised** [5] - 11:23, 11:25, 12:2, 12:5, 12:7
**support** [8] - 17:15, 17:19, 17:21, 19:14, 20:15, 22:19, 23:7, 26:5
**supporting** [2] - 20:14, 20:18
**suppress** [22] - 14:8, 14:15, 14:16, 14:18, 14:23, 15:25, 16:6, 16:17, 16:24, 19:23, 20:1, 20:9, 23:3, 24:14, 24:15, 25:18, 25:23, 68:8, 86:20, 87:5, 87:23, 88:4
**suppressible** [1] - 24:22
**suppression** [5] - 16:9, 24:23, 65:23, 67:9, 67:23
**Supreme** [5] - 15:5, 16:10, 65:10, 65:25, 66:1
**surrounding** [2] - 27:2, 27:4
**suspect** [1] - 61:24
**suspend** [3] - 72:20, 77:6, 77:8
**suspended** [1] - 75:21
**suspension** [5] - 72:8, 75:23, 77:14, 77:20, 84:25
**sworn** [2] - 27:9, 28:10
**SWORN** [1] - 27:10
**Sworn**................................................ [1] - 99:9
**symbols** [2] - 73:20, 74:9
**system** [3] - 18:11, 31:6, 43:7

**T**

**table** [12] - 3:8, 35:4, 35:6, 35:19, 35:24, 37:12, 38:9, 38:24, 39:1, 39:3, 47:4, 50:19
**task** [1] - 43:10
**tax** [13] - 5:8, 7:5, 7:7, 7:8, 7:11, 7:15, 8:1, 8:2, 8:7, 8:11, 8:16, 8:19, 12:4
**Tax** [1] - 8:13
**team** [6] - 29:7, 30:15, 46:11, 46:17, 48:7, 59:1
**telephone** [1] - 55:10
**temporarily** [2] - 33:15, 34:9
**ten** [6] - 12:2, 36:4, 56:7, 56:8, 61:23, 61:24
**tendered** [2] - 23:19, 54:3
**terms** [9] - 14:3, 19:25, 21:11, 62:12, 66:4, 67:17, 71:21, 71:24, 73:9
**testified** [2] - 61:23, 66:20
**testify** [4] - 26:21, 27:2, 64:1, 67:10
**testifying** [1] - 26:22
**testimony** [14] - 25:8, 26:11, 52:18, 61:3, 63:8, 64:8, 65:1, 65:6, 65:20, 67:4, 69:21, 69:25
**Texas** [1] - 73:22
**Thanksgiving** [3] - 87:9, 87:10, 87:13
**themselves** [4] - 2:14, 16:19, 17:16, 17:22
**thereof** [2] - 67:21, 79:10
**thinking** [3] - 43:17, 44:16, 46:15
**Third** [1] - 19:13

