```
1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
2                           NORTHERN DIVISION

3    _____ )
     UNITED STATES OF AMERICA        )
4                                    )
          v.                         ) Criminal Docket No. RDB-17-0655
5                                    )
     LAUREN MONTILLO,                )
6              Defendant             )
     _____ )
7                                            Baltimore, Maryland
                                             November 29, 2018
8                                            2:09 PM to 6:14 PM

9               THE ABOVE-ENTITLED MATTER CAME ON FOR
                           PRETRIAL HEARING
10          BEFORE THE HONORABLE RICHARD D. BENNETT

11                    A P P E A R A N C E S

12   On behalf of the Government:

13        Joyce K. McDonald, Assistant U.S. Attorney
          Sean R. Delaney, Assistant U.S. Attorney
14
     On behalf of the Defendant:
15
          Jenifer Wicks, Esquire
16
     Also present:
17
          FBI Special Agent Brad Lynch
18        David Jones, Investigator

19

20

21        Proceedings recorded by mechanical stenography,
     transcript produced by computer.
22   _____

23              MARTIN J. GIORDANO, RMR, CRR, FOCR
                 U.S. Courthouse, Fourth Floor
24                  101 West Lombard Street
                   Baltimore, Maryland 21201
25                       410-962-4504
```

<u>**PROCEEDINGS OF NOVEMBER 29, 2018**</u>

**THE CLERK:**  All rise.  This Honorable Court now resumes in session, The Honorable Richard D. Bennett presiding.

(Whereupon, Ms. Finegar is not present.)

**THE COURT:**  Good afternoon, everyone.

This is calling the case of *United States versus Lauren Montillo*, Criminal Number RDB-17-0655.

The jury trial in this matter is scheduled for next Monday, December the 3rd, and I had a pretrial conference on this case with counsel this week, earlier this week, on Wednesday, November the 28th.  Actually, yesterday.  And we are here for a continued hearing.

If counsel would just identify themselves for the record, please.

**MS. McDONALD:**  Good afternoon, Your Honor.

Joyce McDonald and Sean Delaney on behalf of United States, and with us is Special Agent Brad Lynch and Special Agent Dominic Palumbo.

**THE COURT:**  Yes.  Ms. McDonald, nice to see you, and Mr. Delaney and Agents Lynch and Palumbo, nice to see you all as well.

And on behalf of the Defendant?

**MS. WICKS:**  Good afternoon, Your Honor.

Jenifer Wicks on behalf of Ms. Montillo, and, for the record, my investigator is also in the courtroom.

1          **THE COURT:**  Yes.  Your investigator is welcome to

2     come up here and sit at the trial table.

3          **MS. WICKS:**  If that's fine with the Court.  He's not

4     dressed for court.

5          **THE COURT:**  That's okay.  It's fine.  He can come on

6     up.

7          **MS. WICKS:**  Okay.  Thank you, Your Honor.

8          **THE COURT:**  You're welcome to come up here and sit up

9     here, sir.  That's fine.  Come over here if you will.

10    Obviously you'll have to be dressed for court when you come

11    Monday if you come Monday.

12         **MR. JONES:**  Absolutely, Your Honor.

13         **MS. WICKS:**  And his name is David Jones, Your Honor.

14         **THE COURT:**  Mr. Jones, nice to see you.

15         And good afternoon to you, Ms. Montillo.

16         **MS. WICKS:**  Ms. Finegar had a conflict with this

17    time, so she is at a meeting and she'll come when she's done.

18         **THE COURT:**  That's fine.  She was at the pretrial

19    conference yesterday.

20         Just where we are on this is that I conducted a

21    hearing on November the 7th with respect to the Defendant's

22    motion to dismiss counts of the Indictment, ECF Number 33, and

23    also a motion to suppress evidence, Paper Number 36, and,

24    actually, I held a hearing on November the 8th and conducted a

25    hearing on these matters, and, for the reasons that I set forth

1    on the record and further explained in an opinion that was

2    filed, I believe, on November the 19th, I denied the motion to

3    dismiss counts, and I denied the motion to dismiss with respect

4    to evidence seized as a result of the execution of search

5    warrants.