**threatened** [1] - 41:5
**threats** [1] - 33:19
**three** [13] - 11:23, 11:25, 12:2, 12:5, 12:6, 12:7, 22:9, 34:1, 39:2, 72:23, 75:23, 81:10, 84:12
**throughout** [2] - 39:22, 90:13
**thrust** [2] - 5:8, 14:22
**timely** [1] - 69:13
**Timonium** [2] - 29:17, 29:21
**titling** [1] - 13:11
**today** [6] - 11:16, 63:8, 63:17, 63:24, 91:13, 92:22
**together** [1] - 66:8
**token** [1] - 66:24
**toll** [2] - 81:9, 81:15
**tolled** [1] - 76:12
**tolling** [12] - 15:21, 72:11, 72:13, 72:16, 72:24, 77:1, 77:19, 81:7, 85:2, 86:11, 86:12, 86:19
**tomorrow** [1] - 43:13
**took** [10] - 11:12, 36:7, 50:22, 52:10, 53:20, 54:21, 55:3, 55:4, 55:11, 62:21
**top** [2] - 6:10, 6:12
**Top** [1] - 5:18
**total** [1] - 8:18
**totally** [2] - 7:4, 65:14
**town** [1] - 87:11
**transaction** [1] - 80:5
**transactions** [1] - 79:17
**transcript** [3] - 1:21, 98:9, 98:10
**transfer** [8] - 6:1, 69:4, 79:20, 80:8, 80:21, 82:17, 83:25
**transferred** [4] - 75:14, 79:24, 83:16, 83:17
**transferring** [2] - 83:2, 83:18
**transfers** [5] - 69:6, 81:23, 82:20, 83:4, 83:6
**transmitted** [4] - 73:19, 74:8
**Treaty** [7] - 15:23, 69:15, 73:1, 75:5, 78:2, 82:10, 96:23
**treaty** [1] - 96:23
**trial** [10] - 2:9, 3:11, 13:7, 27:24, 63:3, 67:25, 88:24, 91:22, 95:18, 96:4
**tricks** [3] - 26:2, 59:10, 59:11
**trigger** [1] - 62:14
**triggering** [1] - 86:11
**Triple** [1] - 80:9
**true** [1] - 98:8
**truly** [1] - 65:17
**try** [4] - 19:25, 33:13, 50:7, 57:16
**trying** [6] - 7:18, 18:2, 18:24, 58:19, 61:25, 77:17
**Ts** [2] - 20:1, 20:2
**Tuesday** [1] - 96:25
**turn** [6] - 18:14, 32:23, 34:18, 37:6, 37:13
**turned** [1] - 18:21
**turning** [1] - 37:17
**twenty** [1] - 55:23

**twenty-one** [1] - 55:23
**two** [17] - 13:9, 17:14, 17:18, 27:22, 51:5, 53:22, 76:23, 82:3, 82:6, 82:7, 85:15, 87:4, 88:7, 88:13, 89:25, 90:18, 95:21
**two-hour** [2] - 87:4, 88:7
**two-sentence** [1] - 85:15
**type** [3] - 35:19, 51:13

## U

**U.S** [11] - 1:13, 1:13, 1:23, 15:5, 16:11, 66:1, 79:20, 82:7, 89:11, 92:2
**U.S.C** [4] - 6:22, 18:8, 84:24, 98:8
**ultimately** [3] - 12:15, 75:9, 76:7
**unaware** [2] - 17:20, 48:1
**under** [36] - 5:9, 10:5, 10:11, 15:10, 22:5, 23:16, 26:18, 26:21, 38:11, 39:11, 40:3, 40:6, 54:5, 65:9, 65:12, 67:6, 68:9, 69:14, 69:17, 70:5, 72:8, 74:15, 74:18, 75:18, 75:22, 77:11, 86:19, 92:13, 92:17, 92:18, 93:10, 93:12, 93:14, 95:5
**undercover** [1] - 41:19
**understandable** [1] - 66:23
**undisputed** [3] - 75:2, 75:3, 75:24
**unfortunately** [2] - 63:13, 85:9
**uniformed** [2] - 43:14, 43:18
**United** [19] - 2:6, 2:17, 16:10, 19:10, 69:17, 72:2, 72:5, 72:23, 74:16, 74:19, 76:13, 80:21, 80:23, 82:18, 83:4, 83:7, 93:8, 98:6, 98:12
**UNITED** [3] - 1:1, 1:3, 99:2
**unlawful** [3] - 79:21, 82:17, 83:24
**unless** [3] - 16:22, 19:18, 82:16
**unreliable** [1] - 20:16
**up** [30] - 18:14, 18:21, 18:22, 18:24, 22:4, 22:5, 27:18, 30:12, 31:17, 32:1, 32:12, 35:5, 35:18, 36:21, 37:12, 40:12, 44:24, 48:15, 50:8, 52:2, 53:12, 53:15, 57:8, 61:8, 63:3, 67:22, 82:15, 82:16, 94:21
**upheld** [1] - 71:19
**upper** [2] - 85:12, 86:1
**Upper** [3] - 91:7, 91:8, 94:21
**upstairs** [1] - 38:6