6         That portion of the motion to suppress evidence,

7    which sought to suppress statements made during the execution

8    of a search warrant on the Defendant's home on December 22,

9    2016, was held *sub curiae* pending a continuation of the

10   November 7th motions hearing.

11        That hearing resumed on November the 26th, which was

12   Monday of this week, and, after conducting a hearing this

13   Monday of this week, November 26th, and reviewing documents and

14   hearing testimony of witnesses and arguments of counsel, for

15   the reasons I set forth on the record, it was ordered this past

16   Monday, November 26th, that the motion was denied in its

17   entirety with respect to any motion to suppress any statements

18   that were made.

19        Okay.  Let me just go over -- Mr. Vitti will come

20   back in in a moment here, my law clerk, with respect to the

21   *voir dire* questions, and I've reviewed the Government proposal,

22   Paper Number 75, as well as the Defense proposed *voir dire*,

23   Number 76, and I think I've incorporated the spirit of most of

24   those, but let me just go over these, and I'll read through.

25   And what I suggest we do is, since I have you here and I've

1  blocked off some of this time, I think we'll use our time to

2  good advantage with respect to the *voir dire* questions.

3          The first page will be:  This is a criminal case

4  brought by the Government against the Defendant,

5  Lauren Montillo, who has been charged with conspiracy to commit

6  wire fraud, wire fraud, conspiracy to commit money laundering,

7  and money laundering, tax evasion, and filing a false tax

8  return.  The Defendant, Lauren M. Montillo, formerly

9  Lauren Feldman, Owings Mills, Maryland, has been indicted by a

10 federal Grand Jury for conspiring to defraud victims of money

11 through interstate wire transmissions, interstate individual

12 wire transmissions, conspiring to launder the proceeds of wire

13 fraud, individual financial transactions over $10,000 in wire

14 fraud proceeds, income tax evasion, and subscribing to false

15 income tax returns.

16         The Defendant -- I'll probably say "Ms. Montillo."

17 Ms. Montillo denies these allegations and has entered pleas of

18 not guilty to all the charges against her.

19         Is there any objection of the wording of that

20 language from the point of view of the Government,

21 Ms. McDonald?

22             **MS. McDONALD:**  No, Your Honor.

23             **THE COURT:**  From the Defense?

24             **MS. WICKS:**  No, Your Honor.  I would note that I

25 believe my client's legal name, that she does not have a middle

```
 1    name.
 2              THE COURT:  Okay.  So --
 3              MS. WICKS:  So --
 4              THE COURT:  So it's just Lauren Montillo?
 5              MS. WICKS:  Yes, Your Honor.
 6              THE COURT:  Okay.  All right.  I'll take that out.
 7    Thank you.
 8              All right.  Then here are the questions I'm going to
 9    ask, and I'm moving them around a little bit, and, Anthony, if
10    you'll stay with me.
11              The first question, basically I'm going to proceed
12    with:  I will now ask you a series of questions as part of the
13    process of selecting a fair and impartial jury panel.  If you
14    answer any of these questions as "yes," please stand when the
15    question has been asked.
16              I've already gone over with counsel at the pretrial
17    conference yesterday that the jurors' -- the roll will have
18    been taken.  You will have been able to identify all the jurors
19    who will be in the chronological order as reflected by the jury
20    list.
21              First, do you have any knowledge of this case or the
22    events that gave rise to it from the media, from discussions
23    with others, or from any other source whatsoever, and
24    et cetera, et cetera, the normal boilerplate question.
25              Do you know or have you had any dealings with the
```

1    Defendant, Lauren Montillo, formerly Lauren Feldman?  I'm just

2    doing that as a precaution.  Is there any objection to my

3    referring to her earlier name, Ms. Wicks?

4         **MS. WICKS:**  No, Your Honor.

5         **THE COURT:**  Okay.  Or any of her friends, associates,

6    or family members?

7         Ms. Montillo is 47 years old.  She has been involved

8    with her father, Haskell Feldman, in mortgage refinancing in

9    Baltimore City and Baltimore County, and she was married to

10   Marco Montillo, and I'll just define who she is.

11        And then the next question will be:  Do you know or

12   have you had any dealings with any of the following persons or

13   members of their family, and I'll go over myself; Assistant

14   U.S. Attorneys Joyce McDonald and Sean Delaney; Special

15   Agent Bradford Lynch, who is the investigating agent for the

16   Bureau of Investigation; Special Agent Dominic Palumbo; counsel

17   for the Defendant, Jenifer Wicks; and your associate is

18   Natalie?

19        **MS. WICKS:**  Finegar.

20        **THE COURT:**  Finegar.