## V

**validity** [5] - 64:6, 64:10, 67:21, 68:11, 79:10
**vehicle** [1] - 43:14
**version** [1] - 6:6
**versus** [10] - 2:6, 10:11, 15:4, 16:10, 16:11, 65:10, 65:25, 68:10, 72:3, 72:23
**victim** [7] - 90:7, 91:15, 91:16, 92:2, 92:14, 92:15, 93:13

**victim's** [1] - 91:18
**victims** [7] - 5:25, 80:18, 83:1, 86:6, 90:1, 92:6, 93:15
**Victims** [4] - 92:17, 92:18, 93:7, 95:5
**Victor** [2] - 90:3, 90:17
**view** [20] - 11:6, 15:15, 25:9, 25:12, 64:11, 64:13, 68:14, 68:17, 71:7, 74:23, 74:25, 75:25, 76:2, 86:22, 86:25, 89:16, 89:20, 95:9, 95:13, 96:19
**vinegar** [1] - 3:20
**violates** [1] - 18:6
**violation** [2] - 15:4, 69:3
**Virginia** [2] - 18:6, 19:16
**Vitti** [1] - 97:9
**voice** [1] - 45:7
**VOL** [1] - 99:3
**Volume** [1] - 1:5
**voluntarily** [1] - 26:8
**voluntariness** [3] - 62:13, 66:4, 67:18
**voluntary** [1] - 65:18

## W

**wait** [3] - 4:15, 68:3, 89:24
**waited** [3] - 55:12, 55:14, 55:18
**waiting** [2] - 54:5, 57:11
**waive** [1] - 9:4
**waiver** [2] - 11:1, 66:3
**waives** [1] - 7:16
**walk** [1] - 66:25
**walked** [1] - 38:8
**walking** [1] - 35:12
**walls** [1] - 35:7
**Walsh** [9] - 30:17, 34:3, 34:7, 34:15, 38:5, 57:3, 57:20, 62:7, 65:5
**wants** [4] - 19:18, 61:6, 62:1, 67:16
**warnings** [3] - 26:7, 62:15, 65:9
**warrant** [42] - 14:17, 14:19, 15:2, 17:3, 17:8, 17:10, 17:20, 19:8, 19:14, 20:15, 20:19, 21:12, 21:16, 22:19, 23:8, 25:19, 25:25, 29:23, 29:25, 30:2, 30:7, 31:21, 36:8, 38:10, 38:11, 42:25, 43:13, 44:20, 46:2, 46:11, 46:14, 47:24, 49:15, 51:18, 52:25, 60:9, 64:7, 67:21, 79:10, 86:18, 88:16
**warrants** [10] - 16:17, 16:18, 17:15, 17:22, 22:14, 22:17, 23:1, 28:23, 29:14, 68:11
**warrants'** [1] - 18:4
**Warwick** [2] - 29:17, 29:20
**wear** [2] - 58:5, 58:6
**Web** [1] - 7:2
**WebStreet** [1] - 6:21
**Wednesday** [4] - 87:8, 87:9, 88:24
**week** [1] - 86:17
**weeks** [1] - 95:21
**WEH** [1] - 6:1
**welcome** [1] - 3:13