21        **MS. WICKS:**  F-I-N-E-G-A-R.

22        **THE COURT:**  Natalie Finegar.  And I'll ask if they

23   know the U.S. Attorney, Rob Hur, and then I'll list all the

24   people who may be witnesses in the case.

25        **MS. WICKS:**  And, Your Honor, actually, if we could

```
 1        just identify Mr. Jones as well.  I think it would be
 2        appropriate.
 3                  THE COURT:  That's fine.  Counsel for the Defendant,
 4        Jenifer Wicks, and Natalie Finegar, and the Defendant's
 5        investigator --
 6                  MS. WICKS:  The Defense's investigator, David Jones.
 7                  THE COURT:  The Defense -- investigator for the
 8        Defense, David Jones.  Okay.
 9                  And then I'll list others who may be witnesses in the
10        case or be listed as -- be referred to.
11                  And then I'll have:  Have you ever served -- have you
12        served on a jury panel by any party that was represented by any
13        of the lawyers in this case?
14                  And then, five, do you have any friends,
15        acquaintances, or business associates on this jury panel?
16                  Six, have you or any of your family members or close
17        friends ever been employed by the United States Department of
18        Justice, et cetera, et cetera, Marshal Service, public
19        defender, that kind of thing.
20                  Then I'll have:  Have you or a member of your family
21        ever been employed by the Federal Public Defender or any
22        organization or firm involved in criminal defense work?  A
23        little bit different question.
24                  I'll indicate, as I've said, this is -- the next
25        question, Number 8, Anthony, would be -- are you with me on
```

1    these.

2              **LAW CLERK:**  Uh-huh.

3              **THE COURT:**  As I said, this is a federal criminal

4    case for charges of conspiracy to commit wire fraud, wire

5    fraud, money laundering, and conspiracy to commit money

6    laundering, et cetera, et cetera.  This case was investigated

7    by the Federal Bureau of Investigation and the Criminal

8    Investigation Division of the Internal Revenue Service.  And

9    then I'll ask questions about whether or not you've had any

10   dealings with either one of those agencies, and if you have any

11   negative feelings.

12             And then I'll also ask, during the trial, the United

13   States will call witnesses who are employed by the FBI and IRS

14   and, again, ask if you have any negative feelings about those.

15   As a matter of fact, I think -- no.  I'll ask that question

16   generally.

17             And then Number 10 would be questions about family

18   members that take positions with respect to tax laws.

19             Then, Anthony, what was Number 14 will be Number 11,

20   about anyone who has had legal training, either a member of

21   their family or what have you, Number 11.

22             And then, Number 12:  Do any of you have training or

23   work experience in any of the following areas:  Accounting,

24   bookkeeping, auditing, bank finance, management, or whatever?

25   They'll just indicate one way or the other.  I'll just go

1      through that list, and, as they stand, you'll be able to tell

2      what kind of background they have.

3             And then I'll ask a question:  Have any of you ever

4      worked for a retail or commercial bank or a government

5      contractor or information technology business?

6             Then, Anthony, Number 14 will be what we originally

7      had as Number 3, and that question will be:  Have you or

8      someone close to you ever lost money on an investment where you

9      thought the loss was caused by someone else's wrongdoing,

10     fraud, or dishonesty?  I think that was a request that you had,

11     Ms. Wicks, that adds that in.

12             And then -- one second here.

13          (Pause.)

14          **THE COURT:**  Then, also, on Number 15, Anthony, this

15     will be what was Number 31 in this special ones in the back,

16     but will be:  There may be evidence presented that Ms. Montillo

17     led a lavish life-style.  Do you have any negative feelings or

18     resentments of people who lead a lavish life-style that might

19     interfere with your ability to be fair and impartial to

20     Ms. Montillo?  That will be Number 15.

21             Then Number -- yes.  That would be -- yes --

22     Number -- I'm sorry.  That will be -- hold on one second.

23     Anthony, that will be Number 16.  Wait one second here.

24          (Pause.)

25          **THE COURT:**  Yes.  The next question would be what

1    was, Anthony, Number 5:  Do you or your spouse own or have you

2    ever -- your spouse ever owned any of the following types of

3    investments:  money market accounts, U.S. Government bonds,

4    mutual funds, real estate other than your home, stock in a

5    publicly-owned company, stock in a private-owned company, and

6    stock options?  Again, I'm just going to go down that list.