**West** [1] - 1:24
**whereas** [2] - 45:6, 72:22
**white** [5] - 55:24, 56:1, 56:5, 61:22, 65:2
**white-collar** [4] - 56:1, 56:5, 61:22, 65:2
**whole** [1] - 21:10
**WICKS** [103] - 3:6, 3:15, 4:2, 6:5, 7:19,
  9:6, 9:23, 10:9, 13:3, 13:21, 13:25,
  14:5, 14:12, 14:24, 15:7, 15:10, 15:14,
  16:4, 20:6, 20:23, 21:5, 21:7, 22:23,
  23:5, 23:15, 23:22, 23:24, 24:5, 24:9,
  24:11, 24:19, 24:21, 24:25, 25:5,
  25:14, 28:6, 42:20, 42:22, 48:23,
  48:24, 49:11, 49:12, 50:17, 50:18,
  53:5, 53:14, 54:9, 54:10, 54:15, 54:17,
  60:18, 60:25, 63:10, 63:18, 63:21,
  63:25, 64:15, 68:19, 69:23, 70:5, 70:8,
  70:10, 70:12, 70:22, 71:2, 71:9, 71:11,
  71:14, 73:8, 74:2, 75:1, 76:4, 76:18,
  76:20, 78:13, 78:16, 80:14, 84:15,
  84:17, 84:24, 85:4, 85:7, 85:11, 85:19,
  85:22, 85:25, 86:3, 86:12, 87:2, 87:16,
  87:25, 89:21, 94:15, 94:20, 95:15,
  95:18, 95:21, 95:24, 96:3, 96:8, 96:12,
  96:18, 96:20
**Wicks** [40] - 1:15, 3:7, 5:14, 6:4, 7:17,
  9:5, 9:21, 10:1, 10:8, 13:2, 13:20,
  14:11, 15:13, 16:3, 20:4, 27:1, 28:5,
  42:19, 54:8, 60:17, 60:23, 63:7, 68:18,
  69:9, 69:18, 70:4, 71:8, 73:6, 74:25,
  76:3, 76:14, 77:17, 79:14, 80:13,
  81:18, 83:9, 87:1, 87:24, 94:14, 95:14
**wicks** [2] - 3:12, 42:24
**WICKS........................** [1] - 99:10
**willful** [1] - 7:6
**willing** [2] - 66:7, 96:10
**window** [3] - 32:2, 52:3
**Winter** [3] - 78:24, 79:1, 79:2
**Wire** [2] - 6:10, 6:12
**wire** [11] - 5:25, 8:20, 11:21, 13:13,
  13:18, 68:24, 69:1, 74:14, 74:16,
  79:22, 83:2
**wise** [2] - 35:13, 52:9
**withdrawing** [1] - 24:8
**withdrawn** [1] - 68:9
**WITNESS** [30] - 27:10, 27:14, 28:14,
  29:20, 54:23, 55:1, 55:6, 55:12, 55:15,
  55:17, 55:20, 55:23, 56:2, 56:7, 56:9,
  56:14, 56:23, 57:1, 57:4, 57:7, 57:16,
  57:21, 57:24, 58:3, 58:5, 58:8, 58:12,
  58:17, 59:24, 60:4
**Witness** [2] - 60:21, 99:12
**witness** [4] - 10:17, 28:10, 42:17, 92:3
**WITNESSES** [1] - 99:7
**witnesses** [3] - 25:8, 61:12, 88:17
**woken** [1] - 40:12
**woman** [2] - 46:15, 55:10
**word** [4] - 5:21, 5:22, 5:23, 6:8
**words** [1] - 5:18
**wore** [2] - 40:25, 41:4
**Worldwide** [2] - 83:3, 83:4

**write** [1] - 55:1
**writings** [2] - 73:20, 74:9
**written** [1] - 22:2
**wrote** [1] - 20:24

## Y

**Yahoo.com** [1] - 73:22
**year** [5] - 5:1, 8:11, 8:16, 63:15, 91:16
**years** [20] - 3:10, 11:23, 11:25, 12:2,
  12:4, 12:5, 12:6, 12:7, 28:22, 40:18,
  40:19, 55:23, 56:8, 61:23, 61:24,
  72:23, 74:18, 75:23
**years'** [1] - 11:22
**yesterday** [1] - 79:2
**yourself** [6] - 39:19, 44:12, 46:3, 46:7,
  48:8, 90:15

## Z

**zeroed** [1] - 84:12

## §

**§** [19] - 5:9, 6:22, 8:22, 18:8, 69:17, 72:5,
  72:7, 72:8, 72:19, 74:16, 74:19, 76:13,
  76:25, 77:11, 84:24, 92:19, 93:8,
  93:12, 98:8