7    I'll ask it *seriatim* and wait for a response as to each area,

8    so you'll at least be able to identify who may have invested in

9    real estate and who may not have.

10        Then the next question would be:  Would you tend to

11   give greater or lesser weight to the testimony of that -- and

12   this is Number 17 before, Anthony.  Would you tend to give

13   greater weight or lesser weight to the testimony of a law

14   enforcement officer simply because he or she is a law

15   enforcement officer?

16        Then:  Do you have any concerns, feelings, or

17   reservations about the Federal Government, et cetera, that

18   would cause you to have difficulty rendering a fair and

19   impartial verdict?

20        Then I'll ask a question:  Do you have any fixed

21   opinions about criminal defense attorneys that would prevent

22   you from rendering a fair and impartial verdict?

23        And then the last question before the specific

24   questions will be:  At the close of the case, I will instruct

25   you on the law that you must apply to the facts of this case,

1    and then I ask if there is anyone who is unwilling to do that.

2              So, after that, those questions, which I think will

3    number some 20 or 21, we will then have a series of what will

4    come to -- what will come to probably about 13 additional

5    questions, and they will be as follows.

6              And what I say there, counsel, as I mentioned before,

7    from the -- I think Government counsel have been before me

8    before; Defense counsel has not.

9              At the end of the next series of questions, I'm going

10   to ask each person who answers "yes" to one or more of the

11   following questions to stand and come to the bench.  Please do

12   not rise until I tell you to.  Please don't rise until all the

13   questions have been asked essentially, and I will take your

14   answers at the bench.

15             And those questions are as follows, and, again, I

16   think there will be about 12 or 13 of them:  Have you or any of

17   your family members or close friends ever been the victim of a

18   crime, including the crime of fraud?

19             Have you or any member of your family ever been

20   accused of or convicted of criminal conduct or ever been the

21   subject of a criminal investigation?

22             Have you or any of your family members or close

23   friends ever been a witness for the prosecution or the defense

24   in a criminal investigation, Grand Jury proceeding, or criminal

25   case?

1       Have you ever served on a Grand Jury in either state

2   or federal court?

3       Have you ever served as a juror in a criminal case --

4   I usually do criminal or civil -- in a criminal or civil case

5   in either state or federal court?  And I make sure they

6   understand the distinction up at the bench between the burden

7   of proof in a criminal case as opposed to a civil case.

8       Then I ask:  Are you presently involved in a case

9   that's pending in this court or any federal or state court or

10  involved in any financial lawsuits?

11      Have you or any of your family members ever been

12  involved in a legal dispute with the Government or any agency

13  of the Government, including the Internal Revenue Service?

14      And then I ask -- another question will be:  Have you

15  or any of your -- have you ever had any of your tax returns

16  reviewed, questioned, or challenged in any way by the Internal

17  Revenue Service or a similar state agency, like the Maryland

18  State Comptroller's Office?

19      Then the next question -- I'm not going to ask an

20  audits question, because that's just redundant, but then I will

21  ask:  Have you ever been involved with an audit of financial

22  records for a company you've worked for?

23      That was the old Question Number 30, Anthony.

24      And then the next question would be:  Do you have any

25  physical ailments, such as problems with eyesight, et cetera,

that would make it difficult for you to act as a juror in this case?

Then:  Do you have any religious or moral scruples that would prevent you from rendering -- judging the conduct of another person?

And then I will ask whether there are any reservations concerning the administration of justice.

This actually turns out to be about 15-some questions.

Do you have any problem with the legal proposition that the Government must prove a defendant guilty beyond a reasonable doubt?

And do you have any problem with the legal proposition that a defendant must be presumed innocent unless and until the prosecution can prove he or she is guilty?

Under the law, I'll also ask -- I'm not going to ask 38, Anthony, or 40, but 39:  Under the law, every defendant has a constitutional right to not testify in his own defense.  If a defendant does not testify, the jury may not consider that fact in any way.  Would any of you have difficulty abiding by that proposition?

And then I finally ask:  Do you, based on any of the questions that I've asked, or for any other reason whatsoever, feel that you cannot render a fair and impartial verdict in this case?

And then I will tell them the trial is expected to last for perhaps eight days and that we will sit all five days of the first week, and a few days of the next week.

And then I will ask if they have any other issues to raise.

Now, I think I've covered the general thrust of the requests by the Government; is that correct, Ms. McDonald?

**MS. McDONALD:**  Yes, Your Honor, it is.

**THE COURT:**  And I think I've covered essentially those -- some of them are a little bit repetitive, Ms. Wicks, but I think I've covered those that you requested, including I'll ask specifically certain categories of work background, and I'll try to make sure -- I won't just ask all of them as a group.  I'll go one by one so they can stand.

Are there any other questions you think that I've missed?

**MS. WICKS:**  No, Your Honor.  Thank you.

**THE COURT:**  Okay.  All right.  So, Anthony, did you get all that?

**LAW CLERK:**  Yes.

**THE COURT:**  Okay.  And then do we have a draft of the preliminary statement?

**LAW CLERK:**  I can get one.

**THE COURT:**  All right.  Just print that out and let me just see it, quickly.  Also, while we're doing this, I'll go

1    over the preliminary statement with you.  What we do is, once

2    we pick the jury, I give them a preliminary statement just to

3    sort of summarize what the case is about, and what I try to

4    do -- I've found it helpful when I've talked to jurors after

5    criminal cases.  I just try to very briefly, probably as brief

6    as the instructions should be at the end of a case, but I do it

7    very briefly in the beginning just to explain to them what wire

8    fraud is, what money laundering is, what the elements are, so

9    they have some understanding of what the evidence -- understand

10   the evidence that's being presented to them.  I'll read that to

11   you in one second here.

12       (Pause.)

13           **THE COURT:**  Thanks, Anthony.

14           Let me just take a quick look at these.  We have to

15   do the *voir dire* again anyway, so -- the *voir dire* I just went

16   over with you, we have to reform some of it.  We'll see that

17   it's e-mailed to you at the end of the day so you'll have it

18   for your file.

19           In terms of the preliminary instructions, I just

20   essentially will say to the jury, before they hear opening

21   statements:  Members of the jury, we now begin the trial of the

22   case about which you heard some details during the process of

23   jury selection.  At the close of the evidence in this case, I

24   will thoroughly explain the elements of the charges contained

25   in the Indictment.

1        Before the trial begins, however, there are certain

2    instructions you should have in order to better understand the

3    case which is to be presented to you.

4        And then I specifically, counsel, tell them:  If

5    anything I say at the close of the case differs from anything I

6    say now, what I say at the close of the case controls.

7        So I'll give them obviously much more detailed jury

8    instructions at the end, but then I will just say essentially,

9    as I told you earlier, this is a criminal case brought by the

10   Government against the Defendant, Lauren Montillo.  The

11   Government has charged the Defendant by an indictment.  An

12   indictment is not evidence.  It merely describes the charges

13   made against the Defendant.

14       The Indictment in this case charges the Defendant

15   with one count of conspiracy to commit wire fraud, two counts

16   of wire fraud, one count of conspiracy to commit money

17   laundering, and then eight counts of money laundering, and

18   three counts of filing false tax returns, and three counts of

19   tax evasion.

20       I will instruct you in detail on the elements of each

21   charge at the conclusion of this case.  As the trial begins, I

22   advise you that, to prove wire fraud, the Government must

23   prove, one, there was a scheme or artifice to defraud or obtain

24   money or property by materially false and fraudulent pretenses,

25   representations, or promisees as alleged in the Second

1    Superseding Indictment; two, the Defendant knowingly and

2    willfully participated in the scheme or artifice to defraud

3    with knowledge of its fraudulent nature and with the specific

4    intent to defraud; and, three, in execution of that scheme, she

5    used or caused the use of private or commercial interstate

6    carrier or interstate wires as specified in the Second

7    Superseding Indictment.

8            With respect to money laundering, the Government must

9    prove that the Defendant knowingly engaged in a monetary

10   transaction in or affecting interstate commerce in the United

11   States that involved over $10,000 of criminally-derived

12   property from specified unlawful activity.

13           And then the rest of it is just boilerplate about

14   circumstantial evidence, not discussing the case with anyone,

15   not going on social media, et cetera.

16           Just generally -- you'll have a chance to read these

17   verbatim, but any objection from the point of view of the

18   Government on this, Ms. McDonald?

19           **MS. McDONALD:**  No objection, Your Honor, but can I

20   just ask, because this case involves a lot of websites and

21   e-mails, if you could just emphasize not doing your own

22   research.

23           **THE COURT:**  I'll read that to you right now.

24           **MS. McDONALD:**  Okay.

25           **THE COURT:**  I have an admonition section against

1    discussing the case, and then I say -- where is it here?

2         The section marked:  Evidence consists solely what

3    occurs in the courtroom, you must not be influenced by anything

4    you may have seen or heard outside the courtroom regarding this

5    case.  You are in the best position of anyone to listen to what

6    the witnesses testified to.  You are instructed -- I

7    specifically tell them:  You are instructed not to read, listen

8    to, or watch news media reports concerning this case.  You are

9    also not to use Facebook, Twitter, MySpace, LinkedIn,

10   Instagram, or any other social networking site to share or

11   discuss any information about this case, or I can say to

12   research about this case.

13        **MS. McDONALD:**  Yes.  That's what I would ask.

14        **THE COURT:**  That's okay.  All right.

15        **MS. McDONALD:**  Not to use any search engine to do any

16   research.

17        **THE COURT:**  Or I will say:  Or any other social

18   networking site to share or discuss any information about the

19   case.  Furthermore, you absolutely are not to review any

20   websites or any social media to conduct your own research on

21   this case.

22        Does that suffice from your point of view?

23        **MS. McDONALD:**  Yes, sir.  Thank you.

24        **THE COURT:**  Okay.  Anything else from your point of

25   view of the Government?

1          **MS. McDONALD:**  No, sir.

2          **THE COURT:**  Ms. Wicks, anything further from your

3    point of view?

4          **MS. WICKS:**  No.  Thank you.

5          **THE COURT:**  Okay.  All right.  Anthony, we'll do that

6    with those changes, and Mr. Vitti will get the *voir dire* and

7    preliminary instructions e-mailed to you.  We'll scan them and

8    get them over to you certainly within the next hour or so

9    before the end of the day.

10          Where we are now is that I will see you here in court

11    at 9:30 to see if we have any other loose ends or matters.

12          And then, Ms. Downs -- are you with me next week?

13          **THE CLERK:**  Yes, Judge.

14          **THE COURT:**  Okay.  All right.  Ms. Downs will then

15    get the jury.  She'll bring the jury and line them up in the

16    hall, and we'll bring the jury in so that we can -- and then

17    she'll call me back up on the bench when the jury is here, and

18    she'll put them in by number according to -- I don't need all

19    that material in the front, as you recall.  I just want

20    information on the jurors.  I don't need all those blank pages

21    in the front.

22          **THE CLERK:**  Yes.

23          **THE COURT:**  And she'll line them up.  The very first

24    juror, top of the list, will be right there, first row to the

25    left, and will go right across, and it will be like three rows,

```
1    and that's how we will do it, and she'll take roll, and then

2    swear the jury.

3              Is there anything else to be addressed from the point

4    of view of the Government, Ms. McDonald?

5              MS. McDONALD:  No, Your Honor.

6              THE COURT:  Okay.  Is there anything else to be

7    addressed from the point of view of the Defense, Ms. Wicks?

8              MS. WICKS:  Can I consult with Government counsel?

9              THE COURT:  Sure.  Sure.

10         (Counsel conferring.)

11             THE COURT:  So, leaving that where it is, we'll stand

12   in recess until 3:30, Ms. Downs.  We've pushed the sentencing

13   off until 3:30.

14             THE CLERK:  No problem.

15             THE COURT:  And then, at 3:30, we'll have a

16   sentencing in another case, and we'll wait to hear where we are

17   on this case.

18             Anything else, Ms. McDonald, from your point of view?

19             MS. McDONALD:  Nothing from the Government, Your

20   Honor.  Thank you.

21             THE COURT:  Anything else, Ms. Wicks, from your point

22   of view?

23             MS. WICKS:  No.  Thank you, Your Honor.

24             THE COURT:  All right.  With that, this Court stands

25   in recess until 3:30.
```

1        **THE CLERK:**  All rise.  This Honorable Court is now in

2    recess.

3        (Proceedings adjourned.)

CERTIFICATE OF OFFICIAL REPORTER

I, Martin J. Giordano, Registered Merit Reporter and
Certified Realtime Reporter, in and for the United States
District Court for the District of Maryland, do hereby certify,
pursuant to 28 U.S.C. § 753, that the foregoing is a true and
correct transcript of the stenographically-reported proceedings
held in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the Judicial
Conference of the United States.


                        Dated this 26th day of June 2019.



                        _Martin J. Giordano_____
                        MARTIN J. GIORDANO, RMR, CRR
                        FEDERAL OFFICIAL COURT REPORTER